**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CIVIL DIVISION

CASE NO.:

MARGLLI GALLEGO,

    Plaintiff,

v.

IVETTE PEREZ, CARLOS LUFFI,
RICKY GARCIA, FLAVIO ESCOBAR,
all individually, and who are all residents
of the State of Florida,

    Defendants.
_____/

**COMPLAINT**

Plaintiff, MARGLLI GALLEGO ("Ms. Gallego"), brings this Complaint against IVETTE PEREZ ("Officer Perez"), CARLOS LUFFI ("Officer Luffi"), RICKY GARCIA ("Officer GARCIA"), and FLAVIO ESCOBAR ("Officer Escobar"), in their individual capacity and allege the following:

**THE PARTIES, JURISDICTION, AND VENUE**

At all times material to this action:

1. Plaintiff, Marglli Gallego, was a citizen of the State of Florida, and a resident of Miami-Dade County, Florida.

2. Defendant, Ivette Perez, was a resident the State of Florida, and a police officer with the Miami-Dade County Police Department.

3. Defendant, Carlos Luffi, was a resident the State of Florida, and a police officer with the Miami-Dade County Police Department.

4. Defendant, Ricky Garcia, was a resident the State of Florida, and a police officer with the Miami-Dade County Police Department.

5. Defendant, Flavio Escobar, was a resident the State of Florida, and a police officer with the Miami-Dade County Police Department.

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Venue is proper because the events giving rise to this claim all occurred within Miami-Dade County, Florida.

## THE FACTS GIVING RISE TO THE CLAIM

*Background Information*

7. Marglli Gallego is an owner of a condominium unit that is part of a master condominium association named "Hammocks Community Association, Inc."

8. Hammocks Community Association, Inc. has 44 subordinate associations.

9. Hammocks Community Association, Inc. is responsible for maintaining the land, sidewalks, gates, and streets of the 44 subordinate associations, which stretches over 3,500 acres of land in Southwest Miami-Dade County.[1]

10. Ms. Gallego is and has been on the Board of Directors of Hammocks Community Association, Inc. since 2015. She served as Treasurer from 2015 through 2017, and as President from 2018 to the present day.

---

[1] Hammocks Community Association, Inc. is also responsible for managing 18 individual communities.

11. For the last three years, and for reasons that Ms. Gallego will not speculate, Officer Ivette Perez and Officer Carlos Luffi have made false, malicious, bad faith, and defamatory statements about her to other property owners, vendors, and contractors.

12. For instance, Officers Perez and Luffi have publicly told property owners, vendors and contractors that Ms. Gallego is stealing money from the Hammocks Community Association, Inc.

13. Officer Luffi went so far as to confront a Hammocks Community Association, Inc. contractor who was defending an unrelated civil injunction case (*i.e.*, a restraining order).

14. Officer Luffi approached the contractor outside of the courthouse and demanded that the contractor "say something" about Ms. Gallego.

15. Officer Luffi offered to "help him out" in return.

16. The contractor believed that Officer Luffi's heavy-handed invitation to "say something" was a bad-faith solicitation against Ms. Gallego.

17. It is important to note that the contractor was represented by an attorney at the time.

18. Officer Luffi knew, or should have known, that it was improper for him essentially confront a represented defendant outside of a courthouse and offer him a quasi-cooperation agreement.

19. Officers Perez and Luffi also falsely and maliciously told contractors and vendors of the Hammocks Community Association, Inc. that Ms. Gallego was involved in an illegal "kick-back" scheme and was going to jail.

20. Officers Perez and Luffi threatened those same vendors with jail time unless they "cooperated" with them in their investigation against Ms. Gallego.

21. Officers Perez and Luffi's actions and statements were outside the scope of their duties and made in bad faith.

***Facts of this Incident***

22. On March 6, 2018, the Hammocks Community Associations, Inc. held an election for the Board of Directors.

23. The election was not open to the public. Only members of the master association were allowed to be present.

24. Nevertheless, Officers Perez and Luffi showed up unannounced.

25. Ms. Gallego, as President of the Hammocks Community Association, Inc., informed Officers Perez and Luffi that they were not allowed to be present.

26. Joel Mercado, who is a Miami-Dade Corrections officer who owns property in the community, also told Officers Perez and Luffi that they were not allowed to be present.

