**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MARGLLI GALLEGO | : |
| Plaintiff(s), | : |
| v. | :   CASE NO.: 20-24374-CIV-BLOOM |
| IVETTE PEREZ, *et. al.*, | : |
| Defendant(s). | : |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants Ivette Perez and Carlos Luffi move to dismiss Counts I and II of the Complaint based on qualified immunity with prejudice. ECF No. 1 (hereinafter "*Compl.*").

**INTRODUCTION**

Plaintiff's Complaint consists of four identical counts alleging an unlawful *Terry* stop of unknown duration against four officers, Defendants Perez, Luffi, Garcia and Escobar. *Compl.* ¶¶ 49-84. The only factual allegations supporting that a *Terry* stop occurred are that Officer Garcia pushed the Plaintiff and told her to "sit down in this chair right now and don't move." *Compl.* ¶ 35. Plaintiff claims that she did as she was told and that Officers Garcia and Escobar then sat down on chairs on both sides of her, essentially "sandwiching" her. *Id.* ¶¶ 36-38.

With respect to Officers Perez and Luffi, on the other hand, there are no allegations that either of them ever made physical contact with Plaintiff or took any steps to restrain her liberty. Plaintiff does not allege that she was ever even handcuffed or physically restrained beyond the two officers sitting down next to her. Simply put, Officer Garcia told Plaintiff to sit down, which she did, and then Officers Garcia and Escobar sat next to her. Accordingly, at this time, Officers Garcia and Escobar do not move to dismiss the complaint based on qualified immunity. Of course,

Officers Garcia and Escobar do not waive any defenses, and will contest these claims in due course.

The claims against Officers Perez and Luffi present a different story. There are simply no plausible factual allegations supporting the legal conclusion that they subjected Plaintiff to an unreasonable or prolonged investigatory stop. *Compl.* ¶¶ 51, 60. They are not alleged to have restrained Plaintiff, nor ordered her restraint; they were simply present during the detention that Officers Garcia and Escobar effected. Because Officers Luffi and Perez are not alleged to have personally restrained Plaintiff's freedom of movement and their conduct as alleged does not violate clearly established law, Officers Luffi and Perez are entitled to qualified immunity and dismissal of Counts I and II.

## **PLAINTIFF'S ALLEGATIONS**

The Complaint alleges that Officers Perez and Luffi have been involved for the past three years in making defamatory statements regarding Plaintiff's conduct as President of the Hammocks Community Association, a Florida Homeowner's Association ("HOA") that is located in Southwest Miami-Dade County. *Compl.* ¶¶ 7-21.[1]

As relates to this incident, Plaintiff alleges that Officers Perez and Luffi showed up unannounced to an HOA election meeting on March 6, 2020. *Id.* ¶¶ 22-24. Plaintiff informed Officers Perez and Luffi that they were not allowed to be present. *Id.* ¶ 25. Joel Mercado, who is a Miami-Dade Corrections officer who owns property in the community, also told Officers Perez and Luffi that they were not allowed to be present. *Id.* ¶ 26. Officers Perez and Luffi ignored Plaintiff and Mercado's request to leave. *Id.* ¶ 27. Plaintiff alleges that Officers Perez and Luffi

---

[1] These allegations presently form the basis of a separate lawsuit that Plaintiff has filed against Officers Perez and Luffi in state court, alleging defamation and tortious interference with a business relationship. *See Gallego v. Perez*, Case No. 20-23064 (11th Jud. Cir. Fla. Oct. 26, 2020).

2

then told Ms. Gallego and other board members that they were going to confiscate the election box where the unopened and un-tabulated ballots were being held despite lacking probable cause or a search warrant to confiscate the ballots. *Id.* ¶¶ 28-29. Plaintiff told Officers Perez and Luffi not to touch the ballots. *Id.* ¶ 30.

Plaintiff then recounts a brief verbal exchange between herself and Officers Luffi and Perez: Plaintiff told Officer Luffi that he must be a relative of someone who does not want her on the Board. *Id.* ¶ 31. Officer Perez responded "How do you know that? Why did you say that?" *Id.* ¶ 32. Perez then told Plaintiff "'something along the lines of, 'I can't wait to put you in a chair and ask you questions," to which Plaintiff responded, I am represented by a lawsuit, you can't do that." *Id.* ¶¶ 33-34. It is at this point that Plaintiff alleges that Officers Garcia and Escobar detained her:

> Officer Ricky Garcia, who was present during the conversation, immediately pushed Ms. Gallego away and told her to "sit down in this chair right now and don't move." Ms. Gallego sat down in the chair as directed. Officers Garcia and Escobar, who was also present for the entire incident, then sat down on chairs that were located on each side of Ms. Gallego. Both officers sat in very close proximity to Ms. Gallego, essentially "sandwiching" her.

