## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-24374-BB

MARGLLI  GALLEGO,

      Plaintiff,

v.

IVETTE PEREZ, CARLOS LUFFI,
RICKY GARCIA, FLAVIO ESCOBAR,
all individually, and who are all residents
of the State of Florida,

      Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PEREZ AND LUFFI'S MOTION TO DISMISS COMPLAINT

Plaintiff, Marglli Gallego ("Ms. Gallego"), files this *Response in Opposition to Defendant Perez and Luffi's Motion to Dismiss Complaint*, see [D.E. 22], and states the following:

### INTRODUCTION

Defendants Ivette Perez ("Perez") and Carlos Luffi ("Luffi") argue that they are entitled to qualified immunity because there is no case law that clearly establishes "bystander liability" during illegal *Terry* stops.  As explained in detail below, the Defendants' argument is severely flawed because courts determine "bystander liability" under a causation analysis, not under a "clearly established law" analysis.    In other words, in section 1983 cases, courts must only determine whether the officer sufficiently *instigated* or *participated* in the constitutional violation.[1]  See *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) ("In this Circuit, a non-arresting officer

---

[1] The constitutional violation itself has to be supported by clearly established law.

who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment.");
*Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) ("What is made explicit in *Jones* is that
a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked
any constitutional basis and yet participated in some way.").[2]  Here, Perez and Luffi sufficiently
instigated and participated in Ms. Gallego's illegal detention by, *inter alia*, confronting her in a
place that they had no right to be, refusing to leave when told to do so, dangling handcuffs in front
of her, and saying, "I can't wait to put you in chair and ask you questions."  Perez and Luffi are
not absolved of liability simply because two other police officers "sandwiched" Ms. Gallego in a
chair.

## FACTS[3]

For the past three years, Defendants Perez and Luffi, police officers with the Miami-Dade
Police Department, have made false and defamatory statements regarding Ms. Gallego's conduct
as President of the Hammocks Community Association, which is the largest homeowner's
association in South Florida.[4]  [D.E. 1, ¶¶ 7-11].  Perez and Luffi have publicly lied and told
property owners, vendors and contractors that Ms. Gallego is stealing money from the Hammocks
Community Association, Inc. and that she is going to jail.  *Id.* at ¶¶ 12-19.  Perez and Luffi have

---

[2] The Defendants' assertion that there is "no controlling case law that imposes bystander liability
for a constitutional violation other than in the excessive force context," [D.E. 22, pg. 10], is clearly
misguided.

[3] Unfortunately, Officers Perez and Luffi have harassed Ms. Gallego for the past three years.  Their
interactions can be described in much more detail than what is currently listed in the Complaint
(which will further explain why she did not feel free to leave).  Now that Ms. Galleo is aware of
Perez and Luffi's basis to claim immunity, she can list many other facts that would eviscerate their
argument.  Although Ms. Gallego believes that the facts listed in the Complaint are legally
sufficient to deny immunity, especially at this point in the litigation, should the Court find
otherwise, Ms. Gallego respectfully requests an opportunity to amend the Complaint.

[4] Perez and Luffi's false and malicious statements are also the subject of a state-court defamation
lawsuit.

even confronted vendors and contractors on the street in a heavy-handed attempt to get them to "say something" that would implicate Ms. Gallego in a crime. *Id.* Nevertheless, after a three-year investigation, Perez and Luffi have not even been able to establish an iota of evidence to arrest Ms. Gallego.

On March 6, 2018, the Hammocks Community Association held a private election for the Board of Directors. *Id.* at ¶ 22. The election was not open to the public, and only members of the association were allowed to be present. *Id.* at ¶ 23. Perez and Luffi showed up to the election unannounced. *Id.* at ¶ 24. Although clearly not invited, Perez and Luffi ignored directives by Ms. Gallego and Joel Mercado, a Miami-Dade Corrections officer who owns property in the community, to leave the premises - as they were not allowed to be present during the closed election. Despite the request to leave, both Perez and Luffi refused. *Id.* at ¶¶ 25-27. Without probable cause to believe that a crime occurred, and without a search warrant, Perez and Luffi told Ms. Gallego and other board members that they were going to confiscate the election box where the unopened and un-tabulated ballots were being held. *Id.* at ¶¶ 28-29. Ms. Gallego told the Defendants not to touch the ballots. *Id.* at ¶ 30. Ms. Gallego immediately called Hammock's legal counsel and asked him to respond.

