UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MARGLLI GALLEGO      :
                    :
    Plaintiff(s),   :
                    :
v.                  :        CASE NO.: 20-24374-CIV-BLOOM
                    :
IVETTE PEREZ, *et. al.*,  :
                    :
    Defendant(s).   :
_____ :

**DEFENDANTS' REPLY TO PLAINTIFF'S
RESPONSE TO MOTION TO DISMISS COMPLAINT**

Defendants Ivette Perez and Carlos Luffi file this reply to Plaintiff's Response (ECF No. 29) to Defendants Perez and Luffi's Motion (ECF No. 22) to Dismiss Counts I and II of the Complaint based on qualified immunity (ECF No. 1) (hereinafter "*Compl.*").

**ARGUMENT**

Plaintiff's response misdirects its attention to the question of *whether* a *Terry* stop occurred instead of *who* made the *Terry* stop. Resp. at 7-10. But "each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The Court "must be careful to evaluate a given defendant's qualified-immunity claim, ***considering only the actions and omissions in which that particular defendant engaged***." *Id.* (emphasis added). When viewing only Perez and Luffi's acts and omissions, as alleged in the Complaint, there are insufficient facts to conclude that either Perez or Luffi "seized" Plaintiff within the meaning of the Fourth Amendment.

Rather than conduct the individualized analysis that qualified immunity requires, Plaintiff improperly merges the actions of all officers on the scene, and makes no distinction between Officers Perez and Luffi on the one hand, and Officers Garcia and Escobar on the other. Nor does

1

Plaintiff distinguish between the action of Officer Perez and Officer Luffi. As to these officers' actions, Plaintiff fails to allege a clearly established constitutional violation.

## I. The Court Must Apply *Both* Prongs of the Qualified Immunity Analysis

Plaintiff's initial response is to argue that qualified immunity does not apply at all when the question is whether a non-arresting officer can be held liable outside of the excessive force context. Resp. at 1-2, 14-16. Plaintiff appears to argue that the question is solely whether the officer sufficiently instigated or participated in the constitutional violation. *Id.* But this only addresses the ***first*** prong of the qualified immunity analysis—whether the officer's conduct violated a constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Plaintiff cites to no case holding that the Court can dispense with the ***second*** prong of the qualified immunity analysis and forego the critical task of "identify[ing] a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up). In fact, the very cases Plaintiff relies upon conducted a qualified immunity analysis and thus belie her contention that she needn't furnish clearly establish law to defeat this motion. *See Jordan v. Mosley*, 487 F.3d 1350, 1354-57 (11th Cir. 2007) (noting that an non-arresting officer who instigates or causes an unlawful arrest can be liable but then considering whether the officer was entitled to qualified immunity, citing ***both*** prongs of the qualified immunity test, and affirming summary judgment on the first prong because there was probable cause to make an arrest); *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) ("There is no controlling authority ***clearly establishing*** that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct. . . . a police officer is entitled to qualified immunity when performing discretionary functions unless the officer has

violated a ***clearly established right* . . . .**") (emphasis added).[1]

As set forth below, the caselaw does not support that Officer Perez or Officer Luffi caused or participated in seizing Plaintiff within the meaning of the Fourth Amendment. But even if one could interpret the cases that way, it is not so clearly established as to put every reasonable officer on notice that the conduct alleged by Officers Luffi or Perez violated the Fourth Amendment.[2]

## II. The Complaint Does Not Allege That Either *Officer Perez* or *Officer Luffi* Seized Plaintiff under the Fourth Amendment

When it comes to analyzing whether a seizure occurred, Plaintiff cites the correct legal standard but then misapplies it. Plaintiff correctly notes that the Court should consider "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006). But Plaintiff then fails to apply these facts to his allegations against Officers Luffi and Perez. There are no allegations that either Luffi or Perez blocked or impeded Plaintiff's path or

---

[1] After first requesting that the Court dispense with half of the required qualified immunity analysis, Plaintiff then invites the Court to make a second error by applying the discarded pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957). But "*Twombly* retired the *Conley* no-set-of-facts test" and a plaintiff must now "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 670, 678 (2009). While the Court must draw *reasonable* inferences in Plaintiff's favor, it cannot assume facts that are not alleged in the Complaint. Thus, Plaintiff's allegations of a past history with Officers Perez and Luffi are no substitute for allegations that either Perez or Luffi ordered or caused her detention or somehow took steps to physically restrain her, i.e., the type of allegations that are the hallmark of a *Terry* stop and which the Complaint does not allege with respect to Officer Luffi or Officer Perez.

