

| OFFICE OF THE STATE ATTORNEY | KATHERINE FERNANDEZ RUNDLE |
|---|---|
| 11th Judicial Circuit | State Attorney |
| Miami-Dade County, Florida | |

## ARREST WARRANT CHECKLIST

☒ **ARREST WARRANT COMPLETE:** SIGNED BY ASA
**REQUIRED INFORMATION:**

| | |
|---|---|
| WARRANT TYPE | CASE TYPE |
| DEFENDANT'S FULL NAME | RACE |
| SEX | DATE OF BIRTH |
| HEIGHT | WEIGHT |
| HAIR COLOR | EYE COLOR |
| IDS* - Identification Serial # assigned by CJIS | |
| CIN* - Criminal Identification Number aka MDPD jacket # | |
| CHARGE INPUT NUMBER(S) | |
| POLICE CASE NUMBER | AGENCY NUMBER |
| AFFIANT NAME | AFFIANT COURT ID # |
| ASA NAME & CJIS ID # | SAO DIVISION/UNIT # |
| MINIMUM/MANDATORY CODE | EXTRADITION CODE |
| VICTIM'S NAME AND ADDRESS (if applicable) | |
| * if deft previously arrested in Miami-Dade County | |

☒ STATEMENT OF FACTS ATTACHED; INITIALED BY ASA TO INDICATE APPROVAL

☒ CHARGE FORM(S) ATTACHED; SIGNED & DATED BY ASA (Not required for first degree murder).

☒ SWORN TESTIMONY TAKEN

☐ HABITUAL OFFENDER ASSESSMENT SHEET

☐ DISCOVERY/INITIAL WITNESS LIST COMPLETED (Even if not submitted with warrant paperwork).

☐ IF REFILE, COPY OF ORIGINAL INFORMATION AND CASE FILE SHEET ATTACHED

| POLICE OFFICER: IVETTE PEREZ | ASA: MARY ERNST |
|---|---|
| COURT ID NUMBER: 30-3199 | CJIS NUMBER: a18488 |
| PHONE NUMBER: (305)994-1027 | PHONE NUMBER: 305-547-0671 |
| WORK SCHEDULE: M-F | SECRETARY NAME: Tracey Ann Spencer |
| AGENCY NAME: MIAMI-DADE POLICE DEPT. | SAO UNIT NAME: ECU |
| AGENCY CODE NUMBER: 030 | SAO UNIT NUMBER: 056 |
| POLICE CASE NUMBER: PD170804295007 | COURT CASE NUMBER: |

INSTRUCTIONS FOR ARRESTING POLICE OFFICER: Submit all paperwork to the Case Processing Center (E.R. Graham Building Room, N-156, phone 547-0232. After typist has entered warrant into Automated Warrant Printing System (AWPS) and typed your Statement of Facts (SOF), you will receive original AWPS and Statement of Facts printouts. Before a judge, swear to and sign both the original AWPS form and your SOF; the judge should also sign both. Return both documents to the Case Processing Center; you can make a copy for your files and CPC will instruct you on whether/how to file the originals with the Clerk's Office. For specific instructions on processing emergency and after-hours warrants, see CPC Warrants Coordinator or Unit Supervisor.



IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

STATE OF FLORIDA            )
                            ) SS
COUNTY OF MIAMI-DADE        )

### AFFIDAVIT IN SUPPORT OF ARREST WARRANT

Before me, __Joseph Perkins__ a Judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, personally appeared Detective Ivette Perez, Badge Number 30- 03199, of the Miami Dade Police Department, Economic Crimes Unit, who being first duly sworn, deposed and says that she has probable cause to believe and does believe that **Marglli Gallego W/F DOB: 07/25/1981 SSN: XXX-XX-2599** did knowingly commit the offense of one (1) count of Grand Theft in the Second Degree in violation of Florida Statue §812.014(2)(B), a second-degree felony and one (1) count of Organized Scheme to Defraud in an amount of $50K or more, in violation of Florida Statute §817.034(4)(a)1, a first degree felony.

### AFFIANT'S BACKGROUND

Your Affiant has been a sworn Deputy Sheriff with the Miami Dade Police Department, Miami Dade County, Florida for (25) years, and assigned to the Economic Crimes Bureau for the past fourteen (14) years. Your Affiant has conducted investigations and made apprehensions of felony offenders who commit fraud related crimes. Your Affiant is knowledgeable in the areas of condominium fraud, check fraud, embezzlements, identity theft, credit card fraud, organized schemes and other frauds having an economic impact on businesses or individual victims.

This Affidavit is based upon information known personally to your Affiant based upon her investigation, and information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein. Your Affiant has participated in this investigation and spoken with other law enforcement agents. Because this Affidavit is being submitted for a limited

| Detective | /s/ME ASA | Judge |

purpose of establishing probable cause, your Affiant has not included every aspect, fact, or detail of this investigation.

