## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MARGLLI GALLEGO      :
                         :
        Plaintiff(s),     :
                         :
v.                     :       **CASE NO.: 20-24374-CIV-BLOOM**
                         :
IVETTE PEREZ, *et. al.*,   :
                         :
        Defendant(s).   :
_____:

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants Ivette Perez and Carlos Luffi move to dismiss Counts I and II of the Second Amended Complaint with prejudice.  *See* ECF No. 46 (hereinafter "*2d Am. Compl.*").

## INTRODUCTION

This is Plaintiff's third attempt to state a Fourth Amendment claim against Officers Perez and Luffi for an unlawful *Terry* stop during an HOA election on March 6, 2018.  The Second Amended Complaint, like the two previous complaints, consists of four identical counts alleging an unlawful *Terry* stop of against four officers, Defendants Perez, Luffi, Garcia and Escobar. *Compare 2d Am. Compl.* ¶¶ 182-217 *and Am. Compl.* ¶¶ 111-146 *with* ECF No. 1 ¶¶ 49-84.  The Court previously dismissed the Complaint against Officers Luffi and Perez because Plaintiff did not allege that they sufficiently participated in the *Terry* stop to render them individually liable. ECF Nos. 34-35.  Plaintiff has now filed an Amended and Second Amended Complaint (ECF Nos. 36, 46) but the *factual* allegations against Officers Luffi and Perez with respect to their participation in the *Terry* stop are substantially identical to those the Court already found insufficient.  In addition, Officers Luffi and Perez are entitled to qualified immunity because the liability Plaintiff seeks to impose upon them does not immediately follow from any binding precedent at the time of the alleged incident.  As shown by Plaintiff's attempt to incorporate various pre- and post-incident events, Plaintiff cannot establish liability based on Officers Perez and Luffi's conduct at the HOA election on March 6, 2018 under existing law and therefore seeks

instead to extend liability to a novel factual situation unsupported by any controlling precedent.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.**   ***The Court Dismisses Plaintiff's Original Complaint for Failing to Allege Sufficient Participation in the* Terry *Stop by Officers Luffi and Perez***

Plaintiff filed this lawsuit in October 2020 against four Miami-Dade County police officers alleging an unlawful *Terry* stop.  ECF No. 1.  The factual allegations in the Complaint were recounted in the first motion to dismiss and need not be repeated here.  ECF No. 22 at 2-3.  The only factual allegations supporting that a *Terry* stop occurred were that Officer Garcia pushed Plaintiff and told her to "sit down in this chair right now and don't move." ECF No. 1 ¶ 35. Plaintiff claims she did as she was told and Officers Garcia and Escobar then sat down on chairs on both sides of her, essentially "sandwiching" her.  *Id.* ¶¶ 36-38.  Constrained by these allegations, Officers Garcia and Escobar answered the Complaint.[1]  ECF Nos. 20-21.

Officers Perez and Luffi, on the other hand, moved to dismiss based on qualified immunity.  ECF No. 22.  They argued that there were no allegations that either of them ever made physical contact with Plaintiff or took any steps to restrain her liberty.  Plaintiff did not allege that she was ever handcuffed or physically restrained beyond the two (other) officers sitting down next to her. Simply put, Officer Garcia told Plaintiff to sit down, which she did, and then Officers Garcia and Escobar sat next to her. But there were no plausible factual allegations supporting the legal conclusion that *Officers Luffi and Perez* subjected Plaintiff to an unreasonable or prolonged investigatory stop.  *Compl.* ¶¶ 51, 60.  They were not alleged to have restrained Plaintiff, nor ordered her restraint; they were simply present during the detention that Officers Garcia and Escobar effected.  Plaintiff alleged that, prior to being restrained by Officer Garcia, Officer Perez "told [her] something along the lines of, 'I can't wait to put you in a chair and ask you questions.'" ECF No. 1 ¶ 33.  With respect to Officer Luffi, Plaintiff alleged that, *after she had already been*

_____

[1] Officers Garcia and Escobar do not waive any defenses to Plaintiff's claims and will contest them in due course.

*restrained by Officers Garcia and Escobar*, Officer Luffi "periodically lift[ed] up his untucked shirt and flashed his handcuffed at [her]." *Id.* ¶ 39.

The Court heard the motion on March 11, 2021. The Court found that Plaintiff's allegations against Officers Luffi and Perez were insufficient to show that they caused, instigated or participated in Plaintiff's detention. ECF No. 35 at 16:12-22, 20:1-8, 25:23-25. The Court also noted the lack of authority to support Plaintiff's contention that her past history with Officers Luffi and Perez could impact whether they objectively restrained her on the night in question. *Id.* at 17:8-21. Therefore, the Court concluded that Plaintiff had not alleged that Officers Luffi's or Perez's individual actions violated Plaintiff's constitutional rights. *Id.* at 21:14-22:1. Accordingly, the Court dismissed Counts I and II and granted Plaintiff leave to file an Amended Complaint. ECF No. 34. Notably, in dismissing Counts I and II of the Complaint, the Court did not address the second prong of the qualified immunity analysis (which it did not need to, having found that Plaintiff's claim failed on prong one).

