## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MARGLLI GALLEGO          :
                         :
    Plaintiff(s),      :
                         :
v.                       :    **CASE NO.: 20-24374-CIV-BLOOM**
                         :
IVETTE PEREZ, *et. al.*, :
                         :
    Defendant(s).      :
                         :

## DEFENDANTS' REPLY TO PLAINTIFF'S
## RESPONSE TO MOTION TO DISMISS COMPLAINT

Defendants Ivette Perez and Carlos Luffi file this reply to Plaintiff's Response (ECF No. 56) ("Response") to Defendants' Motion to Dismiss (ECF No. 53) ("Motion") Counts I and II of the Second Amended Complaint ("Complaint") based on qualified immunity (ECF No. 46).

## MEMORANDUM OF LAW

The Response not does not contest that Officers Perez and Luffi were acting within their discretionary authority, and therefore Plaintiff bears the burden to overcome both prongs of qualified immunity. Instead, the Response mischaracterizes or ignores Defendants' key arguments and improperly advances non-binding or off-point authority in an unsuccessful attempt to show a violation of clearly established law.

From the get-go, Plaintiff erroneously claims that the Motion does not address the issue of whether Officers Perez and Luffi participated, instigated, or somehow caused the *Terry* stop. ECF No. 56 at 1-2. Nothing could be further from the truth. The Motion devotes numerous pages to explain why Plaintiff's factual allegations do not establish that Officers Perez and Luffi acted in a manner would constitute objective participation in the *Terry* stop to render them legally responsible for it under clearly established law. *See, e.g.*, ECF No. 53 at 6 ("Plaintiff's ultimate allegation that Officer Luffi or Officer Perez *caused, instigated, or participated* in her detention is still based upon speculation and innuendo rather than objective facts."); *id.* at 7 ("In three attempts, the fact remains that neither Luffi nor Perez are alleged to have taken any actions which, under controlling precedent, objectively constitute participation or instigation of a Terry stop."), *id.* at 8

1

("the only question is whether binding caselaw law established that Officer Perez or Officer Luffi's individual conduct objectively constituted participation in a *Terry* stop").

And because Officers Perez and Luffi have asserted qualified immunity, a finding that they participated in the *Terry* stop is alone insufficient to deny the Motion; no controlling precedent can fairly be said to have provided them with fair warning that their conduct as alleged here would give rise to liability under § 1983 for an unlawful *Terry* stop.

Based on the same essential facts that the Court already found insufficient to state claims against Officers Luffi and Perez, Plaintiff advances the same arguments that the Court already rejected. First, that the Court should consider the prior conduct unconnected to the *Terry* stop to determine if individual liability attaches under the Fourth Amendment. ECF No. 56 at 10-14. Second, that Officer Perez or Luffi had a sufficient casual connection to the ultimate seizure that they are liable for it, citing the same cases that the Court previously distinguished. *Id.* at 14-18. And third, that general statements of law regarding arrests made without probable cause provided fair warning to abrogate qualified immunity for Officers Perez and Luffi based on the *Terry* stop effectuated by Officers Escobar and Garcia. These arguments, at most slight variants of the ones the Courts previously rejected, fail to overcome qualified immunity.[1]

### I. Plaintiff Cannot Rely on Events Unconnected with the Officer's Objective Conduct at the Time of the *Terry* Stop (Argument One)

Plaintiff cites no controlling law that an officer's prior history with a subject is relevant to determining whether the officer has participated in a Fourth Amendment seizure. To the contrary, controlling law provides that in determining whether a Terry stop occurred "the crucial test is whether, taking into account all of the circumstances ***surrounding the encounter***, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the

---

[1] Plaintiff also appears to entirely ignore or downplay all the new allegations in her Complaint regarding her arrest at the hands of Officer Perez, instead focusing on the conduct prior to the incident. It is therefore unclear what purpose was served by Plaintiff's latest amendment. Plaintiff added 63 paragraphs and 13 exhibits to her Complaint but now apparently concedes that these post-incidents events have no legal relevance to whether Officers Perez and Luffi have qualified immunity for the sole Fourth Amendment violation asserted against them. While this concession is well taken, it also means that Plaintiff's case is now entirely premised on an embellished version of the same complaint that the Court already found insufficient.

police presence and go about his business." *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002) (emphasis added) (quotations omitted).  The relevant factors were set forth in *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006), and discussed in the Motion but ignored it the Response.  Plaintiff further ignores that caselaw that "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain."  ECF No. 53 at 16 (quoting *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021).