27. Officers Perez and Luffi ignored Ms. Gallego and Joel Mercado's request to leave.

28. Shockingly, Officers Perez and Luffi then told Ms. Gallego and other board members that they were going to confiscate the election box where the unopened and un-tabulated ballots were being held.

29. Officers Perez and Luffi did not have probable cause to believe that a crime occurred, nor did they have a search warrant to confiscate the ballots.

30. Ms. Gallego told Officers Perez and Luffi not to touch the ballots.

31. Based on Officers Perez and Luffi's history of malicious acts, and highly suspicious act of attempting to seize the ballot box without a warrant or probable cause, Ms. Gallego told Officer Luffi that he must be a relative of someone who does not want her on the Board.

32. Officer Perez immediately interjected and stated, "How do you know that? Why did you say that?"

33. Officer Perez told Ms. Gallego something along the lines of, "I can't wait to put you in a chair and ask you questions."

34. Ms. Gallego responded, "I am represented by a lawyer, you can't do that."[2]

35. Officer Ricky Garcia, who was present during the conversation, immediately pushed Ms. Gallego away and told her to "sit down in this chair right now and don't move."

36. Ms. Gallego sat down in the chair as directed.

37. Officers Garcia and Escobar, who was also present for the entire incident, then sat down on chairs that were located on each side of Ms. Gallego.

38. Both officers sat in very close proximity to Ms. Gallego, essentially "sandwiching" her.

39. While Ms. Gallego was sandwiched between the two officers, Officer Luffi would periodically lift up his untucked shirt and flash his handcuffs at Ms. Gallego.

40. Ms. Gallego did not feel that she was free to leave, even though she was the President of the Board and involved in conducting an election.

41. Officer Perez continuously repeated, "I'm am going to be able to sit across from you and ask you questions," while Ms. Gallego was seated.

42. Ms. Gallego responded each time by stating, "I am represented by an attorney."

---

[2] By the time the 2018 election occurred, Officers Perez and Luffi had slandered, harassed, and threatened Ms. Gallego for approximately two years, which caused Ms. Gallego to hire a criminal defense attorney. Officer Perez and Luffi knew this fact because they had spoken to him on previous occasions.

43. At the point that Ms. Gallego was detained, none of the ballots had been opened or tabulated.

44. Furthermore, there was absolutely no evidence whatsoever that the ballots had been tampered with.

45. In fact, none of the officers involved even alleged that election fraud had occurred or was occurring. They just wanted to remove the ballots without explanation or a warrant.

46. Attorney Santiago Eljaiek, Esq. represented the Hammocks Community Association, Inc. at the time. Mr. Eljaiek responded to the election site and told Officers Perez and Luffi that they could not remove the ballots without a warrant.

47. Officers Perez and Luffi eventually acquiesced and departed without the ballots.

48. Nevertheless, the officers unlawfully restricted Ms. Gallego's freedom of movement for an extended period of time.

## COUNT I

### DEPRIVATION OF CIVIL RIGHTS
### FOURTH AMENDMENT VIOLATION
### UNLAWFUL TERRY STOP – OFFICER IVETTE PEREZ

49. Ms. Gallego re-alleges the allegations contained in paragraphs 1-48 of this Complaint.

50. This action is brought by Ms. Gallego pursuant to Title 42, Section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Ivette Perez, in her individual capacity.

51. Officer Perez intentionally committed an act that violated Ms. Gallego's Fourth Amendment right not to be subjected to an unreasonable or prolonged investigatory stop.

52.     No reasonable police officer could have believed that Ms. Gallego was involved, or was about to become involved, in criminal activity.

53.     Officer Perez's stop and detention was not reasonable in scope.

54.     The law enforcement purpose served by the stop (or lack thereof), the diligence with which the Officer Perez pursued the investigation, and the length of the stop was not reasonable based on the totality of circumstances.

55.     No reasonable person would have felt free to leave.

56.     Officer Perez's conduct caused injury to Ms. Gallego, which was a reasonably foreseeable consequence of her conduct.

57.     Officer Perez was acting under color of state law as a police officer when she committed such acts, even though her acts were outside the limits of lawful authority.

WHEREFORE, Plaintiff, Marglli Gallego, demands judgment for her economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## COUNT II

### DEPRIVATION OF CIVIL RIGHTS
### FOURTH AMENDMENT VIOLATION
### UNLAWFUL TERRY STOP – CARLOS LUFFI

58.     Ms. Gallego re-alleges the allegations contained in paragraphs 1-48 of this Complaint.

59.     This action is brought by Ms. Gallego pursuant to Title 42, Section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Carlos Luffi, in his individual capacity.