*Id.* ¶¶ 35-38. Plaintiff alleges that she did not feel free to leave. *Id.* ¶ 40. Plaintiff alleges that while she was sitting between Officers Garcia and Escobar, Office Luffi periodically lifted up his untucked shirt and flashed his handcuffs at her and Officer Perez repeated his statement that "I'm [sic] am going to be able to sit across from you and ask you questions," to which Plaintiff repeatedly responded that she was represented by an attorney. *Id.* ¶¶ 38, 41-42. Plaintiff alleges that the Officers ultimately departed without the election ballots after she was unlawfully restrained for an unspecified "extended period of time." *Id.* ¶¶ 47-48. Plaintiff does not provide any further allegations regarding the termination of the *Terry* stop.

## **MEMORANDUM OF LAW**

**I.   The Court Must Dismiss Counts I and II Because Plaintiff Does Not Allege that Officer Perez or Luffi Detained Her in Violation of Clearly Established Law**

### *A. Qualified Immunity Bars Any Suit Against Public Employees Who Are Not Alleged to Have Violated Clearly Established Law*

Qualified immunity exists to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citation omitted). The protection of qualified immunity "is the usual rule; only in exceptional cases will government actors have no shield against claims made against them" individually. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citation omitted).

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). It is a "muscular doctrine" based on the premise that "officials can act without fear of harassing litigation only when they can reasonably anticipate – *before* they act or do not act – if their conduct will give rise to damage liability for them." *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir. 1996). Importantly, qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). Therefore, "qualified immunity questions should be resolved at the earliest possible stage of a litigation," *Anderson v. Creighton*, 483 U.S. 635, 646 (1987), and "preferably on pretrial motions," *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991).

A government official acts within their discretionary authority when he or she "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266. In other words:

> we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use excessive force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests.

*Id.* "After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function—that is, pursuing his job-related goals—in an authorized manner." *Id.*

Once discretionary authority is established, the burden shifts to the plaintiff (1) to demonstrate "a violation of a constitutional right" and (2) to also show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation omitted).

On prong one, determining if a constitutional violation occurred, the Court does not "sit in judgment to determine whether an officer made the best or a good or even a bad decision" but only "whether an officer's conduct falls within the outside borders of what is reasonable in the

5

constitutional sense." *Buckley v. Haddock*, 292 F. App'x 791, 794 (11th Cir. 2008). This "standard gives ample room for mistaken judgments." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotations omitted). Officials enjoy qualified immunity for mistaken judgments whether they arise from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231. So long as "reasonable people could disagree about whether a [police officer]—in the light of the then clearly established law—responded reasonably [under the] circumstances, qualified immunity must apply." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1030-31 n.8 (11th Cir. 2001).

On the second prong, the plaintiff's burden entails "the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [Fourth Amendment violation] **beyond debate**." *Wesby*, 138 S. Ct. at 590 (emphasis added) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court has instructed lower courts that they may not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742). Rather, the proposition of law which the plaintiff must establish to succeed on his claims must "follow immediately" from existing caselaw. *Mullenix*, 136 S. Ct. at 309 (quoting *Anderson*, 483 U.S. at 641). "We have said many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (cleaned up). The need for specificity is especially important in the Fourth Amendment context. *Wesby*, 138 S. Ct. at 590.

**6**

**OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA**
**TELEPHONE (305) 375-5151**

Importantly, "courts may grant qualified immunity on the grounds that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). However the court proceeds, both questions must be resolved against the officer before a motion asserting qualified immunity is denied. *Hall v. McGhee*, 762 F. App'x 837, 842 (11th Cir. 2019).

Finally, is it black letter law in this Circuit that only a decision from one of the three courts who decisional law is binding in this state—the U.S. Supreme Court, the Eleventh Circuit, and the Florida Supreme Court—can clearly establish the law for qualified immunity purposes. *E.g.*, *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003). The Supreme Court has even suggested that more than a single circuit precedent may sometimes be required to clearly establish the law in a particular case. *See Carroll v. Carman*, 574 U.S. 13, 17, 135 S. Ct. 348, 350 (2014) ("Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances . . .").

### B. Officers Perez and Luffi Were Acting Within Their Discretionary Authority

Application of the Eleventh Circuit's caselaw leads inexorably to the conclusion that the Officers were acting within their discretionary authority in making an alleged *Terry* stop. "[I]n assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities." *See Harland*, 370 F.3d at 1266. "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description." *Id.* Conducting *Terry* stops, brief detentions that fall short of an arrest, clearly falls

within the job description of a police officer and is means that officers are authorized to take, so Officers Luffi and Perez have established a *prima facie* entitlement to qualified immunity. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (explaining that a discretionary function is an act that is "of a type that fell within the employee's job responsibilities" and that because "making an arrest is within the official responsibilities of a sheriff's deputy, [the defendant] was performing a discretionary function when he arrested [the plaintiff]") (quoting *Holloman*, 370 F.3d at 1265); *Billingsley v. Orr*, 1:13-CV-1337-VEH, 2015 WL 162568, at *7 n.8 (N.D. Ala. Jan. 13, 2015) ("Officer Orr was undoubtedly cloaked with discretionary authority in making the *Terry* stop").