Based on the history of malicious acts towards her, and the suspicious attempt to seize election ballots, Ms. Gallego opined that Luffi must be related to someone who does not want her on the Board. *Id.* at ¶ 31. Officer Perez responded, "How do you know that? Why did you say that?" *Id.* at ¶ 32. Perez then told Ms. Gallego something along the lines of "I can't wait to put you in a chair and ask you questions." *Id.* at ¶ 33. Ms. Gallego replied, "I am represented by a lawyer," and that Perez could not do what she had described. *Id.* at ¶ 34.

Officer Rickey Garcia, also a police officer with MDPD, who was working in an off-duty capacity for the Hammocks, then pushed Ms. Gallego away and told her to "sit down in this chair right now and don't move." *Id.* at ¶ 35. Officer Garcia and Officer Flavio Escobar, another MDPD officer who was present at the Hammocks, then sat on each side of Ms. Gallego in close proximity, essentially sandwiching her. *Id.* at ¶¶ 37-38. During this time, Luffi periodically lifted his shirt to flash his handcuffs at Ms. Gallego. *Id.* at ¶ 39. Furthermore, Perez repeatedly stated, "I'm going to be able to sit across from you and ask you questions." Ms. Gallego replied each time that she was represented by an attorney. *Id.* at ¶ 41. Although Ms. Gallego was the President of the Board, and lawfully holding an election, she did not feel free to leave during this encounter with the Defendants based on the totality of circumstances. *Id.* at ¶ 40.

## MEMORANDUM OF LAW

### I. Standard for Motion to Dismiss.

As a preliminary matter, Federal Rule of Civil Procedure 8(a)(2) only calls for a "short plain statement of the claims showing that the pleader is entitled to relief." *See Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346 (2014). A motion to dismiss is inappropriate unless the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).

For the purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and all facts alleged by the plaintiff are accepted as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). Furthermore, ***all inferences*** must be viewed in the light most favorable to the plaintiff. *See FindWhat Inv'r Grp. v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011) ("all well-pleaded facts are accepted as true, and the reasonable inferences

therefrom are construed in the light most favorable to the plaintiff."); *Valdes v. Miami-Dade Cty.*, No. 12-22426-CIV, 2013 WL 5429938 *18 (S.D. Fla. Sept. 27, 2013) (Moreno, C.J. / Otazo-Reyes, M.J.), *aff'd*, 584 F. App'x 927 (11th Cir. 2014) ("[I]n order to make the determination that Miami–Dade County is asking for, the undersigned would have to make inferences in its favor, rather than construing [the allegations] in the light most favorable to the plaintiff," which is improper.).

Overall, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985). Generally speaking, a motion to dismiss will be denied when a complaint alleges a violation of a clearly established constitutional right. *See Corbett v. Hickers,* 929 F.3d 1304, 1311 (11th Cir. 2019). Whether or not the constitutional right was clearly established is a question of law reviewed "de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* at 1311.