[2] Plaintiff does not contest Defendants' argument that they were acting within their discretionary authority, thereby shifting the burden to her to establish the lack of qualified immunity. Mot. at 5-8; *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

3

retained her identification.  *See id.* at 778 ("Notably, at no point did Lt. Gonzalez block Valdez's truck or otherwise obstruct Perez, Valdez, or the others' exit from the area.").  Likewise, there are no allegations that Luffi or Perez displayed weapons, physically restrained or even gave Plaintiff commands.  As for Plaintiff's age, education and intelligence, she alleges that she is a condominium association President and Treasurer and was represented by attorney, which tends to show sophistication.  *Compl.* ¶¶ 7, 10, 42.  Moreover, "the simple act of police questioning does not constitute a seizure."  *Perez*, 443 F.3d 772 at 778.  And the presence of one or more of the above factors does not automatically mean that a seizure occurred.  *See United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991) (subject was not seized and was free to leave even though his license was retained).

Nor does Plaintiff address that a Fourth Amendment seizure occurs "'***only*** when, by means of physical force or a show of authority, [a person's] freedom of movement is restrained.'" *Perez,* 443 F.3d at 772 (quoting *Craig v. Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997)) (emphasis added); *see also Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (Fourth Amendment violation must be *through means intentionally applied*).  Here, Plaintiff was not seized until ***Officer Garcia*** pushed her, ordered her to sit down, and then sandwiched her with Officer Escobar.  None of the prior conduct by Officer Luffi or Officer Perez constituted a restraint on Plaintiff's freedom.  This is not "viewing the facts in isolation," it is simply recognizing that up until the moment that Officer Garcia physically pushed Plaintiff and ordered Plaintiff to sit down and not to move, an objectively reasonable person would have felt free to leave because, prior to that moment, no officer had made a show of authority sufficient to cause a reasonable person to believe their freedom was restrained.  And Plaintiff fails to address the Officers' argument that there are no allegations that either Officer Perez or Officer Luffi instructed Officer Garcia to detain Plaintiff, gave commands restricting

Plaintiff's freedom of movement, or participated in her physical restraint. Officer Perez and Officer Luffi are thus entitled to qualified immunity because neither of them caused Plaintiff to be seized and their individualized actions therefore did not violate the Fourth Amendment.[3]

### III. No Clearly Established Law Put Officer Perez and Luffi on Notice That Their Conduct Could Make Them Liable for an Unlawful *Terry* Stop

Plaintiff's response confirms that there was no clearly established law that Officer Perez or Officer Luffi could be held liable for an unlawful *Terry* stop based on the facts alleged in the Complaint. Plaintiff unsuccessfully attempts to provide clearly established law in three ways. First, she claims that *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014), is a materially similar case in which an officer was held to have seized a plaintiff. Mot. at 10-12. It isn't. *West* actually found that all the conduct Plaintiff cites and analogizes to was "irrelevant" to the question of whether a seizure occurred, which happened only once the officer exercised physical control of the plaintiff:

> West was not seized while she was disputing Davis' request for her to remove her suit jacket. ***What happened before Davis grabbed West's hand . . . is irrelevant to the question of whether Davis seized West at the moment that he physically grabbed her hand. At that moment, if West is to be believed, she was seized.***

*West*, 767 F.3d at 1070-71 (emphasis added). *West* firmly supports the proposition that no seizure occurred up until the time that Officer Garcia allegedly ordered Plaintiff to sit down and physically restrained her by pushing and then sandwiching her. *Compl.* ¶¶ 35-37. *West* therefore supports Defendant Luffi and Perez's contention that no seizure occurred because of ***their*** conduct as

---

[3] Plaintiff's Response claims that the Motion is "unclear" as to whether Defendants are contesting that a constitutional violation occurred. Resp. at 7. To the contrary, the motion specifically argued that, considering each officer's actions individually, there were insufficient allegations that Plaintiff was seized by Officers Perez and Luffi, and further stated that they were entitled to qualified immunity "on both prongs." Mot. at 9-10. Nevertheless, because there was no controlling law in this jurisdiction on March 6, 2018 clearly establishing a claim "for an unlawful *Terry* stop under the facts and circumstances alleged here" with respect to Luffi and Perez's conduct, the easier means of disposing of this motion may lie on prong two. *Id.* at 7, 10.

5

alleged in the Complaint. And as the Eleventh Circuit explained in *Merricks v. Adkisson*, 785 F.3d 553, 564 (11th Cir. 2015), an officer has qualified immunity if there is a reasonable construction of prior caselaw that would support the contention that his actions did not violate the plaintiff's rights. Since a reasonable officer could read *West* to support that Officer Perez and Officer Luffi's actions were not unlawful, the qualified immunity inquiry should end here.