### AFFIDAVIT IN SUPPORT OF WARRANT

Your Affiant was assigned as lead investigator into allegations of misappropriation of funds of Hammocks Community Association, Inc. (hereinafter referred to as "Hammocks") under Miami Dade police case number PD170804295007. Hammocks, which is located at 9020 Hammocks Blvd, in Miami Dade county, is the master association that oversees approximately 40 communities, spanning over approximately 3,800 acres of land. There are 6,527 units, consisting of single dwelling houses as well as apartment buildings. It is the largest homeowner's association in the state of Florida. Hammocks directly manages approximately eighteen of these communities while the remaining communities are self-managed. These self- managed communities maintain and manage their own common areas. Hammocks is directly responsible for setting budgets for the master community, collecting dues, maintaining the master common areas, including beaches, lakes, playgrounds, and parks, as well as public security and lighting.

Hammocks has a board of directors, each of whom must be voted in by property owners in the community. There are six unsalaried positions on the board, including President, Vice President, Treasurer, Secretary, and two directors. Pursuant to section 720.303 of the Florida Homeowners Association Statute each officer has a fiduciary duty to act in the best interests of Hammocks. In 2015, Marglli Gallego (hereinafter referred to as "The Subject") became Treasurer of Hammocks. In 2017, the Subject became President and currently holds that position.

After being assigned this investigation your Affiant met with several owners from the Hammock's community who raised concerns about a decline in the Hammock's reserve funds while the Subject was Treasurer and President. The owners told your Affiant that they had attempted to gather complete records explaining the dissipation of fund but claimed that the association did not provide full and complete records of expenses. They also claimed that there were often no board meeting minutes explaining major expenditures. Among the many allegations raised was the use of numerous credit cards and excessive expenditures of Hammocks funds.

In order to investigate these and other allegations, your Affiant requested the issuance of several subpoenas for financial records of the Hammocks. Your Affiant sought records from third


Detective

/s/ME
ASA

Judge

party vendors and financial institutions as well as records directly from Hammocks that are required to be maintained by every HOA pursuant to Chapter 720 of the Florida Statutes.

Your Affiant reviewed numerous subpoena responses from financial institutions with the assistance of Miami Dade Police Department Financial Analyst Renee Miller. While reviewing various financial documents and Association expenditures, Your Affiant observed that the Association spent approximately three hundred seventy-four thousand ($374,000.00) on KP Assurance S.I.U Services, Inc. (herein after referred to as "KP Assurance") between November 2015 to August 2017. Your Affiant learned that KP Assurance is a private investigations firm owned by an individual named Reginald Phillips. The firm's principle address is in Windmere, Florida, a community located approximately 15 miles from Orlando. This location is 250 miles away from Hammocks.

Your Affiant reviewed minutes of Hammock's board meetings covering the dates of No the KP Assurance expenditures in attempt to determine the purpose of the charges and to verify whether the expenses were approved by the board. Your Affiant reviewed Hammocks meeting minutes ranging from February 2015 to April 2017. Your Affiant could not locate any reference to KP Assurance in those minutes. After noticing the substantial expenditures for private investigative services Your Affiant subpoenaed KP Assurance for invoices for services provided to the Association, payment methods used by the Association, and copies of investigative files compiled on behalf of and provided to the Association.

In May of 2018, your Affiant subpoenaed Hammocks for financial records related to various Hammocks' vendors and methods of payment. This subpoena also included a demand for KP Assurance's invoices and records that your Affiant intended to compare against the records previously provided from KP Assurance. Service of the subpoena did not meet with a positive response. The Hammocks changed registered agents after service of the subpoena in May of 2018. The new registered agent, the law firm of Alfaro and Fernandez, did not contact the State Attorney's Office regarding the subpoena. They were then served a second time in October of 2018. After eventually accepting service, one of the attorneys explained that since they were not the records custodians, they did not have the documents to produce pursuant to the subpoena. Further, that same attorney explained it was not their responsibility to forward the subpoena to anyone at the Hammocks for production. In response, a subpoena was served upon the Subject in her capacity as President of the Association, in November of 2018.


Detective

/s/ME
ASA

Judge

The Subject responded with a motion to quash the State Attorney's investigative subpoena filed by her personal criminal attorney, Sabino Juaregui Esq. Ultimately, after a court hearing in camera on April 4, 2019, a judge ordered the Hammocks to provide the subpoenaed records. In April 2019, nearly one year after initially subpoenaing the Subject, as President of the Hammocks, for the records, your Affiant, through the State Attorney's office, began receiving flash drives from Hammocks. None of the flash drives received from Hammocks contained any documents related to KP Assurance as a Hammocks vendor.