## II.    *Officers Luffi and Perez Move to Dismiss Plaintiff's Amended Complaint*

Plaintiff filed her Amended Complaint on March 25, 2021. ECF No. 36 (hereinafter "*Am. Compl.*"). With respect to the actions of Officers Luffi and Perez surrounding the *Terry* stop, Plaintiff's allegations in her Amended Complaint were essentially unchanged. Rather than allege addition *actions* on the part of Officer Perez or Officer Luffi, Plaintiff's general tack was to simply copy and paste the legal elements that the Court found lacking into conclusory allegations of causation and participation. *Compare* ECF No. 35 at 20:5-8 ("[The Court:] It's unclear, based on the allegation, that those handcuffs were a signal to Officers Garcia or Escobar to prolong the detention") *and id.* at 25:23-25 ("[The Court:] it is unclear to the court the complete actions that show that they caused, instigated, or participated in the detention") *with Am. Compl.* ¶ 77 ("Officer Perez's statement clearly instigated, encouraged, incited, caused or contributed to Officer Garcia and Officer Escobar's illegal detention") *and id.* ¶ 91 ("Sergeant Luffi's act of flashing his handcuffs undoubtedly instigated or contributed to Officer Garcia and Escobar prolonging the

detention"); *see also 2d Am. Compl.* ¶¶ 85, 99 (same allegations with slight alterations).

Officers Luffi and Perez again moved to dismiss the Amended Complaint based on qualified immunity on April 8, 2021. ECF No. 39. But then, on or about April 15, 2021, Plaintiff was arrested pursuant to warrant for second degree grand theft and committing an organized scheme to defraud, a second and first degree felony, respectively. ECF No. 40 ¶¶ 10-11; ECF No. 40-1. Officer Ivette Perez was the affiant for the warrant. *Id.* Rather than respond to the Motion to Dismiss the Amended Complaint, Plaintiff apparently concluded that her allegations were still unlikely to overcome Officer Perez and Luffi's entitlement to qualified immunity and therefore moved for leave to amend the complaint again, which the Court granted. ECF Nos. 44-46.

### III.   *After Plaintiff is Arrested, the Court Grants Leave to Plaintiff to File a Second Amended Complaint*

The Second Amended Complaint, filed on May 14, 2021, retains the allegations from the Amended Complaint with only insubstantial stylistic changes in the first 117 paragraphs. *Compare 2d Am. Compl.* ¶¶ 7-117 *with Am. Compl.* ¶¶ 7-110.[2] It then includes an additional 63 paragraphs and 13 attachments challenging the factual predicate of Officer Perez's arrest warrant. *See 2d. Am. Compl.* ¶¶ 118-181 & Exhibits A-M. However, Plaintiff does not bring any new claims based upon these allegations and instead contends that they are relevant to show the "absence of mistake" on the part of the Officers Perez and Luffi. *Id.* ¶ 118 n.4.

Plaintiff still alleges that prior to being restrained by Officer Garcia, Officer Perez "told [her] something along the lines of, 'I can't wait to put you in a chair and ask you questions.'" *2d Am. Compl.* ¶ 79; *compare with* ECF No. 1 ¶ 33. Plaintiff still alleges that Officer Perez repeated the statement after she was restrained. *2d Am. Compl.* ¶ 107; *compare with* ECF No. 1 ¶ 41. With respect to Officer Luffi, Plaintiff modified her allegation from Luffi "*periodically* lift[ing] up his

---

[2] It appears that the new only factual amendments in these paragraphs are additional background allegations regarding the organization of the Hammocks HOA, *see 2d Am. Compl.* ¶¶ 11-12, 14-16, and a footnote about *another* prior incident where Officer Luffi accompanied a homeowner to request Hammocks documents. *Id.* ¶ 77 n.2.

4

untucked shirt and flas[ing] his handcuffs at [her]," ECF No. 1 ¶ 39 (emphasis added), to specifically alleging particular times that Luffi flashed his handcuffs: Plaintiff alleges that when Officer Garcia and Escobar first detained her "Luffi lifted up his untucked shift and flashed his handcuffs in their direction," that Officers Garcia and Escobar could see Luffi's actions, and that Luffi intentionally flashed his handcuffs numerous times in Officer Garcia and Escobar's direction while Plaintiff was being detained. *2d Am. Compl.* ¶¶ 95-97. Plaintiff's Second Amended Complaint thus replaced the allegation that Luffi flashed his handcuffs "periodically" with allegations that Luffi flashed his handcuffs once at the onset of the detention, *id.* ¶ 95, and then "numerous times" during the detention in the direction of Escobar and Garcia (who were allegedly sitting on both sides of Plaintiff), *id.* ¶ 97. There are not material changes.