Plaintiff does not cite caselaw that even comes close to supporting that the actual actions of Officers Perez and Luffi alleged in connection with the *Terry* stop—Perez's statement that could not wait to put plaintiff in a chair and ask questions, and Luffi flashing his handcuffs—constitute an objective intent to restrain that "every reasonable official" would necessarily understand would make them liable for a *Terry* stop.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Crocker v. Beatty*, 995 F.3d 1232, 1242 (11th Cir. 2021) (explaining that under qualified immunity "we must ask whether *every reasonable police officer in Beatty's position*" would have concluded that his actions violated the law). This is the *only* question before the Court. Unless every reasonable police officer would interpret these actions as unambiguous instructions to detrain and restrain Plaintiff, Plaintiff loses on prong one of qualified immunity.  And unless the caselaw was so clearly established that the conclusion on prong one "follow[s] immediately" such that the matter is "beyond debate," Plaintiff loses on prong two. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Plaintiff argues at length that the Court should consider all the conduct that occurred *prior* to the *Terry* stop (apparently conceding that Officers Perez and Luffi's conduct on the night of the incident is insufficient to establish liability).  The only case she cites for this proposition is Judge Moreno's decision in *Valdes v. Miami-Dade County*, No. 12-22426-CIV, 2013 WL 5429938 (S.D. Fla. Sept. 27, 2013).  There are probably a dozen ways to distinguish *Valdes* but there is simply no need: it is a district court decision that cannot clearly establish the law. *Corbitt v. Vickers*, 929 F.3d 1304, 1319 (11th Cir. 2019) ("only binding precedent can clearly establish a right for qualified immunity purposes") (quoting *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013).  And the summary affirmance by the Eleventh Circuit in November 2014—which was on an appeal brought

by Officer Puerto—not Officer Martinez,[2] the officer who had the prior history with the plaintiff—was unpublished and therefore also does not clearly establish the law. *See J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018) ("Unpublished cases . . . cannot be relied upon to define clearly established law."). The portion of the district court's order that Plaintiff chiefly relies upon to argue that the officer's past conduct is relevant never went up on appeal.[3] Because *Valdes* is not binding authority, qualified immunity relieves Officers Perez and Luffi from the burden of even having to distinguish it.

Once the smokescreen of *Valdes* is removed, the Court has the same authority before it as when it previously found that the conduct alleged in connection with the actual *Terry* stop was insufficient to state a Fourth Amendment violation against Officers Luffi and Perez. ECF No. 35 at 16:12-22, 20:1-8, 25:23-25. The Response fails to address the Motion's arguments that the relevant conduct alleged in the Complaint has not materially changed from the conduct the Court already found insufficient. ECF No. 53 at 4-5. Plaintiff's amendments have littered the Complaint with extraneous allegations regarding pre- and post-incident history and loaded up on conclusory allegations regarding causation, participation, and instigation. *Id.* at 4-6, 14-16. Plaintiff states she is *not* attempting to hold Officers Luffi and Perez liable merely for being present during a *Terry* stop which they knew was not supported by probable cause. *Cf. Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) ("There is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct."). So we are back where we started: Officer Luffi and Perez's actions did not objectively manifest

---

[2] *See Puerto* v. *Valdes*, Case No. 13-14810, 2014 WL 991343 (11th Cir. Mar. 6, 2014) (initial brief of appellant).

[3] The block quote on pages 12-13 of the Response is **not** contained in Judge Moreno's September 27, 2013 order (cited on page 12 of the Response) and was never on appeal. The quoted language comes from a later (uncited) order by Judge Moreno in February 2016 which held that an officer could be held liable for a false arrest notwithstanding the existence of probable cause. *See Valdes v. Miami-Dade Cnty.*, No. 12-22426-CIV, 2016 WL 680816, at *6 (S.D. Fla. Feb. 18, 2016). Because Plaintiff does not cite to this later order, the presentation in her brief misleadingly implies that this proposition was affirmed by the Eleventh Circuit's unpublished opinion in November 2014. (The undersigned was preparing to appeal this order when the case settled.).

their intention to restrain Plaintiff such that a reasonable officer would necessarily understand their actions to command Plaintiff's restraint under controlling caselaw.