60. Officer Luffi intentionally committed an act that violated Ms. Gallego's Fourth Amendment right not to be subjected to an unreasonable or prolonged investigatory stop.

61. No reasonable police officer could have believed that Ms. Gallego was involved, or was about to become involved, in criminal activity.

62. Officer Luffi's stop and detention was not reasonable in scope.

63. The law enforcement purpose served by the stop (or lack thereof), the diligence with which the Officer Luffi pursued the investigation, and the length of the stop was not reasonable based on the totality of circumstances.

64. No reasonable person would have felt free to leave.

65. Officer Luffi's conduct caused injury to Ms. Gallego, which was a reasonably foreseeable consequence of his conduct.

66. Officer Luffi was acting under color of state law as a police officer when he committed such acts, even though his acts were outside the limits of lawful authority.

WHEREFORE, Plaintiff, Marglli Gallego, demands judgment for her economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## COUNT III

### DEPRIVATION OF CIVIL RIGHTS
### FOURTH AMENDMENT VIOLATION
### UNLAWFUL TERRY STOP – RICKY GARCIA

67. Ms. Gallego re-alleges the allegations contained in paragraphs 1-48 of this Complaint.

68. This action is brought by Ms. Gallego pursuant to Title 42, Section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Ricky Garcia, in his individual capacity.

69. Officer Garcia intentionally committed an act that violated Ms. Gallego's Fourth Amendment right not to be subjected to an unreasonable or prolonged investigatory stop.

70. No reasonable police officer could have believed that Ms. Gallego was involved, or was about to become involved, in criminal activity.

71. Officer Garcia's stop and detention was not reasonable in scope.

72. The law enforcement purpose served by the stop (or lack thereof), the diligence with which the Officer Garcia pursued the investigation, and the length of the stop was not reasonable based on the totality of circumstances.

73. No reasonable person would have felt free to leave.

74. Officer Garcia's conduct caused injury to Ms. Gallego, which was a reasonably foreseeable consequence of his conduct.

75. Officer Garcia was acting under color of state law as a police officer when he committed such acts, even though his acts were outside the limits of lawful authority.

WHEREFORE, Plaintiff, Marglli Gallego, demands judgment for her economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## COUNT IV

### DEPRIVATION OF CIVIL RIGHTS
### FOURTH AMENDMENT VIOLATION
### UNLAWFUL TERRY STOP – FLAVIO ESCOBAR

76. Ms. Gallego re-alleges the allegations contained in paragraphs 1-48 of this Complaint.

77. This action is brought by Ms. Gallego pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by Miami-Dade County Police Officer Flavio Escobar, in his individual capacity.

78. Officer Escobar intentionally committed an act that violated Ms. Gallego's Fourth Amendment right not to be subjected to an unreasonable or prolonged investigatory stop.

79. No reasonable police officer could have believed that Ms. Gallego was involved, or was about to become involved, in criminal activity.

80. Officer Escobar's stop and detention was not reasonable in scope.

81. The law enforcement purpose served by the stop (or lack thereof), the diligence with which the Officer Escobar pursued the investigation, and the length of the stop was not reasonable based on the totality of circumstances.

82. No reasonable person would have felt free to leave.

83. Officer Escobar's conduct caused injury to Ms. Gallego, which was a reasonably foreseeable consequence of his conduct.

84. Officer Escobar was acting under color of state law as a police officer when he committed such acts, even though his acts were outside the limits of lawful authority.

WHEREFORE, Plaintiff, Marglli Gallego, demands judgment for her economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Plaintiff, Marglli Gallego demands a jury trial of all issues so triable as of right by a jury.

DATED: October 23, 2020

>RASCO KLOCK PEREZ NIETO
>*Counsel for the Plaintiff, Marglli Gallego*
>2555 Ponce de Leon Blvd., Suite 600
>Coral Gables, Florida 33134
>Telephone: 305.476.7100
>Facsimile:  305-476-7102
>Email:   hnapoleon@rascoklock.com
>
>
>By: */s/ Hilton Napoleon, II*
>    Hilton Napoleon, II
>    Fla. Bar No.: 17593