### C. Officers Perez and Luffi Are Entitled to Qualified Immunity Because There is No Clearly Established Law Imposing Liability on Officers Who Do Not Personally Effect an Unconstitutional Terry Stop Made in Their Presence

Where, as in this case, an official was acting within the scope of his discretionary authority, the plaintiff bears the burden to show that qualified immunity should not apply. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Complaint alleges that each defendant "intentionally committed an action that violated [Plaintiffs] Fourth Amendment right not be subjected to an unreasonable or prolonged investigatory stop." *Compl*. ¶¶ 51, 60, 69, 78. But neither Officer Luffi nor Officer Perez are alleged to have effected the *Terry* stop in any meaningful way. There are no allegations that either gave any commands to Plaintiff or exercised any type of physical restraint over her. Nor is there any allegation that either Officer Luffi or Officer Perez instructed Officers Garcia and Escobar to temporarily detain Plaintiff. While Plaintiff may have alleged that she was seized ***by someone*** within the meaning of the Fourth Amendment, that is not the end of the analysis. "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and

the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The Court "must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Id.*; *accord Abella v. Simon*, 482 F. App'x 522, 523-24 (11th Cir. 2012) ("The district court erred when it based its decision on the collective actions of all defendants instead of deciding . . . qualified immunity based on the allegations about each of them.").

"Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). "[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id.* at 596-97. It is only an officer's "intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim." *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1166–67 (11th Cir. 2005) (quoting *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir. 1990)).

On these facts, Plaintiff has not alleged that was seized ***by Officers Perez*** or ***by Officer Luffi***. Neither of them are alleged to have intentionally taken any specific actions that resulted in the termination of her freedom of movement. Certainly, there is no clearly established law that that the actions of Officer Perez or Officer Luffi constituted a seizure. Essentially, Plaintiff is asking the Court to abrogate Officer Luffi and Perez's qualified immunity merely because they were present and interacted with Plaintiff before or after she was temporarily detained by ***other***

officers.  While Officers Luffi and Perez's entitlement to qualified immunity is apparent on both prongs, this is the type of case that can easily be resolved on the second prong of the analysis because no controlling caselaw imposes bystander liability (i.e., failure to intervene) for a constitutional violation other than in the excessive force context.  In other words, Officers Perez and Luffi cannot be held liable for being present—or for failing to prevent—an allegedly unconstitutional *Terry* stop where they were not part of the chain of command authorizing the *Terry* stop.  *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) ("Merely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action.").

Given the state of the law in this Circuit, district courts have granted qualified immunity on the basis that there is no clearly established duty to intervene outside the excessive force context.  *See, e.g.*, *Rance v. Bradshaw*, 15-CV-81210-KAM, 2016 WL 3199002, at *9 (S.D. Fla. June 9, 2016) (granting qualified immunity to an officer who was present during another officer's alleged unlawful *Terry* stop where the plaintiff failed to cite any controlling authority expanding liability for failure-to-intervene outside of the excessive force context); *Tarantino v. Citrus County Gov't*, 5:12-CV-434-OC-32PRL, 2014 WL 4385550, at *14 (M.D. Fla. Sept. 4, 2014) (granting qualified immunity for failure to intervene in allegedly unconstitutional strip search).

Plaintiff will be unable to provide controlling precedent that liability attaches to an officer who is present during an allegedly unlawful *Terry* stop but gave no commands restricting a plaintiff's freedom of movement, did not instruct any other officer to detain the plaintiff, nor physically restrained the plaintiff herself.  Because Plaintiff will be unable to cite any law that that existed on March 6, 2018 that clearly established Officer Luffi and Perez's liability for an unlawful *Terry* stop under the facts and circumstances alleged here, qualified immunity bars these claims.

## CONCLUSION

Counts I and II are due to be dismissed based upon qualified immunity with prejudice.

Dated:  December 30, 2020.

                                                              Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida  33128

By:  /s/ Ezra S. Greenberg
Ezra S. Greenberg
Assistant County Attorney
Fla. Bar. No. 85018
Telephone: (305) 375-5151
Facsimile: (305) 375-5643
Email: ezrag@miamidade.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this day on Plaintiff's counsel via CM/ECF.

/s/ Ezra S. Greenberg
Assistant County Attorney