## II. Qualified Immunity.

Perez and Luffi claim that they are entitled to "qualified immunity." Qualified immunity "shields government officials executing discretionary responsibilities from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

A trial court must evaluate the defense of qualified immunity by a two-step process. First, a government official asserting the defense of qualified immunity must initially establish that he was acting within his discretionary authority. *See Skop v. City of Atlanta,* 485 F.3d 1130 (11th

Cir. 2007).  Next, if the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  *Id.*

To overcome a government official's qualified immunity defense, a plaintiff must show that: (1) the official's conduct violated a statutory or constitutional right; and (2) the violation of that right was "clearly established."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The threshold question is whether the alleged facts demonstrate that the defendant violated any constitutional right of the plaintiff.  *See Dukes v. Miami-Dade Cty.*, 232 F. App'x 907, 911 (11th Cir. 2007).  If a constitutional violation is properly alleged, the final step is to determine whether the right was clearly established.  *Id.*

A clearly established right exists when "the state of the law gave the official 'fair warning' that the alleged conduct was unconstitutional."  *Grayden v.* Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (quoting Hope *v. Pelzer*, 536 U.S. 730, 740-741 (2002)).  A plaintiff can "demonstrate that his right was clearly established in a number of ways."  *Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir. 2005).  A plaintiff can show that: (1) a materially similar case has already been decided, giving notice to officers; (2) a broader, clearly established principle should control his situation; or (3) the officer's conduct so obviously violates the Constitution that prior case law is unnecessary.  *See Cooper v. Rutherford,* 2012 WL 4856122 (11th Cir. 2012).

With respect to a "materially similar case," a decision of the Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose will provide an officer with fair warning of clearly established law.  *See Dukes v. Miami-Dade Cnty.*, 232 F. App'x 907, 911 (11th Cir. 2007); *Marsh v. Butles Cnty., Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001); *Jenkins by Hall v. Talladega City Bd. Of Educ.*, 115 F.3d 821, 827 (11th Cir. 1997).  With respect to a "clearly established" principle, "there need not be a case on all fours with materially

identical facts . . . so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights." *Salvato v. Miley,* 790 F. 3d 1286, 1294 (11th Cir. 2015)(citing *Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004)* (internal quotation marks and citation omitted).  Regarding the "obvious violation" rule, an officer is not entitled to immunity from suit when his conduct is "so obviously wrong … that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Rowe v. Ft. Lauderdale,* 279 F. 3d 1271, 1280 (11th Cir. 2002).

**III. The Constitutional Violation.**

Ms. Gallego alleged in her Complaint that Perez and Luffi (and others) illegally seized her during the 2018 Hammock's election in violation of the Fourth Amendment.  [D.E. 1, pgs. 6, 7]. The Defendants motion to dismiss is unclear as to whether they are contesting that a constitutional violation occurred, or if they are simply blaming the other officers for the constitutional violation. In an abundance of caution, Ms. Gallego will address the constitutional violation.

The Supreme Court held long ago that even a temporary detention is a seizure under the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 88 (1968).  In fact, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *West v. Davis*, 767 F.3d 1063, 1067–68 (11th Cir. 2014)(*Citing Terry*, 392 U.S. 1, 88).  "The restraint on one's freedom of movement does not have to endure for any minimum time period before it becomes a seizure for Fourth Amendment purposes."  *Id*. at 1069.  According to the Supreme Court, "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  *United States v. Brignoni–Ponce,* 422 U.S. 873, 878 (1975).

7

To determine whether a person has been seized within the meaning of the Fourth Amendment, a court must determine whether "a reasonable person in the same situation would feel that he or she was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, a police officer does not have to use physical force to seize an individual. Rather, a police officer may seize an individual by using "a show of authority." *See United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006) (police officer who fired a weapon, even though it did not strike the person, used a show of authority); see also *California v. Hodari,* 499 U.S. 621, 626, n. 2 (1991); *United States v. House,* 684 F.3d 1173, 1199 (11th Cir. 2012).

Factors relevant to determine whether officers used a "show of authority" include, but are not limited to: whether a citizen's path is blocked or impeded; the length of detention; the number of police officers present; the display of weapons; any physical touching of the person; and the language and tone of voice used by the police. *See United States v. De La Rosa,* 922 F.2d 675, 678 (11th Cir. 1991); *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006). At the end of the day, however, courts must examine the totality of circumstances to determine whether a Fourth Amendment seizure occurred. *D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018)(the lower court erred in viewing "each fact in isolation, rather than as a factor in the totality of circumstances.") (internal citations omitted); *California v. Hodari D.,* 499 U.S. 621, 627 (1991). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *See U.S. v. Baker,* 290 F.3d 1276, 1278 (11th Cir. 2002). *See also Touzin v. Patriarca,* 2013 WL 6051062 (S.D. Fla. November 14, 2013).