But while the holding of *West*—that the plaintiff was seized after the defendant grabbed her arm—supports the Officers' position here, the facts in *West* upon which the Plaintiff harps upon in her response—that the officer flashed his handcuffed and threatened the plaintiff's arrest—were found by the Eleventh Circuit to be ***insufficient*** to constitute a Fourth Amendment seizure. *See* Resp. at 10-11. In concluding that the plaintiff was seized, the Court specifically cited the ***physical force*** applied:

> Davis, a deputy sheriff, intentionally restrained her liberty of movement by physical force ***when he*** grabbed her hand, squeezed it, jerked and pulled her arm toward him, and wrenched her wrist back and forth. While Davis was applying physical force, albeit for only a brief time, West was surely not free to walk away or end the encounter . . .

*West*, 767 F.3d at 1070 (emphasis added). Given this holding, *West* cannot establish that either Officer Perez or Officer Luffi seized Plaintiff as neither is alleged to have exercised the type of physical control which *West* found constituted a seizure.[4] A reasonable officer could read *West* for the proposition that flashing handcuffs and making statements such as "I am going to be able to sit down and ask you questions" do not constitute a seizure absent the application of physical

---

[4] In any event, Plaintiff's reliance upon facts that were not essential the Court's holding in *West* cannot discharge his obligation to provide clearly established law supporting his position. Not only is dictum "not binding on anyone for any purpose," *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010), but this Court has particularly held that it "cannot clearly establish the law for qualified immunity purposes," *Jones*, 174 F.3d at 1288 n.11. "[O]fficers are charged with knowing the results of [precedential] cases," not "with memorizing every jot and tittle [courts] write to explain them." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019).

6

force or coercion because *West* found that officer's action in grabbing the plaintiff was when the seizure occurred and the prior conduct was not relevant to that seizure. 767 F.3d at 1070-71. This means that qualified immunity applies. *Merricks*, 785 F.3d at 564.

Second, Plaintiff attempts to rely upon general broad principles taken from Eleventh Circuit caselaw that a seizure without probable cause violates the Fourth Amendment. Mot. at 12-13. Relatedly, Plaintiff relies upon broad principles that an officer who instigates or causes an unlawful arrest is liable under the Fourth Amendment even if he or she does not make the arrest. *Id.* at 14-15. There are very the types of broad, general proposition that the Supreme Court has cautioned will almost never allow a plaintiff to discharged their burden. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The notion that Officer Perez or Officer Luffi, who never gave any order to restrain Plaintiff's liberty nor instructed another officer to do so, could be held personally liable does not "follow immediately" from these general propositions such that the matter is "beyond debate." *Id.* at 12, 16; *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, (2011).

Moreover, the issue here is not whether there was probable cause or reasonable suspicion, but whether Officer Perez and Officer Luffi can be held liable for ***another officer's*** alleged *Terry* stop based on the Complaint's allegations. None of the cases Plaintiff cites address ***this*** question. In part, this is because the cases Plaintiff cites generally deal with allegations of unlawful ***arrests***, not unlawful ***Terry* stops**. This distinction is significant because the law clearly delineates between different types of police-citizen encounters: consensual encounters, *Terry* stops, and full-scale arrests. *See Perez*, 443 F.2d at 777. A *Terry* stop implicates different constitutional considerations than an arrest: it can be justified by a lower level of cause than an arrest (reasonable suspicion instead of probable cause) and constitute a lesser infringement upon liberty.

The Eleventh Circuit had drawn this important distinction before in evaluation claims of

qualified immunity. In *Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015), the Court found that a warrantless *Terry* **stop** inside the home could not be conducted absent exigent circumstances but granted qualified immunity to the officers because the law was not clearly established, even though the Court had previously held in *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007), that a warrantless ***arrest*** could not be conducted inside the home absent exigent circumstances. Plaintiff cites no controlling authority specifying what level of participation an officer must have to be liable for another officer's *Terry* stop as opposed to an arrest. So none of these cases he cites provided fair notice to Officers Perez and Luffi that they could be liable for an unlawful *Terry* stop on the facts alleged here.[5]

Plaintiff has failed to show that every reasonable officer would interpret these cases, which are easily distinguishable, in the way that she does. Only one of the cases Plaintiff cites actually found that a non-arresting officer could be held liable for the arrest. *See Jones*, 174 F.3d at 1284 (non-arresting officer knowing probable cause was lacking participated in arrest by: (1) staying with plaintiff during call to state attorney, (2) being present during plaintiff's post-arrest interview, and (3) transporting plaintiff to jail). The other cases either found no constitutional violation by the non-arresting officer, *see Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013); *Jordan*, 487 F.3d at 1355-57, or implicated other legal theories and standards. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (custom and practice liability against Secretary of Department of Corrections); *Rodriguez v. Ritchey*, 539 F.2d 394 (5th Cir. 1977) (applying "good faith"

---

[5] The one case Plaintiff cites dealing with a *Terry* stop, *Childs v. Dekalb Cnty.*, 286 F. App'x 687 (11th Cir. 2008), cannot establish the law because it is unpublished and in any event stands only for the unremarkable proposition that a *Terry* stop performed without reasonable suspicion violates the Fourth Amendment. *See J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 (11th Cir. 2018) ("Unpublished cases . . . cannot be relied upon to define clearly established law."). *Childs* does not address the issue of whether and when a non-detaining officer can be held liable for a *Terry* stop.