A review of the KP Assurance files revealed that on multiple occasions, KP Assurance produced detailed files on individuals your Affiant knows from this investigation to have personal issues with the Subject. The files included full names, social security numbers, phone numbers, criminal histories, registered vehicles, properties owned, lienholders, and in many cases, the target individual's social media. The Subject requested the information on homeowners within the Association who are critical of the Subject, rival "political opponents", former employees of the Association, and a Miami Dade Police Sergeant that the Subject knew was assisting in the instant investigation. In each case, KP Assurance was paid out of a Hammocks' bank account or by a Hammock's credit card assigned to the Subject. Each invoice for services reads "Bill To: Marglli Gallego, 9020 Hammocks Blvd., Miami, FL 33916," the address for Hammocks Association.

Your Affiant interviewed Reginald Phillips (hereinafter referred to as "Witness"), the owner and registered agent of KP Assurance S.I.U Services, Inc. Witness said that he met the Subject through former Hammocks' attorney Celena Nash, Esq. Witness was originally hired by Hammocks to investigate a personal injury lawsuit filed against the HOA by a resident of the community. Witness said that he initially communicated with Nash but began dealing directly with the Subject while she was treasurer of Hammocks and running for president. According to Witness, the relationship started professionally and Witness did perform legitimate security and private investigation work for the Hammocks community, but the Subject eventually began asking him to perform investigations that he believed were personal, including performing surveillance on her residential property outside of the Hammocks. In addition, Witness was authorized to directly charge an American Express card belonging to the Hammocks but issued in Subject's name, via email in 2016. Your Affiant could not find mention of said authorization in the Board minutes she reviewed.

Detective          /s/ME          Judge
                 ASA

Witness told your Affiant that the Subject would routinely text him random photos of individuals she believed were "watching" her or that she thought should not be in various Hammocks locations, random license plates of "suspicious vehicles," and names of individuals she requested background checks on. Two such individuals were Hammock's resident Doria Wosk, who later filed for an order of protection against the Subject, and whom the Subject has sued multiple times. Subject also requested a background check and personal information for Sgt. C. Luffi, whom she knew to be investigating her at the time she made the request to Witness.

From November of 2016 through early 2017, the Subject began requesting surveillance on a residential property, located at 15399 SW 169 Lane, in Miami Dade County. The property is located outside the Hammocks community. Subject represented to witness that the property belonged to her and her husband, Jose A. Gonzalez. Your Affiant reviewed the property records for the residence located at 15399 SW 169 Lane and learned it is indeed owned by Jose A. Gonzalez, the Subject's husband. Mr. Gonzalez also uses the address on his Florida Driver's license as his residence. When requesting surveillance on the location, the Subject told Witness that she believed her home was in danger because various people in the Hammocks were out to get her.

Your Affiant could not find any mention of that surveillance on Subject's personal property within the Association minutes reviewed. Witness's invoices for surveillance on the Subject's 15399 property read, "Monitoring of area requested by client/suspicious activity." Witness positively identified the 15399 location as the one he monitored at the request of Subject outside the Hammocks' community. Witness confirmed that the Subject was the individual responsible for receipt and payment of all KP Assurance invoices.

He also stated that he repeatedly asked the Subject to sign a contract with KP Assurance, which would save the Hammocks money on costs of his services, but the Subject refused to do so. The address for the invoices was the Hammocks office address, not Subject's personal address. Your Affiant further noticed during the course of the investigation that the Subject used her personal email, "MarglliGallego@hotmail.com" rather a Hammocks issued email, to communicate with Witness. Witness stated that Subject had been aware of the State's 2018 investigative subpoenas to other Hammocks vendors and she told him he could throw any subpoenas he received away.

| Detective | /s/ME<br>ASA | Judge |

Many of the witnesses Your Affiant interviewed through the course of this investigation have expressed fear of reprisal from the Subject for speaking to the police and/or the Miami Dade State Attorney's Office. One form of feared reprisal is the Subject's filing of legal actions in either her individual capacity or her capacity as president of the Hammocks against individuals the Subject believes are "targeting" her unjustly. Your Affiant is aware of two motions for orders of protection against community members that were subsequently dismissed because the Subject failed to appear for scheduled one hearing and voluntarily dismissed the other. While these suits were ultimately dismissed, they caused great distress to the witnesses. One witness and vocal critic of the Subject, homeowner Maria Alonso, had both a civil lawsuit and an order for protection filed against her. In fact, the Subject's determination to resist criticism extended to your Affiant. In November of 2020, the Subject filed federal and state lawsuits against your Affiant and her sergeant, C. Luffi, alleging defamation, civil rights violations, and tortious interference of Hammocks' business among other claims.