Borrowing from the Amended Complaint, the Second Amended Complaint also contains additional allegations that are ***unrelated*** to Officer Perez and Office Luffi's conduct and actions with respect to the *Terry* stop and which are therefore insufficient to alter the Court's earlier conclusion that Plaintiff did not sufficiently alleged participation in the *Terry* stop by Officers Perez and Luffi:

First, Plaintiff provides additional factual allegations regarding the conduct that preceded the *Terry* stop with respect to Officers Luffi and Perez's arrival at the election. *2d Am. Compl.* ¶¶ 32-76. The thrust of these allegations is that Officers Luffi and Perez did not have the right to be present at the HOA election and remained despite being asked to leave. But this fact was already alleged in the first complaint and the Court did not find it probative of whether Officers Luffi and Perez's individual conduct could make them liable for a *Terry* stop effected by two other officers. Officers Luffi and Perez did not enter Plaintiff's living room, after all, but an HOA clubhouse that served more than 6,500 residential units. *Id.* ¶¶ 10, 35-36. Even if they had no right to enter the clubhouse, it hardly follows (and certainly not from clearly established law) that such action constituted a *Terry* stop of Plaintiff or anyone else.

Second, Plaintiff alleges that, upon their arrival, Officers Luffi and Perez told Officer

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

Garcia that **they** (i.e., Luffi and Perez) were going to arrest Ms. Gallego. *Id.* ¶¶ 48-49. Still absent, however, is any allegation that Officer Luffi or Perez instructed or directed Officer Garcia to detain Plaintiff in any manner. Plaintiff still does not allege that Officer Luffi or Officer Perez requested or directed that Officer Garcia or Officer Escobar assist in detaining or arresting Plaintiff. And Plaintiff was not actually arrested, or even handcuffed.

Third, Plaintiff launches a slew of allegations that Officer Perez's statement (that she couldn't wait to put Plaintiff in a chair and ask her questions) caused Officer Garcia to initiate the detention and, similarly, that Officer Luffi's flashing of the handcuffs was a signal to Officers Escobar and Garcia to prolong the detention. *Id.* ¶¶ 85-90, 93-94, 98-108. These are not allegations of fact, however. They do not describe any additional actions that either Officer Perez or Officer Luffi took beyond what was alleged in the initial Complaint. Rather, they are various regurgitations of a legal element that Plaintiff must prove (i.e., direct participation or instigation in the *Terry* stop) or attorney arguments dressed up as factual allegation. As a result, *Iqbal* and *Twombly* teach that they are not entitled to the presumption of truth and cannot be considered on a motion to dismiss. Moreover, since qualified immunity is based upon an evaluation of objective conduct, how Officers Garcia and Escobar interpreted the conduct is not relevant to the analysis.

Fourth, Plaintiff clarifies that her allegation that she was detained for "an extended period of time," ECF No. 1 ¶ 48, was in fact four-and-a-half hours, and that she was only released after Officers Perez and Luffi left. *2d Am. Compl.* ¶¶ 105, 109. Again, Plaintiff does not allege that Officers Perez or Luffi commanded her detention or release at any time.

## SUMMARY OF THE ARGUMENT

Plaintiff's ultimate allegation that Officer Luffi or Officer Perez *caused, instigated, or participated* in her detention is still based upon speculation and innuendo rather than objective facts. The underlying conduct on the night of the incident by Officers Perez and Luffi (i.e., Perez's statement that she could not wait to put Plaintiff in a chair and ask her questions and Luffi's flashing of his handcuffs) remains unchanged since the original complaint, which the Court already

found was insufficient. *Compare 2d Am. Copml.* ¶¶ 79 & 95-97 *with Am. Compl.* ¶¶ 71, 87-89 *and Compl.* ¶¶ 33, 39. In three attempts, the fact remains that neither Luffi nor Perez are alleged to have taken any actions which, under controlling precedent, objectively constitute participation or instigation of a *Terry* stop. To recap, neither is alleges to have made physical contact with Plaintiff, neither is alleged to have ordered Plaintiff not to move and neither is alleged to have ordered Officers Escobar or Garcia to restrain or to continue restraining Plaintiff. Neither retained Plaintiff's ID nor blocked her movement in any way.