>    II.   **Plaintiff Cites No Caselaw Showing the Officer Luffi or Perez Participated in a *Terry* Stop in Violation of a Clearly Established Law (Argument Two)**

Unable to locate her claim within the contours of the Eleventh Circuit's qualified immunity and *Terry*-stop jurisprudence, Plaintiff reaches all the way back to 1971 and the old-Fifth Circuit's decision in *Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971) ("*Anderson I*"). It is generally accepted that modern qualified immunity jurisprudence did not even begin for more than a decade later in *Harlow v. Fitzgerald*, where the Supreme Court jettisoned a "good faith" defense for public officials and substituted the standard of "objective reasonableness . . . as measured by reference to clearly established law." 457 U.S. 800, 818 (1982). Plaintiff indicates that the panel decision in *Anderson I* was "modified on denial of reargument." ECF No. 56 at 15. But the subsequent decision indicates that the case was in fact reargued. *Anderson v. Nosser*, 456 F.2d 835, 837 (5th Cir. 1972) ) ("*Anderson II*"), ("The court, having been convened en banc, having considered additional briefs and ***having heard oral argument***, modifies the panel decision in this matter.") (emphasis added). It gets worse. The portion of *Anderson I* that is block-quoted in Plaintiff's brief *is* the portion that was modified en banc. *Anderson I* found the Fire Chief and four police officers liable for holding plaintiffs in custody and not bringing them before a magistrate within the time prescribed by law based on the language Plaintiff block quotes on page 15 of her brief. *Anderson I*, 438 F.2d at 198. The en banc court modified that very holding and reversed the finding of liability against these five defendants because there was a lack of evidence that they arrested the plaintiffs or were able to take them before a magistrate. *Anderson II*, 456 F.2d at 839. Of course, clearly established law cannot be created by an invalidated opinion. *See Corbitt*, 929 F.3d at 1319.

The general proposition that a Fourth Amendment violation can occur even if the defendant does not personally restrain the plaintiff is not enough to abrogate qualified immunity here. The "clearly established law should not be defined at a high level of generality" but "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (cleaned up); *see also Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016) ("[C]ase law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal

law.") (cleaned up); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) ("The line between lawful and unlawful conduct is often vague. *Harlow*'s 'clearly established' standard demands that a bright line be crossed. The line is not found in abstractions . . . but in studying how these abstractions have been applied in concrete circumstances. If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). And "each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The Court "must be careful to evaluate a given defendant's qualified-immunity claim, ***considering only the actions and omissions in which that particular defendant engaged***." *Id.* (emphasis added). Generalized statements that an officer must "cause" the deprivation of individual rights to be held liable under § 1983 are not enough. We must look at the particularized facts of the cases Plaintiff relies on:[4]

- In *Jones v. Cannon*, 174 F.3d 1271, 1284 (11th Cir. 1999), the court found a non-arresting officer participated in the arrest and could be held liable when he (1) knew that probable cause was lacking, (2) stayed with the plaintiff during a call to the state attorney, (3) transported plaintiff to jail, and (4) took notes during plaintiff's post-arrest interview. *See* ECF No. 35 at 16:13-22 (distinguishing *Jones* from this case because the officer directly participated in the arrest).

- In *Jordan v. Mosley*, 487 F.3d 1350, 1354-57 (11th Cir. 2007), the court **granted** qualified immunity because it found that probable cause existed for the plaintiff's arrest.

- In *Wilkerson v. Seymour*, 736 F.3d 974 (11th Cir. 2013), the court found that an offer arriving after the arrest had already occurred could not be held liable for the arrest because he was entitled to rely on the arresting officer's good faith. The court distinguished *Jones* because the "non-arresting officer participated in the transportation, arrest, and report, while fully aware, based on his personal observations, that the basis for the arrest was fabricated." *Id.* at 980.

- In *McDonough v. Mata*, 489 F. Supp. 3d 1347, 1369 (S.D. Fla. 2020), the plaintiff stated a claim against a non-arresting officer who "ordering him to stop, turn around, and put his hands behind his back" and told him he was under arrest, even though another officer handcuffed him.

None of these cases, in factual terms, staked out a bright line that Officer Luffi or Officer

---

[4] *See* ECF No. 56 at 17 (citing *Jones, Jordan, Wilkerson,* and *McDonough*)

Perez crossed here. Two of the three Eleventh Circuit cases found no constitutional violation at all, so they could not possibly have put the officers on notice of anything. *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) ("The applicable law is clearly established if the preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances.") (cleaned up). *Jones* found liability for a non-arresting officer, but reasonable minds can easily distinguish it from the conduct alleged here, as the Court did during the March 11, 2021 hearing. ECF No. 35 at 16. In *Jones*, the non-arresting officer had physical custody of the plaintiff during the plaintiff's arrest and directly participated in the arrest. Nothing like that is alleged here.