Here, based on the totality of circumstances, a reasonable person standing in Ms. Gallego's shoes would not feel free to ignore the police and go about her business. It is important to pause

and note that both the March 6, 2018 incident **and** the history of Perez and Luffi's actions are relevant to this inquiry.  Otherwise, we would be viewing the facts in isolation, which is contrary to the Supreme Court precedent listed above.

As described above, Perez and Luffi have publicly made false and defamatory statements against Ms. Gallego for over three years and have told several people in the community that she is going to jail.  See [D.E. 1, ¶ 11].  Ms. Gallego was undoubtedly aware of their statements.  The harassment became so intense that Ms. Gallego hired a criminal defense attorney to represent her, although she had neither been arrested nor charged with a crime.  *Id.* at ¶ 34, fn 2.  Perez and Luffi even tried to get vendors and contractors to fraudulently "say something" about Ms. Gallego, which she obviously became aware of.  *Id*. at ¶ 16.

On March 6, 2018, the Hammocks Community Association held a private election for the Board of Directors.  *Id*. at ¶ 22.  The election was not open to the public, and only members of the association were allowed to be present.  *Id.* at ¶ 23.  Perez and Luffi showed up to the election unannounced.  *Id.* at ¶ 24.  Although clearly not invited, Perez and Luffi ignored directives to leave the premises - as the elections were closed to the public.  Despite the request to leave, both Perez and Luffi refused.  *Id.* at ¶¶ 25-27.  Without probable cause to believe that a crime occurred, and without the presence of a search warrant, Perez and Luffi told Ms. Gallego and other board members that they intended to confiscate the election box.  *Id.* at ¶¶ 28-29.  Ms. Gallego told the Defendants not to touch the ballots.  *Id.* at ¶ 30.

Based on his history of malicious acts towards her, and the suspicious attempt to seize election ballots, Ms. Gallego told Luffi that he must be related to someone who does not want her on the Board.  *Id.* ¶ 31. Officer Perez responded, "How do you know that? Why did you say that?"  *Id.* at ¶ 32.  Perez then told Ms. Gallego something along the lines of "I can't wait to put

you in a chair and ask you questions." *Id.* at ¶ 33.  Ms. Gallego replied that she is represented by a lawyer, and that Perez could not do what she had described.  *Id.* at ¶ 34.

Defendant Rickey Garcia, also a police officer with MDPD, who was working in an off-duty capacity for the Hammocks, then pushed Ms. Gallego away and told her to "sit down in this chair right now and don't move." *Id.* at ¶ 35.  Officer Garcia and Officer Flavio Escobar, another MDPD officer, then sat on each side of Ms. Gallego in close proximity, essentially sandwiching her. *Id.* ¶¶ 37-38.  During this time, Luffi periodically lifted his shirt to flash his handcuffs at Ms. Gallego. *Id.* ¶ 39.  Perez repeatedly stated, "I'm going to be able to sit across from you and ask you questions."  Although Ms. Gallego was the President of the Board, and lawfully holding an election, she did not feel free to leave from her chair during this encounter with the Defendants. *Id.* ¶ 40.  Ms. Gallego was clearly seized without probable cause or reasonable suspicion, which is a violation of the Fourth Amendment.

## IV.  Clearly Established Law.

Perez and Luffi's conduct violated "clearly established" law.  Recent case law from the Eleventh Circuit gave Perez and Luffi "fair warning that [their] conduct was unconstitutional." *Grayden v.* Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (quoting Hope *v. Pelzer*, 536 U.S. 730, 740-741 (2002)).