8

standard historically applied before the Supreme Court adopted an "objective reasonableness" test for all Fourth Amendment claims). Whatever creative analogies an attorney may conjure from these cases, they do not provide the unambiguous, clear notice to every lay police officer that qualified immunity requires.

Third, Plaintiff attempts to abrogate qualified immunity based on the often invoked but rarely successful "obvious clarity" doctrine. But the facts Plaintiff attempts to marshal to show a violation of the obvious clarity doctrine allegedly occurred outside of Plaintiff's presence and are now the subject of a separate state court lawsuit for defamation. Resp. at 13. In this telling, Plaintiff ignores her allegations that a different officer, Officer Garcia, ordered Plaintiff to sit down obliquely stating in the passive voice that she "was forced to sit down." *Id.* Plaintiff does not point to any allegation in her Complaint that Officer Luffi or Officer Perez instructed or authorized Officer Garcia to force Plaintiff to sit down. And it is hardly obvious that a person can be seized within the meaning of the Fourth Amendment based on past defamatory statements and investigations. *Cf. Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) ("Plaintiffs have shown that Norris arguably wanted Hudson to arrest Sonia. But an officer's subjective intent is irrelevant in a qualified immunity analysis."). Nor it is obvious that a person can be seized merely by an Officer showing up at place at which they were not invited.

Fundamentally, Plaintiff's argument ignores that the essence of a seizure is the exertion of physical control terminating an individual's ***freedom of movement*** through means intentionally applied. *See Brower*, 489 U.S. at 596; *Perez*, 443 F.3d at 772. It is not at all obvious that Officer Luffi or Perez's conduct meets this standard. To invoke the obvious clarity exception, Plaintiff must show that the officer's conduct was "so egregious that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate

federal law." *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2017) (cleaned up).  The Eleventh Circuit has applied this exception sparingly.  Here, Officer Perez allegedly told Plaintiff "I can't wait to put you in a chair and ask you questions," and, once Plaintiff was seated, told her "I'm going to be able to sit across from you and ask you questions." *Compl.* ¶¶ 33, 41.  Officer Luffi allegedly untucked his shirt and flashed his handcuffs at Plaintiff.  *Id.* ¶ 38.  These allegation don't fit the bill for obvious clarity.  It is hardly "obvious" that every reasonable officer would consider this conduct to be so outrageous as to clearly constitute a seizure under the Fourth Amendment.  "[E]gregious" and "outrageous" are not words the Eleventh Circuit deploys indiscriminately; the obvious clarity exception is reserved for that small number of cases involving "depraved, inhumane" acts.  *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013).

Rejecting "obvious clarity" in *Echols v. Lawton*, 913 F.3d 1313 (11th Cir. 2019), the Court held that it was not clearly established that libel *per se* under state tort law violated the First Amendment.  *Id.* at 1324.  So too here it is hardly obvious (or even logical) that defamatory statements made prior to a police encounter can transform that encounter into a seizure.  Qualified immunity does not permit the imposition of liability based on *novel* theories of law, to wit, that a Fourth Amendment stop can occur because of *past* conduct that did not limit the plaintiff's freedom of movement.  The caselaw cited by both parties evinces a dearth of Eleventh Circuit precedent explaining when other officers on the scene can be held liable for another Officer's *Terry* stop.  Qualified immunity must be granted under these circumstances.

## CONCLUSION

Counts I and II should be dismissed based upon qualified immunity.

Dated:  February 8, 2021.

>Respectfully submitted,
>
>ABIGAIL PRICE-WILLIAMS
>Miami-Dade County Attorney
>Stephen P. Clark Center
>111 N.W. 1st Street, Suite 2810
>Miami, Florida  33128
>
>By:   /s/ Ezra S. Greenberg
>      Ezra S. Greenberg
>      Assistant County Attorney
>      Fla. Bar. No. 85018
>      Telephone: (305) 375-5151
>      Facsimile: (305) 375-5643
>      Email: ezrag@miamidade.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this day on Plaintiff's counsel via CM/ECF.

>/s/ Ezra S. Greenberg
>Assistant County Attorney