Beyond the legal actions, your Affiant has received numerous complaints of verbal threats made to a variety of individuals who either live or work within Hammocks, including office personnel, homeowners, and maintenance workers, regarding the Subject's suspicions that they are against her in some way. Your Affiant has also received complaints of Hammocks Association office personnel who work with Subject photographing their home which caused fear and anxiety to the homeowners. Throughout your Affiant's investigation, numerous residents have stated that Subject improperly used the Hammocks' security services to harass individuals who disagree with her. These improper uses include following residents around the community, acting as personal security enforcement for Subject within the community, and denying access to Hammocks' offices or other common areas. These uses of Hammock's resources remain under investigation.

Your Affiant, along with Analyst Renee Miller, reviewed the invoices related to surveillance at the Subject's 15399 property between the dates of November 2016 and early 2017 and corresponding payments made by Hammocks through either a credit card or by check. The total amount for the surveillance performed outside the Hammocks, including one random tag search, was $49,826. The entirety of that sum was paid with Association funds.

In addition to the previously mentioned KP Assurance expenses, your Affiant and Investigator Miller observed other expenses that based upon your Affiant's training and experience appeared inconsistent with the expenses normally incurred with the operation of a homeowner's

Detective                    /s/ME                    Judge
                              ASA

association. For instance, upon review of American Express bills for cards paid for by the Hammocks Community Association, your Affiant noted that multiple cards assigned to Subject showed numerous charges for food items. In your Affiant's training and experience such charges are consistent with personal use. Your Affiant reviewed the Board meeting minutes for mention of authorization of these charges. Your Affiant was able to see from Board minutes that the Subject sought Board approval for expenses for food and catering for special occasions such as holidays or other community events. In those instances, however, a specific caterer or vendor was approved. Your Affiant was unable, however, to locate any authorization for the purchase of fast food or groceries with Association funds on a regular basis, consistent with personal use.

On June 29, 2016, a Hammocks' Amex card assigned to the Subject purchased $26.75 at Little Ceasars and $30.71 at Publix. On June 30, 2016, the Subject spent $141.16 at Miami Subs. On July 17, 2016, the Subject spent another $62.06 at Little Caesar's and made two transactions at Publix using the same card for a total of $30.26. Between June 27, 2016 and March 31, 2018, the Subject spent $171.60 at Amici's Trattorria; $252.97 at Bahama Breeze; $196.90 at Cakeland Bakery; $395.27 as Asados El Paisa; $946.58 at Domino's Pizza; $52 at Don Pan bakery; $390.87 at Dr. Limon Corp; $27 at Dunkin Donuts; $49.22 at Edible Arrangements; $122.55 at El Rancho Grande Mexican; $335.73 at Fresco y Mas; $43.60 at Galaxy Bakery; $75.96 at La Granja Polos; $66.30 at La Quebradita Mexican; $998.92 at Little Cesars; $669.56 at Longhorn Steakhouse; $123.62 at Los Verdes; $86.32 at Macita's Restaurant; $519.96 at McDonald's; $141.16 at Miami Subs; $54.12 at Panera Break; $40.90 at Party Cake Bakery; $66.88 at Pipobread Inc. Colombian Bakery; $512.09 at Pizza Hut; $122.46 at Pollo Tropical; $855.14 at Publix; $73.23 at Rinconcito Paisa; $948.60 at Sedano's; $219.08 at Sergio's; $173.00 at Starbucks; $352.89 at Winn Dixie. Each of these charges was paid for by Hammocks' funds.

Your Affiant and Analyst Miller also noted that between June 2016 and March 31, 2018, the Subject also charged shopping trips to Walgreens and Navarro's to the Hammocks American Express Card issued in her name totaling $210.43. Your Charges related to Google play, iTunes, and Ross were also on the same cards for a total of $457.47. Total charges for food, drug stores, and other sundries made on Hammocks American Express cards assigned to the Subject and paid for by Hammocks operating funds is $9,890.51 between June 27, 2016 and March 31, 2018.

_____                   /s/ME                   _____
Detective                     ASA                     Judge

Your Affiant's investigation has revealed that between November of 2016 and March of 2018, the Subject spent $59,716.51 of Hammocks' of funds for her own personal benefit in violation of her fiduciary obligations to the homeowners of the Hammocks community.

Based upon the foregoing, Your Affiant respectfully requests an arrest warrant for the arrest of The Subject for one (1) count of Grand Theft in the Second Degree in violation of Florida Statue §812.014(2)(B), a second-degree felony and one (1) count of Organized Scheme to Defraud in an amount of $50K or more, in violation of Florida Statute §817.034(4)(a)1, a first degree felony.

*The Defendant has made several statements that if she ever got arrested she would flee to Columbia where she has family*

**AFFIANT**
Ivette Perez
Miami Dade Police Department
Badge Number 30- 03199

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 30th DAY OF MARCH, 2021

JUDGE OF THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA
Joseph Perkins

Detective   /s/ME   Judge
            ASA