And because Officers Luffi and Perez have shown that, under Plaintiff's allegations, they were acting within their discretionary authority, the objective standards embedded in the qualified immunity doctrine governs this motion—not Plaintiff's allegations of improper motivations. The only issues are these: Does Officer Perez's objective conduct constitute participation in a *Terry* stop? Does Officer Luffi's objective conduct constitute participation in a *Terry* stop? And did controlling caselaw provide fair notice to law enforcement officers that the answers to the foregoing questions are so obviously "yes" such that no reasonable officer could read the caselaw any other way? Unless the Court answers yes to all these questions, dismissal is required.

Because the objective inquiries of the qualified immunity doctrine govern this motion, Plaintiff's attempt to backdoor allegations of improper motives has no place here. Plaintiff's claims regarding Officer Perez and Luffi's pre-incident conduct are pending in a state defamation lawsuit and Plaintiff's criminal charges are pending in state criminal court. These are the proper fora for Plaintiff to address and litigate these allegations. The Second Amended Complaint only asserts a Fourth Amendment violation for a *Terry* stop on March 6, 2018. Neither the pre-incident conduct nor the post-incident arrest has any bearing on this claim. The Second Amended Complaint makes clear that Plaintiff has abandoned any pretense of submitting the "short and plain statement" that Rule 8 requires, opting instead for the kitchen sink approach, or what the Eleventh Circuit often refers to as "shotgun pleading." Of course, the reason Plaintiff has opted for the kitchen sink is because the Court has already found that the conduct she alleged by Officer Luffi

7

and Officer Perez does not compel that conclusion that these two officers individually participated in a *Terry* stop under our Circuit's controlling caselaw.

The upshot is that the defense of qualified immunity means that we don't have to play this game. Because the only question is whether binding caselaw law established that Officer Perez or Officer Luffi's individual conduct objectively constituted participation in a *Terry* stop, the Officers have no need to defend their pre-incident conduct nor the propriety of Plaintiff's post-incident arrest. Since Officers Perez and Luffi have established that they acted within their discretionary authority on March 6, 2018, *Plaintiff* bears the burden of showing that their individual conduct constituted an unlawful *Terry* stop in violation of clearly established law. This is an objective inquiry presenting a pure legal question for the Court, not a roving expedition into Officer Perez and Luffi's motives. Because Plaintiff cannot meet *this* burden, despite three attempts to do so, Counts I and II must be dismissed with prejudice based upon qualified immunity.

## MEMORANDUM OF LAW

I. **The Court Must Dismiss Counts I and II Because Plaintiff Does Not Allege that Officer Perez or Luffi Detained Her in Violation of Clearly Established Law**

### A. *Qualified Immunity Bars Any Suit Against Public Employees Who Are Not Alleged to Have Violated Clearly Established Law*

Qualified immunity exists to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citation omitted). The protection of qualified immunity "is the usual rule; only in exceptional cases will government actors have no shield against claims made against them" individually. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citation omitted).

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346

8

(11th Cir. 2002).  It is a "muscular doctrine" based on the premise that "officials can act without fear of harassing litigation only when they can reasonably anticipate – *before* they act or do not act – if their conduct will give rise to damage liability for them." *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir. 1996).  Importantly, qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). Therefore, "qualified immunity questions should be resolved at the earliest possible stage of a litigation," *Anderson v. Creighton*, 483 U.S. 635, 646 (1987), and "preferably on pretrial motions," *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991).

A government official acts within their discretionary authority when he or she "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266.  In other words:

> we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use excessive force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests.

*Id.*  "After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function—that is, pursuing his job-related goals—in an authorized manner." *Id.*

"Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation omitted).  When discretionary authority is established, the burden shifts to the plaintiff (1) to

9

demonstrate "a violation of a constitutional right" and (2) to also show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

On prong one, determining if a constitutional violation occurred, the Court does not "sit in judgment to determine whether an officer made the best or a good or even a bad decision" but only "whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense." *Buckley v. Haddock*, 292 F. App'x 791, 794 (11th Cir. 2008).  This "standard gives ample room for mistaken judgments." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotations omitted). Officials enjoy qualified immunity for mistaken judgments whether they arise from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231. So long as "reasonable people could disagree about whether a [police officer]—in the light of the then clearly established law—responded reasonably [under the] circumstances, qualified immunity must apply."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1030-31 n.8 (11th Cir. 2001).

On the second prong, the plaintiff's burden entails "the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [Fourth Amendment violation] ***beyond debate***." *Wesby*, 138 S. Ct. at 590 (emphasis added) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  The Supreme Court has instructed lower courts that they may not "define clearly established law at a high level of generality."  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742).  Rather, the proposition of law which the plaintiff must establish to succeed on his claims must "follow immediately" from existing caselaw.  *Mullenix*, 136 S. Ct. at 309 (quoting *Anderson*, 483 U.S. at 641). "We have said many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the

defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (cleaned up). The need for specificity is especially important in the Fourth Amendment context. *Wesby*, 138 S. Ct. at 590.