And while *McDonough* is a 2020 district court case and thus cannot abrogate qualified immunity, it is illustrative in demonstrating that the critical facts alleged there are lacking here: the non-arresting officer gave verbal commands restricting the plaintiff's liberty, and told the plaintiff she was under arrest. The non-arresting officer's commands objectively manifested his intent to restrain the plaintiff by telling her to stop and put her hands behind her back. But suppose the non-arresting officer had merely told the plaintiff "I would like to arrest you" or "I can't wait to put you in a police car" or . . . "I can't wait to sit you down and ask you questions" and flashed his handcuffs in her direction. Would he still have been liable for another officer's arrest? Not according to *West v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014), where the court held that up until the physical restraint no Fourth Amendment seizure had occurred.

Plaintiff's allegation that Officers Perez and Luffi told Officer Garcia that ***they*** (i.e., Luffi and Perez) were going to arrest Ms. Gallego is not analogous to any of the cases Plaintiff cites. The statement was not made at the time of the *Terry* stop but beforehand, there was no subsequent statement that Officers Perez or Luffi ever made to Plaintiff that she was under arrest or not free to leave, or anything else objectively indicating that she was restrained, and there was no instruction given to Officers Garcia and Escobar to assist in Plaintiff's detention. So this fact does not show that Officer Luffi or Perez manifested an objective intent to restrain Plaintiff at the time and is fairly distinguishable from all the cases Plaintiff cites. *See Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017) (explaining that if the "factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case" qualify

7

immunity must be granted); *cf. Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) ("Plaintiffs have shown that Norris arguably wanted Hudson to arrest Sonia. But an officer's subjective intent is irrelevant in a qualified immunity analysis.").

Plaintiff's final contention that a reasonable jury could find that Officer Perez and Luffi participated in her detention misses the mark. ECF No. 56 at 18. The argument that a jury ***could*** conclude that the officers acted unreasonably has no place when qualified immunity is asserted because to overcome qualified immunity the facts pled must show that ***every reasonable officer*** would understand their actions to be violating a clearly established right:

> For a court to conclude that—in the light of the clearly established law at the pertinent time—a hypothetical jury, considering all the complaint's alleged facts as true, could decide that the defendant responded unreasonably is not sufficient to overcome the qualified immunity defense raised in a Rule 12(b)(6) motion. This formulation is nothing more than saying that reasonable people might or might not think—this is, could disagree about whether—the government actor behaved unreasonably. It is this kind of situation—that is, one where the alleged facts (accepted as true) leave the legal consequences uncertain—for which the defense of qualified immunity was designed.

*Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001) (en banc) (abrogated on other grounds). Applying this understanding here, Plaintiff has not shown that the state of the law in this Circuit on the date of the incident would have required ***every reasonable officer*** to understand that the conduct alleged by Officers Perez and Luffi would make them liable for a *Terry* stop. Plaintiff does not even come close to citing caselaw that provides the type of clear notice to officers that stating "I can't wait to put you in a chair and ask you questions" is an instruction to detain, or that flashing handcuffs is an instruction to prolong the detention.

### III. This Case Does Not Fall Under the Obvious Clarity Exception (Argument Three)

A right is clearly established only if "every reasonable officer would have understood that what he [was] doing violate[d] that right," and "existing precedent . . . placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Even if the Court were to find that the first qualified immunity prong presents a close call, Officers Luffi and Perez win on prong two. This is the very type of case which the district court should simply bypass the first qualified immunity prong because prong two is clear as a bell. *See id.*

Plaintiff's attempt to analogize liability here based on cases from the *false arrest* context

presents an insurmountable obstacle: the Eleventh Circuit has already found that establishing liability in the false arrest context does **not** create the type of bright-line, clear warning that qualified immunity requires. Otherwise, *Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015), would have denied qualified immunity to the officers based on the earlier holding of *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007). The Eleventh Circuit's caselaw makes clear that claims for false arrest and for unlawful *Terry* stop claims are different legal animals when it comes to clearly establishing legal doctrine. ECF No. 53 at 19-20. It is therefore highly significant that Plaintiff cites no controlling authority explaining what a non-detaining officer must say or do to be held liable for another officer's *Terry* stop under the Fourth Amendment.