In *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014), the plaintiff, West, who was an attorney, entered a courthouse to represent her client. *Id.* at 1066.  Davis, a police officer working a security detail, commanded West to remove her suit jacket before passing through the metal detector. *Id.* West refused to do so because it would expose her undergarments. *Id.*  West asked Davis to call his supervisor on several occasions, but Davis initially ignored her. *Id.*  Instead, Davis reached towards his handcuffs while staring at West and made statements suggesting that she could be

arrested.  *Id.*  Davis eventually called his supervisor, and West called her husband to apprise him

of the situation.  *Id.*  Davis then ordered West to "get off the phone."  *Id.*  Davis twisted the phone

away from West's hand (causing her injury) and then threw the phone into her purse.  *Id.*  Davis's

supervisor arrived and told West that she did not have to remove her jacket.  *Id.*  Instead, the

supervisor told Davis to "wand" West, which Davis could have done from the outset.  *Id.*  West

was eventually allowed to enter the courthouse and go about her business.  *Id.*

West filed a civil rights lawsuit against Davis under 42 U.S.C. section 1983, claiming, *inter

alia*, that Davis illegally seized her in violation of the Fourth Amendment.  The District Court

granted summary judgment to Davis based upon qualified immunity.  The Eleventh Circuit

reversed and stated that, "It is quite plain that the Fourth Amendment governs 'seizures' of the

person which do not eventuate in a trip to the station house and prosecution for [a] crime" *Id*. at

1068 (internal citations omitted).  "It must be recognized that whenever a police officer accosts an

individual and restrains his freedom to walk away, he has 'seized' that person." *Id*.

The Eleventh Circuit also established that, "The restraint on one's freedom of movement

does not have to endure for any minimum time period before it becomes a seizure for Fourth

Amendment purposes." *Id*. at 1069.  The Eleventh Circuit concluded:

> Applying the Supreme Court's precedents defining seizure to the facts in the record
> construed in the light most favorable to West, ***it is clear*** that West was seized.
> Davis, a deputy sheriff, intentionally restrained her liberty of movement by physical
> force when he grabbed her hand, squeezed it, jerked and pulled her arm toward him,
> and wrenched her wrist back and forth. While Davis was applying physical force,
> albeit for only a brief time, West was surely not free to walk away or end the
> encounter and proceed about her business to the courtroom of the Fulton County
> Courthouse where she was to meet her client. If a short stop and frisk is a seizure,
> what happened here was surely a seizure as well.

Id. at 1070 (emphasis added).

*West* provided Perez and Luffi with "fair warning" that their conduct was unconstitutional. *Grayden,* 345 F.3d 1225, 1232.  In many ways, Perez and Luffi's conduct is much worse than the officer in *West*.  Perez and Luffi made false and defamatory statements against Ms. Gallego for over three years and told people that she was going to be arrested.  They even tried to get people to "say something against her."  On the day in question, Perez and Luffi barged into a location where they had no right to be and refused to leave.  They unlawfully threatened to confiscate unopened and un-tabulated election ballots.  Comparatively, the officer in *West* did not even know the plaintiff, let alone act in such a malicious manner towards her.

Similar to the officer in *West*, Luffi flashed his handcuffs at Ms. Gallego and Perez made statements suggesting that Ms. Gallego was going to be arrested.  When Ms. Gallego said or did something contrary to their liking, physical force was used against her to temporarily detain her. Although she was not arrested and eventually allowed to leave, Ms. Gallego was certainly "seized" for Fourth Amendment purposes.  Accordingly, *West* undoubtedly provided Perez and Luffi with "fair warning" that their conduct was unconstitutional.