Importantly, "courts may grant qualified immunity on the grounds that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). However the court proceeds, both questions must be resolved against the officer before a motion asserting qualified immunity is denied. *Hall v. McGhee*, 762 F. App'x 837, 842 (11th Cir. 2019).

Finally, it is black letter law in this Circuit that only a decision from one of the three courts who decisional law is binding in this state—the U.S. Supreme Court, the Eleventh Circuit, and the Florida Supreme Court—can clearly establish the law for qualified immunity purposes. *E.g.*, *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003). The Supreme Court has, however, suggested that more than a single circuit precedent may sometimes be required to clearly establish the law in a particular case. *See Carroll v. Carman*, 574 U.S. 13, 17 (2014).

### B.  *Officers Perez and Luffi Were Acting Within Their Discretionary Authority*

Applying the Eleventh Circuit's caselaw, the Officers were acting within their discretionary authority in making an alleged *Terry* stop. "[I]n assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities." *See Harland*, 370 F.3d at 1266. "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description." *Id.* Conducting *Terry* stops, brief detentions that fall short of an arrest, clearly fall within the job description of a police officer and it is a means that officers are authorized to take, so Officers Luffi and Perez have established a *prima facie* entitlement to qualified immunity. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (explaining that a discretionary function is an act that is "of a

type that fell within the employee's job responsibilities" and that because "making an arrest is within the official responsibilities of a sheriff's deputy, [the defendant] was performing a discretionary function when he arrested [the plaintiff]") (quoting *Holloman*, 370 F.3d at 1265); *Billingsley v. Orr*, 1:13-CV-1337-VEH, 2015 WL 162568, at *7 n.8 (N.D. Ala. Jan. 13, 2015) ("Officer Orr was undoubtedly cloaked with discretionary authority in making the *Terry* stop").

### C.   Officers Perez and Luffi Are Entitled to Qualified Immunity Because They Did Not Violate Plaintiff's Constitutional Rights

Where, as in this case, an official was acting within the scope of his discretionary authority, the plaintiff bears the burden to show that qualified immunity should not apply.  *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

#### i.   Plaintiff Fails to Allege the Officer Luffi or Perez Subjected Her to a *Terry* Stop Under the Eleventh Circuit's Standard Criteria

To determine whether an officer subjects a citizen to a *Terry* stop, the Court must consider "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006). "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The Court "must be careful to evaluate a given defendant's qualified-immunity claim, ***considering only the actions and omissions in which that particular defendant engaged***." *Id.* (emphasis added); *accord Abella v. Simon*, 482 F. App'x 522, 523-24 (11th Cir. 2012) ("The district court erred when it based its decision on the collective actions of all defendants instead of deciding . . . qualified immunity based on the allegations about each of them.").

"Violation of the Fourth Amendment requires an intentional acquisition of physical

12

control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).  A "seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id.* at 596-97.  It is only an officer's "intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim." *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1166–67 (11th Cir. 2005).

On these facts, Plaintiff has not alleged that she was seized **by Officers Perez** or **by Officer Luffi** within the meaning of the Fourth Amendment.  There are no allegations that either Luffi or Perez blocked or impeded Plaintiff's path or retained her identification.  *Perez*, 443 F.3d at 778 ("Notably, at no point did Lt. Gonzalez block Valdez's truck or otherwise obstruct Perez, Valdez, or the others' exit from the area.").  Likewise, there are no allegations that Luffi or Perez displayed weapons, physically restrained or even gave Plaintiff commands.  As for Plaintiff's age, education and intelligence, she alleges that she is a community association President and Treasurer and was represented by attorney, which shows sophistication. *2d Am. Compl.* ¶¶ 17, 80.  Indeed, Plaintiff's reaction to Officer Perez's statement ("you can't do that") shows that Plaintiff knew she was not legally restrained by Officer Perez's statement. *Id.* ¶ 80.  Moreover, "the simple act of police questioning does not constitute a seizure." *Perez*, 443 F.3d 772 at 778.  And the presence of one or more of the above factors does not automatically mean that a seizure occurred. *See United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991) (subject was not seized and was free to leave even though his license was retained).