Plaintiff fails to respond to this argument and instead attempts to abrogate qualified immunity based on the general proposition that a seizure without probable cause violates the Fourth Amendment. ECF No. 56 at 18. Plaintiff even claims that qualified immunity is inapplicable because probable cause or reasonable suspicion did not exist. *Id.* at 20. But qualified immunity protects an officer whenever their **conduct** does not violate clearly established law; it does not hinge on one element of a claim (i.e., lack of probable cause or reasonable suspicion) to the exclusive of others (i.e., whether the officer's conduct objectively constituted a seizure). In *Corbitt*, for example, the Eleventh Circuit granted qualified immunity on a claim by a plaintiff who was accidentally shot because—irrespective of whether there was probable cause to shoot—it was not clearly established that the "accidental effects of official actions targeting others gives rise to a Fourth Amendment violation." 929 F.3d at 1323. Qualified immunity applies whenever a reasonable officer could conclude that his action did not violate clearly established law. Because there is no caselaw even applying the *participation* rationale of *Jones v. Cannon* to the *Terry* stop context, let alone on facts analogous to these, a reasonable officer could easily conclude that here.

Ultimately recognizing that no controlling caselaw provides the type of fair warning that qualified immunity requires, Plaintiff retreats to the "obvious clarity" exception—the rare case where a factually analogous precedent is not required. But to invoke the obvious clarity exception, a plaintiff must show that the officer's conduct was "so egregious that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law." *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2017) (cleaned up). The Eleventh

9

Circuit has applied this exception sparingly generally reserving it for excessive force cases where the factual situation, though somewhat novel, evidences a level of force that is so clearly beyond what the Fourth Amendment permits. Here, Officer Perez allegedly told Plaintiff "I can't wait to put you in a chair and ask you questions," and, once Plaintiff was seated, told her "I'm going to be able to sit across from you and ask you questions." Officer Luffi allegedly untucked his shirt and flashed his handcuffs at Plaintiff. These allegations do not fit the bill for obvious clarity. It is hardly "obvious" that every reasonable officer would consider this conduct to be so outrageous as to clearly constitute a seizure under the Fourth Amendment. "[E]gregious" and "outrageous" are not words the Eleventh Circuit deploys indiscriminately; the obvious clarity exception is reserved for that small number of cases involving "depraved, inhumane" acts. *Gilmore*, 738 F.3d at 279.

Rejecting "obvious clarity" in *Echols v. Lawton*, 913 F.3d 1313 (11th Cir. 2019), the Court held that it was not clearly established that libel *per se* under state tort law violated the First Amendment. *Id.* at 1324. So too here it is hardly obvious (or even logical) that defamatory statements made prior to a police encounter can transform that encounter into a seizure.

The general statements of law upon which Plaintiff relies do not make it obvious to every reasonable officer that Officers Perez or Luffi could be liable for participating in the *Terry* stop that allegedly occurred here. The Eleventh Circuit "has observed on several occasions that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Corbitt*, 929 F.3d at 1312. The facts here are not so egregious or exceptional that Officer Perez or Officer Luffi should have known that their conduct would render them individually liable for a Fourth Amendment seizure even though neither of them (1) physically restrained Plaintiff (as in *Jones v. Cannon*), (2) gave Plaintiff any commands restricting her movement (as in *McDonough v. Mata*), or (3) instructed any other officer to detain or restrain Plaintiff. On the most generous reading of the Complaint, Officers Perez and Luffi's liability here is at least debatable under existing precedent, which means they are entitled to qualified immunity.

## CONCLUSION

Counts I and II should be dismissed with prejudice based on qualified immunity.

Dated:  July 16, 2021

                        Respectfully submitted,

                        GERALDINE BONZON-KEENAN
                        Miami-Dade County Attorney
                        Stephen P. Clark Center
                        111 N.W. 1st Street, Suite 2810
                        Miami, Florida 33128

By:    /s/ Ezra S. Greenberg
        Ezra S. Greenberg
        Assistant County Attorney
        Fla. Bar. No. 85018
        Telephone: (305) 375-5151
        Facsimile: (305) 375-5643
        Email: ezrag@miamidade.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this day on Plaintiff's counsel via CM/ECF.

                        /s/ Ezra S. Greenberg
                        Assistant County Attorney