Even assuming, *arguendo*, that *West* is not "on all fours" with the facts here, the prior decisions from the Eleventh Circuit gave Perez and Luffi "reasonable warning that their conduct violated the Constitution."  *Salvato v. Miley,* 790 F. 3d 1286, 1294 (11th Cir. 2015).  The Eleventh Circuit has repeatedly held that a seizure without probable cause "clearly" violates the Constitution.  See  *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11 Cir. 1998)("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."); *Childs v. Dekalb Cty., Ga.*, 286 F. App'x 687, 695 (11th Cir. 2008)("It has been clearly established since the Supreme Court  decided *Terry* that an investigative stop – a seizure for Fourth Amendment purposes – performed without reasonable suspicion violates the Fourth Amendment."); *Kingsland*

*v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (a warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim) *citing Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990); *Wilkerson v. Seymour*, 736 F.3d 874, 977 (11th Cir. 2013) ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."). Accordingly, at the time of the incident, Perez and Luffi knew that "what [they were] doing [was] unlawful." See *D.C. Wesby*, 138 S. Ct. 577, 589 (2018) ("Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.")(internal citations omitted).

Finally, qualified immunity is inapplicable because Perez and Luffi's conduct so obviously violates the Constitution that prior case law is unnecessary. *See Cooper v. Rutherford,* 2012 WL 4856122 (11th Cir. 2012). Viewing the facts in the light most favorable to Ms. Gallego, and drawing all inferences in her favor, Perez and Luffi are not entitled to qualified immunity. Perez and Luffi attempted to use their badge to strong-arm vendors and contractors to make false statement against Ms. Gallego, which was solely designed to manufacture probable cause to arrest her. When that did not work, Perez and Luffi forced their way into a closed election and attempted to confiscate election ballots without probable cause or a search warrant. Ms. Gallego accused Perez and Luffi of committing their fraudulent activity to remove her from the board of directors so that someone close to Luffi could take her position. Ms. Gallego was forced to sit down. Perez and Luffi continued to mock Ms. Gallego publicly by flashing handcuffs towards her and stating, "I can't wait to sit in front of you and ask you questions." Viewing the facts in the light most favorable to Ms. Gallego, and drawing all inferences in her favor, Perez and Luffi's conduct obviously violates the Constitution – without any need for case law.

13

**V. Bystander Liability.**

The Defendants argue, "[T]here is no clearly established duty to intervene outside the excessive force context." Not only is the Defendants' argument legally erroneous, see *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) ("*Jones* did not preclude all failure to intervene claims against a present, but non-arresting, officer in false arrest cases."), it also completely misses the point. Ms. Gallego is not asserting that Perez and Luffi failed to intervene in her illegal detention. Instead, Ms. Gallego asserts that Perez and Luffi *caused*, *instigated* or *participated* in her illegal detention. In the motion to dismiss, the Defendants fails to acknowledge the difference between: (1) officers who are merely present during an illegal seizure; and (2) officers who *contribute* to an illegal seizure. The Eleventh Circuit, however, has long recognized that officers who fall into the latter category are not entitled to immunity.

In *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007), the Eleventh Circuit reaffirmed that, "In this Circuit, a non-arresting officer who ***instigates*** or ***causes*** an unlawful arrest can still be liable under the Fourth Amendment." (emphasis added) *citing  Rodriguez v. Ritchey,* 539 F.2d 394, 400 (5th Cir.1976).[5] "General principles of tort law provide a cause of action for unlawful arrest against a defendant who 'affirmatively ***instigated, encouraged, incited, or caused*** the unlawful arrest.'" *Rodriguez v. Ritchey*, 539 F.2d 394, 400 (5th Cir. 1976), on reh'g, 556 F.2d 1185 (5th Cir. 1977) (emphasis added)(citations omitted).

For lawsuits brought pursuant to section 1983, a plaintiff only has to prove "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Contrary to the

---

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered before October 1, 1981.

Defendants' argument, see [D.E. 22, pgs. 8-10], an officer's culpability regarding an illegal seizure is based on "causation," *i.e.* his level of involvement, not clearly established law. See *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010)(a plaintiff may establish "proof of an affirmative causal connection … by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." (quoting *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986)).