Here, neither Perez nor Luffi are alleged to have commanded or requested Officer Escobar or Officer Garcia to restrain Plaintiff.  Merely being present during other officers' *Terry* stop is not enough, because the Eleventh Circuit has never found bystander liability outside of the excessive force context.  As such, the length of the detention (while admittedly sufficient to show

13

that she was subjected to a *Terry* stop **by Officers Escobar and Garcia**) is not relevant to whether *Officers Luffi and Perez* are liable for the *Terry* stop because the factual allegations do not actually show that they ordered the stop to occur or actively restrained Plaintiff's liberty. *Cf. Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) ("Merely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action.").[3]

### ii.    Plaintiff's Conclusory Allegations of Participation Are Insufficient

Because Plaintiff lacks factual allegations showing that the conduct of Officer Perez or Officer Luffi *individually* can satisfy the *Perez* factors, she instead resorts to conclusory allegations that Perez and Luffi's conduct caused Escobar and Garcia to detain her. *2d. Am. Compl.* ¶¶ 85-89, 93-94, 98-108. There are two principal problems with this type of pleading. The first is that the Court does not credit conclusory allegations on a motion to dismiss; it looks only at the *factual* allegations to determines whether the legal conclusions are plausible. The second is that the standard to be applied on a Fourth Amendment claim is objective, not subjective. The question is whether, as a matter of law, Officer Perez's and Officer Luffi's actions constituted a seizure—not how those actions were subjectively interpreted by Plaintiff or other officers on the scene.

### 1. The Court Cannot Credit the Conclusory Allegations of Participation

None of the new allegations describe any *actions* on the part of Luffi or Perez that go beyond what was already alleged in the original complaint. Instead, the new allegations are simply *legal argument* that Luffi and Perez's conduct constitutes causation or participation in the *Terry*

---

[3] Plaintiff disclaimed any notion that she is proceeding on a failure to intervene theory, and we take her at her word. *See* ECF No. 29 at 14 ("Ms. Gallego is not asserting that Perez and Luffi failed to intervene in her illegal detention. Instead, Ms. Gallego asserts that Perez and Luffi *caused, instigated or participated* in her illegal detention."). Indeed, courts have granted qualified immunity on the basis that there is no clearly established duty to intervene outside the excessive force context. *See, e.g.*, *Rance v. Bradshaw*, 15-CV-81210-KAM, 2016 WL 3199002, at *9 (S.D. Fla. June 9, 2016); *Tarantino v. Citrus County Gov't*, 5:12-CV-434-OC-32PRL, 2014 WL 4385550, at *14 (M.D. Fla. Sept. 4, 2014).

stop, an essential legal element of Plaintiff's claim.  But "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Am. Bancard, LLC v. E. Payment Sols., Inc.*, 18-CV-80681, 2018 WL 3708462, at *4 (S.D. Fla. Aug. 3, 2018) (Bloom, J.) (allegation that defendant "'participated directly or indirectly in the conduct of the affairs of the enterprise' . . . is a mere legal conclusion couched as a factual allegation and does not satisfy the pleading requirements of *Twombly* and *Iqbal*").  Whether the facts alleged regarding Officer Luffi and Perez's conduct are sufficient to make them legally responsible for the *Terry* stop is a legal question for the Court.  The Court is not required, indeed, it is precluded, from accepting as true the allegations that are legal arguments and conclusions.

But that is all Plaintiff offers.  Lacking additional *factual* allegations regarding how Luffi or Perez participated or instigated Plaintiff's detention, Plaintiff provides a laundry list of legal arguments and conclusions couched as factual allegations.  For instance, Plaintiff claims Officer Perez and Luffi's statements and conduct "undoubtedly instigated, encouraged, incited, caused or contributed" to her detention by Officers Escobar and Garcia; that Perez's statements "had an effect on Officers Garcia and Escobar;" that Officers Garcia and Escobar "did exactly as Officer Perez wished;" that Officers Garcia and Escobar's actions are "reasonably related to Officer Perez's statement;" that Officers Garcia and Escobar "were not acting solely on their own volition;" and, that there "is no possible way Officer Perez's statement . . . did not influence or encourage Officer Garcia and Escobar's actions."  *2d Am. Compl.* ¶¶ 85-86, 88, 90, 93.  Similarly, Plaintiff claims that Luffi's actions "also instigated, encouraged, incited, contributed or caused" her detention;" that the flashing of the handcuffs "was clearly a signal to Officers Garcia and Escobar . . . to keep [Plaintiff] detained;" that the act of flashing handcuffs and refusing to leave the clubhouse "undoubtedly instigated or contributed to" prolonging the detention; that flashing the handcuffs was "reasonably related to . . . [the] prolonged detention;" that Garcia and Escobar "were clearly not acting solely on their own volition;" and that it "is extremely unlikely that

15

Sergeant Luffi's statements and actions . . . did not influence or encourage Officer Garcia and Escobar's detention" of Plaintiff. *2d Am. Compl.* ¶¶ 94, 98, 99, 100, 102-103.

These allegations are simply various ways of restating the legal conclusion that Perez and Luffi caused, instigated, or participated in the *Terry* stop. They do not add ***any facts*** with respect to Officer Perez and Officers Luffi's ***objective conduct*** that go beyond what was already alleged in the original complaint which the Court found lacking when conducting the individualized qualified immunity analysis that this Circuit requires.