In *Wilkerson v. Seymour*, 736 F.3d 974 (11th Cir. 2013), the Eleventh Circuit discussed a non-arresting officers potential liable under § 1983. *Wilkerson* emphasizes the degree of participation in an arrest and the amount of information available to the non-arresting officer. *Id* at 980. The Court stated that, "What is made explicit in *Jones*[6] is that a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way." *Id*.

A sister court in this district addressed this very same issue a couple of months ago in *McDonough v. Mata*, No. 19-cv-21986-Moreno, 2020 WL 7350267 (S.D. Fla. Sept. 28, 2020). In

---

[6]*See Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999). In *Jones*, Powers, a detective, telephoned a state attorney, who advised Powers that there was no probable cause for Jones's arrest for first-degree murder. *Jones*, 174 F.3d at 1283. Powers and Bishop arrested Jones for murder anyway, based on Jones's supposed later confession to the murder, which was the sole basis for the warrantless arrest. *Id*. After his criminal case was dismissed, Jones filed a 1983 claim against Powers and Bishop for false arrest. Jones claimed that his confession to the murder was fabricated and there was no probable cause to arrest him. *Id*. Bishop claimed that he was not sufficiently involved in Powers arrest to be liable for false arrest. Id. at 1284. Bishop relied on the fact that Powers told Jones he was under arrest and Powers prepared the police report. *Id*. However, Bishop stayed with Jones while Powers called the state's attorney about probable cause for an arrest and Bishop was present during the interview when Jones allegedly did not confess. *Id*. Bishop also took notes from which Powers prepared the police report about the arrest. The Eleventh Circuit held that, viewed in the light most favorable to Jones, there was sufficient evidence to create a jury issue over whether Bishop, knowing Jones had not confessed, participated with Powers in Jones's arrest.

*McDonough*, the plaintiff gave police officers the "bird." *Id*. at \*11.  Officer Wright instructed the plaintiff to stop, turn around, and place his hands behind his back.  *Id*.  When the plaintiff asked what he was being arrested for, another officer said, "for disorderly conduct," and the other officer placed handcuffs on the plaintiff.  *Id*.  A third officer then advised the plaintiff that he was under arrest and authored the arrest form.   Officer Wright argued that, because he was not the arresting officer, the plaintiff failed to state a claim against him for a Fourth Amendment false arrest.  *Id*.  Applying the principles laid out by the Eleventh Circuit in *Jones*, *Jordan* and *Wilkerson*,[7] the *McDonough* court found that the allegations were sufficient to establish a jury question as to whether Officer Wright instigated or participated in the plaintiff's arrest.  *Id*. at \*12-13.

Here, although Perez and Luffi did not physically detain Ms. Gallego like the other officers involved here, Perez and Luffi's undoubtedly *caused*, *instigated* or *participated* in making Ms. Gallego feel as if she was not free to leave.  Again, they made fraudulent statement about her, tried to get vendors to implicate her in a crime, told people that she was going to be arrested, barged into a closed election, refused to leave, attempted to confiscate the ballot box, flashed handcuffs at her, and stated "I can't wait to sit in front of you and ask you questions."  Based on the totality of the circumstances, Perez and Luffi sufficiently instigated or participated in Ms. Gallego's illegal detention.  Accordingly, their claim of "bystander" immunity is meritless.

---

[7] *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999); *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007); *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013).

## CONCLUSION

Based on the foregoing, Plaintiff Ms. Marglli Gallego, respectfully requests this Court to enter an Order denying Defendant Perez and Luffi's *Motion to Dismiss the Complaint.*

**Dated:** January 26, 2021.

Respectfully Submitted,

Hilton Napoleon, II, Esq., FBN 17593
RASCO KLOCK PEREZ NIETO
Counsel for the Plaintiff, Marglli Gallego
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100
Facsimile: 305-476-7102
Email: hnapoleon@rascoklock.com

By: /s/ *Hilton Napoleon, II*
         Hilton Napoleon, II

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on January 26, 2021, I have filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel and parties of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Hilton Napoleon, II*
　　　Hilton Napoleon, II