## 2. Plaintiff Does Not Allege Conduct that *Objectively* Constitutes A *Terry* Stop

Even if, under the bizarre scenario Plaintiff has laid out, Officers Garcia subjectively interpreted "I can't wait to put you in a chair and ask you questions" to mean "put her in chair" and the flashing of handcuffs to mean "keep her in a chair," that still would not be enough to establish a constitutional violation and overcome qualified unless every reasonable officer would interpret those statements and actions in such a way. As the Supreme Court just recently reiterated, "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain, for we rarely probe the subjective motivations of police officers in the Fourth Amendment context." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (citing *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724-25 (2019)). Only an objective test is consistent with the principles of qualified immunity in allowing "the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." *Torres*, 141 S. Ct. at 998 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988)). The seizure does not "depend on the subjective perceptions of the seized person." *Torres*, 141 S. Ct. at 999.

For example, courts have no trouble concluding that when an officer orders a subject "to stop, turn around, and put his hands behind his back," this constitutes objective participation in a seizure even if other officers physically detain the subject. *See McDonough v. Mata*, Case No. 19-21986, 2020 WL 7350267, at *12 (S.D. Fla. Sept. 28, 2020). But precatory statements evincing an officer's subjective or conditional intent are not enough. And, for qualified immunity purposes,

there is no binding authority holding police officers liable for other officers' *Terry* stops based the type of conditional and ambiguous statements and conduct alleged here.

In *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014), for example, the officer told the subject to remove her jacket and that if she refused "her choices were to allow him to look under her clothes, to leave the courthouse or to be arrested" and "reached toward his waist belt and behind his back in the vicinity of his handcuffs, all the while glaring at her." *Id.* at 1066. But the Court found that this conduct was "irrelevant" to the question of whether a seizure occurred, which happened only once the officer exercised *physical control* of the plaintiff:

> West was not seized while she was disputing Davis' request for her to remove her suit jacket. ***What happened before Davis grabbed West's hand . . . is irrelevant to the question of whether Davis seized West at the moment that he physically grabbed her hand. At that moment, if West is to be believed, she was seized.***

*Id.* at 1070-71 (emphasis added). Similarly here, Officer Perez and Officer Luffi's conduct did not evidence a definitive, objective intent to restrain Plaintiff and they cannot be held liable merely for being present during other officers' restraint.

For the same reasons, Plaintiff's addition of 63 paragraphs of allegations attempting to refute the factual basis for her arrest warrant have no place in the qualified immunity analysis. *See 2d. Am. Compl.* ¶¶ 118-181 & Exhibits A-M. As Plaintiff concedes, she is only offering these allegations to show Officer Perez's *state of mind* under Fed. R. Evid. 404(b). *2d Am. Compl.* ¶ 118 n.4. But that is not an appropriate inquiry here because qualified immunity is determined based on an objective standard. "[Q]ualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). "Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Id.*; *accord Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

Here, Plaintiff is unable to allege objective conduct on the part of either Officer Luffi or Officer Perez regarding their direct participation in the *Terry* stop. *See Perez*, 443 F.3d at 778. As noted above, *all* of the traditional hallmarks of *Terry* stop are lacking with respect to either of these officers: They gave no commands to restrain Plaintiff's liberty, brandished no weapons, did not

17

block or impeded Plaintiff's path, nor retained her identification.  And they did not subject her to questioning while she was being detained by Officers Garcia and Escobar. So Plaintiff's allegations that Officers Escobar and Garcia somehow fulfilled the subjective desires of Officers Perez and Luffi cannot overcome qualified immunity absent concrete factual allegations that an objectively reasonable police officer would necessarily interpret Officer Perez and Luffi's conditional and ambiguous statements and conduct ***to require the Plaintiff's immediate detention***. As such, Plaintiff's claim fails the first prong of the qualified immunity analysis because she does not allege that the particular, individual actions of Officer Luffi or Officer Perez violated her constitutional rights by objectively constituting a *Terry* stop.

### D.      Officers Luffi and Perez Did Not Violate Clearly Established Law Based on the Second Amended Complaint's Allegations

Even if Plaintiff could allege the violation of a constitutional right, the Court would still be required to grant qualified immunity because imposing personal liability on Officers Luffi and Perez constitutes an *expansion* of current precedent in this Circuit because it is not *compelled* by clearly established law.  The Eleventh Circuit has never clearly defined what level of participation an officer must engage in to be liable for another officer's *Terry* stop (as opposed to an arrest).

A right is clearly established only if "every reasonable officer would have understood that what he [was] doing violate[d] that right," and "existing precedent . . . placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  Therefore, to the extent the Court finds that the first qualified immunity prong presents a close call, it necessarily follows that Officers Luffi and Perez win on prong two.

In any event, the existing precedent here discussing a *Terry* stop supports the view that neither Perez nor Luffi instigated or participated in a *Terry* stop here based on their conduct.  As discussed above, the Eleventh Circuit's published decision in *West* supports a reasonable reading that no seizure occurred up until the time that Officer Garcia allegedly ordered Plaintiff to sit down and physically restrained her by pushing and then sandwiching her.  *West* therefore supports Defendant Luffi and Perez's contention that no seizure occurred because of ***their*** conduct as

18

alleged in the Amended Complaint. *West* found that the officer moving towards his handcuffs and threatening the plaintiff's arrest were ***insufficient*** to constitute a Fourth Amendment seizure. In concluding that the plaintiff was seized, the Court specifically cited the ***physical force*** applied:

> Davis . . . intentionally restrained her liberty of movement by physical force ***when he*** grabbed her hand, squeezed it, jerked and pulled her arm toward him, and wrenched her wrist back and forth. While Davis was applying physical force, albeit for only a brief time, West was surely not free to walk away or end the encounter . . .

*West*, 767 F.3d at 1070 (emphasis added). A reasonable officer could read *West* for the proposition that flashing handcuffs and making statements such as "I am going to be able to sit down and ask you questions" do not constitute a seizure absent the application of physical force or coercion because *West* found that the officer's action in grabbing the plaintiff was when the seizure occurred and that the prior conduct was not relevant to that seizure. 767 F.3d at 1070-71.

And as the Eleventh Circuit explained in *Merricks v. Adkisson*, 785 F.3d 553, 564 (11th Cir. 2015), an officer has qualified immunity if there is a reasonable construction of prior caselaw that would support the contention that his actions did not violate the plaintiff's rights. Here, a reasonable officer could read *West* to support the contention that Officer Perez and Officer Luffi's actions did not constitute a Fourth Amendment violation in that they did not instigate or prolong the seizure. While that may not be the only reading of *West*, it is *a* reasonable one. Consequently, the qualified immunity inquiry should end here.

But if the Court proceeds further, it is apparent that Plaintiff cannot produce controlling precedent that liability attaches to an officer who is present during an allegedly unlawful *Terry* stop but gave no commands restricting a plaintiff's freedom of movement, did not instruct any other officer to detain the plaintiff, nor physically restrained the plaintiff herself. Indeed, the Eleventh Circuit's caselaw, as shown in the briefing on the first motion to dismiss, has not actually addressed what level or participation is necessary to make a non-restraining officer liable for a *Terry* stop. The cases the parties briefed and discussed at the hearing all arose in the *false arrest* context. It therefore follows that the type of "bright line" rule required to abrogate qualified immunity simple doesn't exist under these facts. *See Oliver*, 586 F.3d at 907.

19

The Eleventh Circuit has made this distinction before in evaluating claims of qualified immunity in the false arrest and *Terry* stop context.  In *Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015), the Court found that a warrantless ***Terry* stop** inside the home could not be conducted absent exigent circumstances but still granted qualified immunity to the officers because the law was not clearly established, even though the Court had previously held in *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007), that a warrantless ***arrest*** could not be conducted inside the home absent exigent circumstances.  Plaintiff will be unable to cite any controlling authority specifying what level of participation an officer must have to be liable for another officer's *Terry* stop as opposed to an arrest, let alone controlling precedent that would apply to the facts of this case.  And Plaintiff's attempt to bootstrap all of her historical grievances against Officers Luffi and Perez, both pre- and post-incident, and engraft them onto her *Terry* stop claim has no support in controlling caselaw.  To the contrary, controlling law provides that in determining whether a *Terry* stop occurred "the crucial test is whether, taking into account all of the circumstances ***surrounding the encounter***, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002) (emphasis added) (quotations omitted).

Because Plaintiff cannot allege the traditional hallmarks of a detention with respect to Officers Luffi and Perez based on the encounter itself, she is instead asking the Court to bless a novel theory of liability that does not follow immediately from binding precedents in this jurisdiction.  *See, e.g.*, *Mullenix*, 136 S. Ct. at 309.  Qualified immunity prevents this tactic. Because Plaintiff will be unable to cite any clearly established law existing on March 6, 2018 that make Officers Luffi and Perez liable for an unlawful *Terry* stop based on their individual conduct surrounding the encounter, qualified immunity bars these claims.

## <u>CONCLUSION</u>

Counts I and II should be dismissed with prejudice based upon qualified immunity.

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

Dated:  June 11, 2021.

Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida  33128

By:    /s/ Ezra S. Greenberg
       Ezra S. Greenberg
       Assistant County Attorney
       Fla. Bar. No. 85018
       Telephone: (305) 375-5151
       Facsimile: (305) 375-5643
       Email: ezrag@miamidade.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this day on Plaintiff's counsel via CM/ECF.

/s/ Ezra S. Greenberg
Assistant County Attorney