```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                    CASE NO. 1:20-CV-24374-BB
 3

 4    MARGLLI GALLEGO,
                                        Miami, Florida
 5            PLAINTIFF,

 6            vs.                       August 23, 2021
                                        Monday
 7    IVETTE PEREZ, CARLOS LUFFI,
      RICKY GARCIA, FLAVIO ESCOBAR,     Scheduled for 2:00 p.m.
 8                                      2:00 p.m. to 2:59 p.m.
              DEFENDANTS.
 9                                      Pages 1 - 47

10    -------------------------------------------------------
                              HEARING
11                              ON
                         MOTION TO DISMISS
12

13            BEFORE THE HONORABLE BETH BLOOM
                 UNITED STATES DISTRICT JUDGE
14

15    APPEARANCES (VIA ZOOM):

16    ON BEHALF OF PLAINTIFF:    HILTON NAPOLEON, II, ESQ.
                                 Rasco Klock Perez Nieto, P.L.
17                               2555 Ponce De Leon
                                 Suite 600
18                               Coral Gables, Florida  33134

19    ON BEHALF OF DEFENDANTS:   EZRA GREENBERG, ESQ.
                                 Miami-Dade County Attorney's Office
20                               111 N.W. 1st Street
                                 Suite 2810
21                               Miami, Florida  33128

22
      STENOGRAPHICALLY
23    REPORTED BY:               GLENDA M. POWERS, RPR, CRR, FPR
                                 Official Court Reporter
24                               United States District Court
                                 400 North Miami Avenue
25                               Miami, Florida  33128
```

```
1                    (Call to the order of the Court:)

2            THE COURT:  Good afternoon.

3            MR. GREENBERG:  Good afternoon, Your Honor.

4            THE COURT:  It's good to see everyone.  I think we're

5   waiting for -- there's a lot of people.  All right.

6            Let's go ahead and call the case and we'll get started.

7            COURTROOM DEPUTY:  Civil Case Number 20-24374, Gallego

8   versus Perez, et al.

9            Counsel, please state your appearances for the record,

10  starting with the plaintiff's counsel.

11           MR. NAPOLEON:  Good afternoon, Your Honor.

12           Hilton Napoleon on behalf of the Plaintiff Marglli

13  Gallego, who's present on Zoom.

14           THE COURT:  Good afternoon.

15           MR. GREENBERG:  Good afternoon, Your Honor.  Assistant

16  County Attorney, Ezra Greenberg, for the defendants.

17           THE COURT:  Good afternoon.  Is there anyone else that

18  would like to make an appearances?

19           (No verbal responses.)

20           THE COURT:  All right.  I see we have some individuals

21  that are watching.  Welcome.  I hope everyone is safe and well.

22  It's good to see everyone again.

23           We were together on March 11th this year, and at that

24  time we had a hearing on the motion to dismiss that was filed,

25  and the amended complaint was then filed with the Court; and
```

1    before the Court today is Docket Entry 53, which is the

2    Defendants Ivette Perez and Carlos Luffi's motion to dismiss

3    the second amended complaint.

4         And since I have had the benefit of reading the

5    transcript that was ordered by one of the parties,

6    Mr. Greenberg, you had framed the issue at the last hearing,

7    and it was framed as follows:

8         In this case is what level of participation does an

9    officer who is not the one restraining the plaintiff have to

10   engage in in order to be liable.

11        So, with that, that statement made, I want to insure

12   that we are at the same point where we were last time; and that

13   is, Mr. Napoleon, on behalf of your client, you have conceded

14   that the officers in this case, Officers Perez and Luffi, had

15   discretionary authority; is that correct?

16        MR. NAPOLEON:  Yes, Your Honor, we did -- we

17   reluctantly conceded that point, but I think that that is the

18   correct legal concession.

19        THE COURT:  All right.  And then, as we know, then the

20   burden shifts to the plaintiff to show that the, number one,

21   that there has been demonstrated a violation of a

22   constitutional right; and then, secondly, to show that the

23   right at issue was clearly established at the time of the

24   defendants' alleged misconduct.

25        And so I set those parameters -- and that's the

1    United States Supreme Court's case of Pearson versus Callahan.

2    And I set those parameters because, Mr. Greenberg, it does

3    appear that since the argument and the motion to dismiss

4    focuses on the clearly established -- and whether that right at

5    issue is clearly established based on the defendants' alleged

6    misconduct, are you conceding that there was, as alleged, a

7    violation of a constitutional right as to the actions of

8    Officers Garcia and Escobar?

9        MR. GREENBERG:  Well, I answered the complaint on

10   behalf of Garcia and Escobar, so I determined that it wasn't

11   worth moving to dismiss on their behalf.  I certainly --

12       THE COURT:  Is that in regard to this motion?

13       MR. GREENBERG:  Right.  This motion is -- I'm only here

14   on behalf of Officer Perez and Officer Luffi.

15       THE COURT:  Of course, but I just want to insure that

16   for purposes of this motion, are you conceding that as alleged

17   in the operative complaint that Officers Garcia and Escobar

18   violated Ms. Gallego's constitutional right?

19       MR. GREENBERG:  I'm only going to -- I'm only willing

20   to concede that they were the officers that engaged in the

21   seizure, to the extent that there's one alleged.  I don't want

22   to go into clearly established or anything like that.

23       But we made the strategic decision to answer for them,

24   and I think that a seizure is alleged, and I do believe that

25   the complaint alleges that the seizure was committed by

```
 1    Officers Escobar and Garcia.
 2          THE COURT:  And there was a seizure, but I guess my
 3    question is, are the defendants conceding that the officers
 4    lacked any constitutional basis to detain the plaintiff?
 5          MR. GREENBERG:  We certainly don't concede that, but
 6    the complaint appears to allege that as to officers -- as to --
 7    well, the complaint -- scratch that, Your Honor.
 8          We're not arguing that there was probable cause or
 9    reasonable suspicion at this juncture.  We certainly reserve
10    the right at summary judgment or trial.
11          But for purposes of this motion to dismiss, we're
12    simply arguing that there was no clearly established right
13    violated with respect to the conduct of Officer Perez and
14    Officer Luffi.
15          THE COURT:  All right.  Then can you --
16          MR. GREENBERG:  Because their --
17          THE COURT:  I'm sorry.  I apologize.
18          MR. GREENBERG:  No, I apologize, Your Honor.
19          -- because their conduct did not rise to the level --
20    their personal conduct of a seizure under clearly established
21    law.  We're not arguing that there was reasonable suspicion or
22    probable cause.  I think that the complaint amply demonstrates
23    that there wasn't, at least at this stage.
24          THE COURT:  All right.  And I know that the time that
25    is alleged that Ms. Gallego spent in a chair, so to speak, was,
```

1    in fact, a long period of time, four-and-a-half hours.  I know

2    that the parties have framed it as a Terry stop.

3          But let me ask, Mr. Greenberg, for purposes of the case

4    law, in looking at that third prong, is there a distinction in

5    the case law between a Terry stop versus any other type of

6    seizure?

7          MR. GREENBERG:  Well, certainly, the Eleventh Circuit

8    has told us that a Terry stop and an arrest are two different

9    animals, and they're to be analyzed differently.  But this was

10   framed as a Terry stop, and that's how we've litigated it.

11         THE COURT:  So is that the distinction that is to be

12   drawn, that when we look at the question of clearly established

13   law, that the clearly established law is not -- does not exist

14   with regard to Terry stops as opposed to any other type of a

15   Fourth Amendment violation?

16         MR. GREENBERG:  No, I wouldn't -- I wouldn't say that.

17   I think that you have to look at the particular conduct that's

18   alleged in this case and ask whether that rises to the level of

19   a constitutional violation.  In this -- because of the way the

20   complaint is framed, she's only alleging the Terry stop, she's

21   not alleging an arrest, so that's how we're traveling.

22         THE COURT:  But I just wanted to ask, for purposes of

23   the motion to dismiss, is there a distinction between cases

24   involving Terry stops and officers who are the non-arresting

25   officers but may participate in some way, is there a

1  distinction between those cases versus cases where there is

2  some type of a different constitutional violation?

3      MR. GREENBERG:  Yeah, there certainly is.  And the

4  Eleventh Circuit has told us to draw that distinction, and they

5  said in their own cases that the example that has come up in

6  the case law was the situation of an entry into the home with

7  probable cause but without a warrant, exigent circumstances.

8      And the Court initially held that you could not do that

9  in the case of an arrest.  But then they subsequently have a

10 situation with a Terry stop, and they said you can't do that

11 either, but we're going to hold that that's not clearly

12 established because false arrest case law doesn't, obviously,

13 translate into Terry stop case law.

14     And if you look at the situation here, it lacks the

15 hallmarks of a traditional arrest.  There's no handcuffing.

16 There's no booking.  There's no placing the plaintiff in the

17 vehicle.  And I think Mr. Napoleon has appropriately alleged it

18 as such.

19     And I think that's important in the analysis that the

20 Court has to do because it adds to the ambiguity of this

21 situation, because, ultimately, the Court has to overlay two

22 objective standards here.

23     The first is the objective standard of the First

24 Amendment, and ask, did the conduct of Officer Luffi or Officer

25 Perez rise to the level that it would objectively indicate

1      their intent to restrain the plaintiff?

2            We certainly think the answer is no, and Your Honor

3      agreed with us when we were here in March.

4            On the second question, though, we then need to overlay

5      the qualified immunity standard and the standard of how an

6      objectively reasonable officer would view the

7      Eleventh Circuit's case law in this situation.

8            And the fact remains after two rounds of briefing that

9      no case has been cited by the plaintiff -- and this is her

10     burden -- that would clearly establish the law in her favor in

11     this situation.

12           And it's important to remember what clearly established

13     law means.  It means that the law is so clear that it's not

14     even debatable.

15           If it's even debatable whether Officer Luffi or Officer

16     Perez's conduct rose to the level of a constitutional

17     violation, then they win on the second prong of qualified

18     immunity.

19           And I think it's important to point out that the

20     Supreme Court historically requires lower courts to go through

21     what it called the "order of battle" and hit prong one and then

22     prong two of the qualified immunity analysis.

23           And they did away with that in 2009 with a case called

24     Pearson versus Callahan, because over the years the justices

25     decided that it was simply inefficient and overly burdensome on

1    the lower courts.  And I think this is a case that typifies why

2    the Supreme Court went away from it; because to the extent that

3    prong one is at all difficult, that just makes prong two easy.

4         And I think that the Court's analysis and the level

5    of -- the burden on the Court would simply be much easier to

6    simply address this on prong two, because if the constitutional

7    right is not clearly established, it's sort of pointless on a

8    case like this, which arises from facts that appear to be quite

9    unique and unlikely to recur.

10        There seems to be little reason why we should even do

11   prong one, when the Court has that option that the Supreme

12   Court has given it to just -- to go straight through to prong

13   two.  We don't need to ultimately decide whether the level rose

14   to participation necessary to make them liable, because the

15   case law is simply not clear enough to render the matter beyond

16   today.

17        THE COURT:  And I know these are certainly novel facts.

18   I think you've even termed them to be bizarre.

19        But let me ask with regard to the Eleventh Circuit case

20   law, because in the case of Jones -v- Cannon and Jordan -v-

21   Mosley, both are published Eleventh Circuit cases, and in the

22   Fourth Amendment context they each provide that the

23   non-arresting officer -- in this case, obviously, we know that

24   with regards to Officers Perez and Luffi, who instigate or

25   sufficiently participate in an unconstitutional arrest can be

1   liable under the Fourth Amendment.

2        So don't those cases provide Officers Luffi and Perez

3   with clear warning that their conduct was unconstitutional?

4        MR. GREENBERG:  Not at all, Your Honor.

5        First of all, Jordan against Mosley ultimately decided

6   the issue on probable cause and found that there was probable

7   cause.  So the general statement of law that a participating

8   officer could be held liable would just be dictum in Jordan.

9        In Jones, the Court did find the non-arresting officer

10  liable, when that officer transported the plaintiff to the

11  station, took notes while the plaintiff was being interviewed,

12  stayed with the plaintiff while there was a call to the State

13  Attorney.  So that officer -- that non-arresting officer in

14  Jones actually assumed physical custody of the plaintiff.

15       That didn't occur here.  And a reasonable officer could

16  certainly draw that distinction in distinguishing Jones.  And

17  the Eleventh Circuit has told us time and again, the officers

18  do not have to be creative or imaginative in applying prior

19  cases to the facts at issue; that the conduct has to be so

20  specific that the proposition of law -- the Supreme Court has

21  said -- has to follow immediately from the binding precedent.

22       And in order to apply Jones to this case, I think we

23  need to make a few inferential leaps and arguments, which I

24  think are certainly debatable, in order to get there.

25       And even if the Court ultimately thinks that we should

1  make those leaps and arguments, the officers are not held to

2  that standard because the Court would have to find that every

3  reasonable officer would interpret Jones versus Cannon in that

4  manner, and I just don't think the Court can do that.

5         THE COURT:  So I just wanted to make sure, because it

6  seems to me somewhat of a question of degrees based on the

7  facts.  In Jones, the Court certainly found there was a

8  non-arresting officer who participated in the arrest that could

9  be liable, and there were specific facts determined.

10        He knew probable cause was lacking.  He had stayed with

11  the plaintiff during a call to the State Attorney's Office.  He

12  had actually transported the plaintiff to the jail, and he took

13  notes during his post-arrest interview.  So, in essence, there

14  was a direct participation in the arrest.

15        Here, with regard to this four-and-a-half hour period

16  of detention, as set forth in the second amended complaint,

17  should the Court consider the participation of, for example,

18  Officer Perez, who makes the comment, "I can't wait to put you

19  in a chair and ask you questions" -- paragraph 79 -- and then

20  immediately the other two officers, Officers Garcia and

21  Escobar, actually place her in a chair.

22        And then during that period of time, the

23  four-and-a-half hour detention, as alleged, Officer Luffi

24  periodically pulls up his shirt to show his handcuffs, and this

25  is during -- as alleged, during the entire four-and-a-half hour

1    period.  It was only after Officer Luffi and Officer Perez left

2    that the other two officers then permitted Ms. Gallego to leave

3    the chair.

4         Do you believe it's a -- and perhaps I should ask you,

5    Mr. Greenberg, how do you draw a distinction between someone

6    who remains for four-and-a-half hours periodically showing

7    handcuffs, as a direction to the other two officers to keep

8    this individual in the chair from an individual who might

9    transport someone to the police station?

10        MR. GREENBERG:  Transporting assumes actual custody.

11   In this case all that's alleged is the officers are present,

12   and I believe Mr. Napoleon has conceded, there is no bystander

13   liability here.  You need direct participation.

14        The fact that the officers are present while another

15   officer is allegedly making a Terry stop, that's not enough.

16        And those two actions, including the fact that they put

17   her in the chair immediately upon Officer Perez's statement,

18   that was alleged in the original complaint that Your Honor

19   found lacking on prong one, that Your Honor found that that did

20   not constitute a sufficient level of participation; because,

21   remember, this is an objective standard, right.

22        We know there are certain words and actions that

23   everyone will interpret to mean to restrain someone:

24        "Handcuff her," "Turn around," "Put that person in the

25   car," "Arrest her."

1          That's not what's alleged here.

2          What's alleged here are ambiguous actions and

3    statements.  These do not rise to a level of, quote, an

4    objective intent to restrain.  And even if the Court finds that

5    they do, they certainly don't do so under the clearly

6    established law of this circuit.

7          There's several distinctions from Jones against Cannon,

8    the fact that the officer assumed personal custody.  There was

9    a full-blown custodial arrest, handcuffed, booking, taken to

10   the police station, interviewing and interrogating.

11         None of that occurred here.

12         The fact that she is not released until after these two

13   officers leave, again, there's no clearly established law that

14   that somehow makes them liable because they're present.  They

15   don't say, "Okay, release her now that we've left."

16         There's nothing tying that in.

17         We, essentially, have the same factual allegations in

18   the first amended complaint regarding what Perez and Luffi did.

19   What they've done hasn't changed.  The statement that Perez

20   made, "I can't wait to put you in a chair and ask you

21   questions," that hasn't changed through three iterations of the

22   complaint.

23         And the same thing, Luffi flashing the handcuffs, that

24   hasn't changed through three iterations of the complaint.

25         What's changed is we have all these conclusory

1    allegations that that somehow caused the detention.  But this

2    is an objective standard, it's based on objective conduct, and

3    there is a difference between saying, "Cuff him," "Arrest him,"

4    "You are under arrest," "You may not leave," and "I would like

5    to put you" -- "I can't wait to put you in a chair and ask you

6    questions."

7         I'm not aware of any case that has found participation

8    based on that sort of conditional type of conduct or ambiguous

9    type of conduct.  And remember, the test under Perez as to

10   whether a Terry stop occurs, that's a multi-prong balancing

11   test to begin with.  Are weapons used?  Is the suspect's ID

12   retained?  Is the suspect physically restrained?  Right.

13        So that, to begin with, is sort of a amalgamus test

14   that has to be applied.  It doesn't provide the type of clear

15   answers that qualified immunity requires.  I don't see how we

16   make the leap from that to these officers are necessarily

17   liable here.

18        And, you know, it would have been so easy to just

19   allege Officer Perez told Officer Escobar to restrain the

20   plaintiff.  If that allegation was in the complaint, we

21   wouldn't be here today.  But it's not.  And holding police

22   officers liable for this type of ambiguous conduct is the very

23   type of situation for why we have qualified immunity.

24        We have the clear cases of constitutional violations

25   and then we have the gray area, and the gray area is where

1    qualified immunity exists.  And I want to call the Court's

2    attention to two cases that we cited in our reply and how they

3    apply quantified immunity.

4              One of them is the Corbitt versus Vickers case, which

5    is 929 F.3d 1304, and that one is very important because it

6    specifically addresses whether it was clearly established that

7    the actions constituted a seizure, irrespective of the

8    probable cause issue.

9              And the other one is the Echols against Lawton case,

10   which is 913 F.3d 1313, you know, where the Court states, even

11   when an officer behaves badly, qualified immunity gives

12   Government officials breathing room to make reasonable but

13   mistaken judgments about open legal questions.

14             And that's what we have here, it's an open legal

15   question as to whether the conduct as alleged by Officer Perez

16   or Luffi violated the plaintiff's clearly established right.

17             And even if you think that it may have, it's not so

18   clear based on the Eleventh Circuit's cases that we wouldn't

19   have to draw those type of analogies that the Eleventh Circuit

20   has said we can't do in this context.

21             THE COURT:  All right.  Thank you.

22             Mr. Greenberg, I'm actually going to turn it over.

23   I'm not certain, I think Mr. Napoleon will be arguing, because

24   I do want the plaintiff to show the Court what facts -- I know

25   that there are a lot of facts about the history of these

```
 1    individuals and the animus among them.
 2          But perhaps, Mr. Napoleon, in following up with
 3    Mr. Greenberg's statement, what facts would persuade the Court
 4    that officer -- or Sergeant Luffi and Officer Perez were more
 5    than mere bystanders, and that they, in their actions, that
 6    it's akin to the Jones -v- Cannon, where, in that case, the
 7    non-arresting officer was directly involved with the transport
 8    of the plaintiff.
 9          MR. NAPOLEON:  Your Honor, thank you for the
10    opportunity.  One of -- probably the biggest, quote, newest
11    fact, for lack of a better term, is the beginning of their
12    encounter.
13          At 6:40, Officer Perez, Sergeant Luffi and another
14    unknown officer parked directly in front of the clubhouse.
15          That was not in the previous complaint.
16          There was a 10 to 15-minute conversation between
17    Officer Perez, Sergeant Luffi and the officers who were working
18    for the Hammocks -- that's something really important to
19    understand in this particular case, Judge, and I'll get back to
20    that in a second -- because the Hammocks was their -- not
21    employer, but the Hammocks was paying them to be there.
22          It's interesting how they turned from the friendly
23    officer to the aggressive officers.  What caused that?  There
24    was a 10 to 15-minute conversation outside where one of the
25    officers later admitted that Perez and Luffi told them that
```

```
 1   they were going to arrest Ms. Gallego.

 2           The important part about this particular incident is

 3   that this meeting that happened at the Hammocks was closed to

 4   the public.  Those officers were there so that they could

 5   not -- or to prevent other individuals from coming in.

 6           So Officer Garcia and Officer Escobar, they are

 7   outside, they're not letting people in.  Carlos Luffi is a

 8   sergeant with the Miami-Dade Police Department.  He has the

 9   authority -- whether Officers Escobar or Officer Garcia are in

10   an off-duty capacity -- to tell them what to do.

11           So the fact that they even entered into the building,

12   knowing that they had no right to be there, shows that they had

13   participated in the detention of Ms. Gallego, because they

14   never would have been let in in the first place.

15           So that's an instigation, that is a participation, by

16   saying, You have to let me in because I'm going to go and

17   arrest this woman.  And I forget whether it was Escobar or

18   Garcia -- I believe it was Garcia -- later admitted that.

19           Ms. Gallego actually ran into him at Publix, and he

20   said, "I thought you were going to be arrested," and it is

21   reported, and it is on tape.

22           Additionally, Your Honor, the level of participation is

23   in their refusal to leave, and the way that they forced

24   themselves inside, they tried to confiscate the election box.

25   They hovered around the election.
```

1            And, like I said before, they turned these officers

2   into arresting officers.  There was sufficient flashing and,

3   like you said, they never let Ms. Gallego get up until these

4   officers -- when I say "officers," let me be more specific --

5   Perez and Luffi, when they left, that was the only time that

6   Ms. Gallego had an opportunity to leave.

7            I'll give you an example, Your Honor.  And I know that

8   you won't take offense to this, it's not meant to be offensive

9   in any way.

10           But if your courtroom deputies, okay, who kind of sort

11  of work for you, they're there to protect you, and they sit and

12  sandwich you in based on the directives of another officer,

13  it's hard to say that those officers who walked into your

14  courthouse -- or into your courtroom were not participating.

15           Why else did your own courtroom deputies do that to

16  you?  It wasn't because of them.  It was because of what the

17  others who came in were directed to do.

18           They said, "I am going to go arrest this woman," and

19  that's what happened, that's alleged in the complaint.

20           So as far as new allegations are concerned, I believe

21  that we put in additional allegations, we put in the length of

22  detention that was their --

23           THE COURT:  I would like you to be very specific as to

24  what additional facts -- because I know you set forth the

25  history of the alleged malicious acts of Officers Luffi and

```
 1    Perez.

 2            MR. NAPOLEON:  Correct.

 3            THE COURT:  What facts would support the conclusion

 4    that, as framed in the second amended complaint, Officer

 5    Luffi's and Perez's conduct constitute a participation in the

 6    Terry stop?  I know you use the terms of "instigation,"

 7    "participation."  What allegations would the Court look to that

 8    would support that?

 9            MR. NAPOLEON:  Obviously, Your Honor, the flashing of

10    the handcuffs supported it; the statements outside supported

11    it; the statement of Officer Perez, "I'm going to put you in

12    the chair" supports it; the fact that they were there with

13    their badge and guns supports the fact that there was conduct

14    that they were part of this seizure.

15            And I want to say something really quick.

16            There's nothing in the Fourth Amendment that says --

17    the words "arrest" or "detention" are not in the Fourth

18    Amendment.  This is an illegal seizure.  And I think the

19    illegal seizure is something that was clearly established.

20            One other point that I wanted to make that I'm thinking

21    about now when Mr. Greenberg was speaking, I appreciate

22    Your Honor's question about whether or not he's willing to

23    concede that there was a constitution of violation in reference

24    to Officer Garcia and Officer Escobar.

25            What's going to happen if Your Honor grants their
```

```
1    motion to dismiss, is that Officer Garcia and Officer Escobar
2    are going to come in and they're going to testify that we were
3    acting pursuant to what these other officers told us, and then
4    it's going to be, basically, a double-edged sword that the
5    County is asking Your Honor to rule upon, because if Garcia and
6    Escobar say that we thought that Perez and Luffi were going to
7    make this arrest, and they told us that they had a
8    probable cause to do so, at that particular point in time, they
9    could raise the issue of sovereign immunity.
10          And so, if Your Honor is willing -- or if Your Honor is
11   leaning towards the fact that you're going to grant Perez and
12   Luffi's motion to dismiss at this particular point in time, I'd
13   ask you to grant it without prejudice; and so after, these
14   officers come in and give their depositions.
15          Because what the County in a smart move did is that
16   they said you have to decide the sovereign immunity issue
17   first -- I'm sorry -- the qualified immunity issue first
18   without having ability to engage in any discovery.
19          So what's that going to be, a double-edged sword,
20   because I guarantee you that Garcia and Escobar are not going
21   to come in and say that they arrested their former employer --
22   or quasi-former employer on their own volition, it's not going
23   to happen.
24          THE COURT:  And, Mr. Napoleon --
25          MR. NAPOLEON:  Now I'll answer any other -- I have a
```

1   couple other points, but if Your Honor wants me to answer any

2   questions, I will.

3         THE COURT:  Yes.  What's the strongest case that

4   supports the plaintiff's position that Officers Perez and Luffi

5   had fair warning that their conduct was unconstitutional?

6         MR. NAPOLEON:  I think the Jones case is extremely

7   strong, Your Honor.

8         I also believe -- I'm sorry, if you give me one second.

9         (Brief pause in the proceedings.)

10         MR. NAPOLEON:  Your Honor, there's a Fifth Circuit case

11   that I've cited when the Fifth Circuit -- or before the

12   Eleventh Circuit won and, obviously, Fifth Circuit precedence

13   before 1981 is binding.

14         There's a case called Anderson versus Nosser, on where

15   the Court upheld the principle that police officers are

16   responsible for the natural consequences of their actions,

17   quoting -- the Court saying in that particular case -- and the

18   cite is 438 F.2d 183, and I'm quoting from 198, it says:

19         We instead begin by emphasizing that Section 1983

20   should be read against the background of tort liability that

21   makes a man responsible for the natural consequences of his

22   action.  This general rule of liability provides that all those

23   who, in pursuant of a common plan or design to commit a

24   tortious act, actively take part in it, or further it by

25   cooperation or request, or who lent aid or encouragement to the

1    wrong-doer, or ratify and adopt his act, done for the benefit

2    are equally liable.

3         These officers are equally liable because that's

4    exactly what Perez and Luffi were doing, they were in pursuit

5    of a common plan to detain Ms. Gallego.  And I don't think that

6    the County Attorney's Office can make any argument whatsoever

7    that but for Perez and Luffi coming in there that day, forcing

8    their way into the Hammocks, that any of this would have

9    happened.  And they participated.  By being there, they

10   participated.  They instigated.  They make statements.

11        Their very presence there is what caused this to

12   happen.  There can be no argument that this incident would have

13   happened without those officers there who told Garcia and

14   Escobar that they were going to arrest Ms. Gallego, and they

15   flashed their handcuffs and did all the other things that we

16   talk about, including trying to confiscate a ballot box, that

17   they had no right to do so without a warrant, and we had to

18   call an attorney to tell them that they can't do that.

19        THE COURT:  So is that the only fact that would be

20   relevant?  My question to you is, you've set forth the history

21   of these alleged malicious acts and the animus between

22   Ms. Gallego and Officers Luffi and Perez, but how are they

23   relevant to whether Ms. Gallego was actually seized?

24        Shouldn't the Court look to the March 6th encounter?

25        MR. NAPOLEON:  No, Your Honor.  And I actually talked

1    about that because I knew that that's something that the County

2    talked about before.  And in this particular case -- bear with

3    me one second, please.

4            (Brief pause in the proceedings.)

5            MR. NAPOLEON:  There is a case that was in Valdes

6    versus Miami-Dade County, and in Valdes the plaintiff filed a

7    civil rights complaint against several officers for violations

8    that occurred on two separate occasions.

9            Before the second incident the plaintiff filed an

10   Internal Affairs complaint against two of the officers; then

11   the plaintiff alleged that the second incident was because of

12   the prior interactions and complaints against the officers.

13           So what they were basically saying, the allegations

14   that they were making is, that you can't look at this in a

15   vacuum.  The history between the parties matter.

16           And the District Court stated:  In light of the prior

17   incident between the plaintiff and Sergeant Martinez in the

18   ensuing Affairs investigation, there was evidence in this case

19   in which a jury could reasonably infer that Sergeant Martinez

20   falsified information to insure the plaintiff's arrest and to

21   obtain revenge for the plaintiff filing a complaint with

22   Internal Affairs.

23           So our point is that the Court -- and this was actually

24   affirmed by the Eleventh Circuit Court of Appeals.  It wasn't a

25   published opinion, but the cite is 584 F Appendix 927, and I'm

1    quoting from 928, it says:

2         The Eleventh Circuit affirmed the District Court's

3    ruling based on the reasoning and thorough report and

4    recommendation by the magistrate judge.

5         And what I was actually reading from before when we

6    talked about the magistrate judge taking into consideration the

7    prior incidents or the history between the parties, they

8    affirmed that, so that does give Your Honor the ability to look

9    at the reasonable objective person in Ms. Gallego's shoes.

10        To look at this in a bubble, to only look at this on a

11   date of incident is contrary to what the Eleventh Circuit says

12   that you can do.

13        You can take into consideration the prior incidents.

14   You can take into consideration that Perez and Luffi literally

15   told the entire association they were going to arrest

16   Ms. Gallego.

17        So it's almost disingenuous for them to claim that,

18   Ah, we didn't have anything to do with that, Your Honor, we

19   were just running around telling everyone that we were going to

20   do it, and then all of a sudden we convinced some officers that

21   you guys paid to do it, and it's their fault, not ours.

22        That's a disingenuous argument because they know that

23   they have been saying this for quite a long time.  And then now

24   that they go and finally do it, it's even more evidence that

25   this wasn't some type of mistake, they were clearly

1    participating in this, and they proved it because Ms. Gallego

2    was later arrested, just like they said they were going to do.

3         So, for now, for them to say, Oh, well, we weren't

4    participating in that, that just was a happenstance, is

5    disingenuous.  I'm not talking on the County Attorney's part.

6    I'm talking about on Officer Perez and Sergeant Luffi's part.

7         THE COURT:  All right, I think you've answered the

8    question.  But Mr. Greenberg makes a distinction in the

9    briefing with regard to the law and the false arrest context

10   and whether that provides fair notice to the officers.

11        So let me ask you, does the law in the false arrest

12   context actually provide fair notice to Officer -- or Sergeant

13   Luffi and Officer Perez of their conduct constituting unlawful

14   Terry stop in violation of clearly established law?

15        MR. NAPOLEON:  Your Honor, I think that the law is

16   clearly established, and I want to -- before I answer the

17   question, if you could indulge with me for a second.

18        The difference between a false arrest and a Terry stop,

19   Terry -v- Ohio, obviously, was created by the Supreme Court.

20   That's a term of art.  At the end of the day, Section 1983

21   protects individuals from constitutional violations.

22        The first question is what is a constitutional

23   violation.  The Fourth Amendment says that we are protected

24   from the illegal searches and illegal seizures.

25        Whether you want to frame it as a Terry stop -- and to

1    be quite honest with you, it could be considered a full-blown

2    seizure because of the time in proximity of the encounter, and

3    I don't think that there's a clear distinction between the two.

4         The question and what we believe is, was the

5    constitutional right clearly established?

6         Whether it's a clearly established Terry stop or

7    whether it's a clearly established seizure, the question is,

8    was the constitutional right clearly established.

9         And Mr. Greenberg somewhere conceded that there was a

10   constitutional violation by these other two officers, by Garcia

11   and by Escobar.  So if there was a constitutional violation, as

12   they seem to concede, the only question is whether or not it

13   was clearly established.

14        The constitutional violation was clearly established.

15   The question is whether or not officer participation was

16   clearly established.

17        And I think that that's where the Jones case clearly

18   establishes that an officer who participates or instigates a

19   constitutional violation, then there's liability for that

20   officer, too.

21        They're conflating the issues, trying to make it more

22   complicated than what it really is.

23        There's two simple questions:

24        Was a constitutional right -- was there a

25   constitutional violation?  They conceded that it was -- which

1    is why they didn't go in or file one on behalf of Garcia and

2    Escobar -- was that constitutional right clearly established?

3         Clearly, you cannot detain a person without reasonable

4    suspicion or probable cause -- either way, whether it's

5    reasonable suspicion, probable cause, there was a clear

6    constitutional violation.

7         And then the question is, is an officer who instigates

8    in a legal seizure, is that officer liable; and that is clearly

9    explained in Jones and all the other cases that we cited.

10        THE COURT:  All right.  Thank you, Mr. Napoleon.

11        Mr. Greenberg.

12        MR. GREENBERG:  Thank you, Your Honor.

13        First of all, I want to make it very clear that we have

14   not conceded that anyone committed a constitutional violation.

15        For purposes of responding to a complaint that we have

16   to accept the facts as true, two of the officers have answered.

17   If this case goes to trial, we fully intend to prove that no

18   constitutional violation occurred.

19        Second, the fact that a seizure occurred by someone is

20   not enough here.  Each officer is entitled to an individualized

21   analysis with respect to their own conduct in relation to

22   whether they are entitled to qualified immunity.

23        So the fact that Officer A does something, Officer B's

24   conduct still needs to rise to that level, and the level is --

25   must indicate an objective intent to restrain.

1          And that's a question for the Court, whether the

2     conduct here indicates an objective intent to restrain.

3          And that's on prong one.  We haven't gotten to prong

4     two.  I want to -- I just -- I think the only incident that

5     even is really worth merit any response is the conversation

6     that allegedly occurred.  Everything else I think is so

7     distant, I don't think we really need to address it.

8          During that conversation there is no allegation that

9     there was an instruction from Perez or Luffi to Escobar or

10    Garcia to do anything to the plaintiff.

11         The statement "I am going to arrest her" is not an

12    instruction for you to do something.  And there's also a

13    complete disconnect between that conversation and what actually

14    happened.

15         There's not an allegation, "We're going to commit a

16    Terry stop," or "Please, in a few minutes, we're going to give

17    you a signal" -- and then that will set off a Terry stop.

18         There's a total disconnect between the conversation

19    that's alleged and what actually happened.  And what's missing

20    is a tie-in of an actual allegation of one officer telling

21    another officer to do something.

22         The fact that Ms. Perez is arrested -- I'm sorry --

23    Ms. Gallego is arrested two years later by Officer Perez only

24    goes to show Officer Perez knows how to make an arrest by

25    herself when she needs to, and she could easily and clearly

 1    have instructed another officer to assist her in doing so.

 2            That's not what happened here.

 3            The Valdes case, as it was represented to you,

 4    Your Honor, was so mangled it's going to require a minute for

 5    me to unpack it.  I was on the losing end of those motions that

 6    were appealed, so I know a little bit about the procedural

 7    posture of that case.

 8            The initial appeal that went up to the Eleventh Circuit

 9    was on a motion to dismiss, and it was by one officer, who was

10    Officer Daniel Querto.  He was not the officer that had the

11    history with the plaintiff.

12            And that appeal on the motion to dismiss had nothing to

13    do with the issue of whether past history could come into the

14    situation; and even if it did, it's -- it is a summary

15    unpublished Eleventh Circuit opinion, it has nothing to do with

16    clearly established law.

17            The summary judgment motion that we lost on behalf of

18    Officer Martinez did hold that despite the fact that there was

19    probable cause Officer Martinez could still be held liable.  I

20    think Judge Moreno erred considerably in making that decision,

21    but, ultimately, we settled the case before we could file a

22    qualified immunity appeal.

23            And that's why we don't consider other District Court

24    cases in evaluating clearly established law because that

25    holding has never been reviewed by the Eleventh Circuit.

1          The Nosser case is a 40-year old case that predates the

2    modern qualified immunity doctrine, and it does not say

3    anything about what happened here.

4          The constitutional violation that was alleged there was

5    that the officers took too long to bring a plaintiff who had

6    been arrested before a judge to have an initial appearance, and

7    that holding ended up getting reversed on a motion for

8    reconsideration by the Court.

9          So the general principle of law that Mr. Napoleon is

10   latching onto that we apply for causation principles in 1983,

11   that's the very type of general principle which the Supreme

12   Court has told us over and over again is insufficient to

13   abrogate qualified immunity.

14         And in this case, I'm not even sure if that's still a

15   valid principle of law, given 40 years of subsequent Supreme

16   Court 1983 jurisprudence, where they have told us, 1983 is not

17   a font for tort law.  It is for specific constitutional

18   violations.

19         I don't see how any officer could read Nosser and

20   decide that Officer Perez and Luffi are liable here, especially

21   since the opinion that Mr. Napoleon is citing to got vacated

22   and reversed on re-hearing.

23         And then, finally, the Jones case.  I think we've

24   distinguished that enough.  The Eleventh Circuit has said that

25   a Terry stop and a false arrest are different legal animals.

1    That is a fault line that exists in the Eleventh Circuit's

2    jurisprudence, period.

3            And, therefore, it adds an issue of ambiguity to this

4    case; whether we apply the facts in Jones, where an officer

5    participates, has direct custody of a plaintiff, to a case like

6    this, where the officers are on the scene, they're merely

7    present, there's no full-blown custodial arrest where the

8    plaintiff is taken in and transported.

9            I do think that Jones is the best case that the

10   plaintiff has, but it just doesn't come close to what's

11   necessary to clearly establish the law under these

12   circumstances.

13           So, that said, I think that Officer -- I think that the

14   plaintiff has failed in his burden to show that the specific

15   conduct alleged by Officer Perez and the specific conduct

16   alleged by Officer Luffi violated the plaintiff's clearly

17   established rights on the night of this incident.

18           MR. NAPOLEON:  May I make a brief response?

19           THE COURT:  Yes, of course.

20           MR. NAPOLEON:  Your Honor, in -- I'm going to butcher

21   the name -- I think it's Alcocer versus Mills, which is 800 Fed

22   Appendix 860.  It's an Eleventh Circuit case from 2020.

23           And it's Alcocer II, actually.  There were -- it went

24   up and down a couple of times, and I'm just going to read it.

25   And I'm reading from starting in 864, and the Eleventh Circuit

1   stated:

2        As we stated in Alcocer I, in affirming the District

3   Court, the precise right implicated on the facts Alcocer

4   alleges is the Fourth Amendment right to be free from

5   unreasonable seizures.

6        And then it quotes the Fourth Amendment, and it says,

7   in relevant part:  The right of the people to be secure in

8   their persons against unreasonable seizures is something that

9   the Fourth Amendment protections attach to.

10        And then, if you skip down, the Court, the

11   Eleventh Circuit, cites Dunnaway versus New York, which is the

12   United States Supreme Court, 442 U.S. 200, quoting from 214,

13   where the Supreme Court said:

14        Nothing is more clear than that the Fourth Amendment

15   was to prevent wholesale intrusions upon the personal security

16   of our citizenry, whether these intrusions be termed arrests or

17   investigatory detentions.

18        So, like we said before, the Fourth Amendment protects

19   against seizures; whether it's determined that this incident

20   was a, quote/unquote, Terry stop or whether it was a full-blown

21   arrest, it was an illegal seizure that was prolonged, and that

22   is what the Fourth Amendment protections apply to.  And that

23   case is something that the Eleventh Circuit literally just

24   wrote last year.

25        And I want to nail home the fact that the County

1    Attorney's Office continues to try to say that these officers

2    never instructed anyone to do anything.  But the case law is

3    clear -- instructions -- that would be an easy question,

4    Your Honor.  If a police officer told another officer go and

5    arrest that person, that's an easy question, of course, they're

6    going to be liable.  That makes sense.

7         If a cop tells another cop to go arrest somebody and

8    the officer listens to it, especially if it's their

9    subordinate, they're automatically going to be liable.

10        We wouldn't even be here if that is what the issue was.

11        But the Eleventh Circuit has made it clear, it's not

12   the officer's instruction.  It's the officer's instigation, his

13   level of participation, and the other term of arts that we

14   talked about before.

15        If he caused it, he doesn't have to instruct anything.

16        And I think the Jones case is relevant when we talk

17   about that particular point.  The officer in Jones -- one

18   officer didn't tell him to go arrest him.  He didn't even tell

19   him to take him to the police officer.  There's no allegations

20   that the officer in Jones -- or one of the officers in the

21   Jones instructed the other.

22        The Eleventh Circuit said, Well, he participated in it,

23   he was part of it.  You don't have to have a particular

24   directive from one officer to the other.  And that's the point,

25   these officers are literally the but for cause.

1            If they weren't there, we wouldn't even be here.  And I

2      think that that's crystal clear based on the allegations that

3      are alleged in the second amended complaint.

4            THE COURT:  All right.  Let me, once again -- since

5      this is the second time we've been together, let me once again

6      thank you for the thoughtful argument.

7            In sum and substance, I do believe that the second

8      amended complaint is much more robust, in terms of the facts.

9      Some may or may not be relevant, but the facts that require

10     this Court to make a determination as to whether the plaintiff

11     -- since the burden has shifted -- has demonstrated, as

12     alleged, a violation of a constitutional right.

13           I know, Mr. Greenberg, you've referenced the fault

14     line, but I don't see a distinction here, when there is a

15     violation of a constitutional right, and that is an unlawful

16     detention for four-and-a-half hours.

17           So the question becomes whether the right at issue is

18     clearly established at the time of the defendants' alleged

19     misconduct, and we certainly, as it requires the Court to look

20     at what actions, individually, Sergeant Luffi and Officer Perez

21     engaged in, as alleged.

22           And I agree, and the parties certainly agree as well,

23     that the officers were not merely present.  This isn't an issue

24     of bystander liability.  But I do believe that in looking at

25     the allegations taken as true, that there is a causal

1    connection.

2         First looking with regard to Sergeant Luffi, who

3    specifically advised Officer -- and I'm forgetting this first

4    officer, Officer Garcia -- that Sergeant Luffi was going to

5    arrest Ms. Gallego, that information -- in paragraph 49 -- was

6    relayed.

7         And as a result, then certainly there is an issue with

8    regard to the ballot box, the admittance by Officer Garcia with

9    regard to Officer Perez and Luffi being able to come into the

10   area where the ballot box was, the issue with regard to the

11   confiscation of the ballot box, and the debate that took place

12   as a result.

13        But getting to the causal connection and the

14   participation, and that is with regard to -- and I'll first

15   reference Sergeant Luffi.  It was Sergeant Luffi that not only

16   advised the officers that he was going to arrest Ms. Gallego,

17   but at that time, after Officers Garcia and Escobar detain

18   Ms. Gallego, it was Sergeant Luffi that during the entire

19   four-and-a-half hour period stood in front and intentionally

20   flashed his handcuffs numerous times at their direction -- the

21   officers' direction -- while the officers detained Ms. Gallego.

22        And as alleged in paragraph 101, the act of flashing

23   his handcuffs confirmed what he had previously told, he was

24   going to arrest Ms. Gallego -- I can go through, paragraphs

25   104, 105, 106, 107.

1          But that's certainly, with regard to Sergeant Luffi,

2    his act of flashing his handcuffs, individually looking at his

3    actions in relation to his statement that he was going to

4    arrest Ms. Gallego, I believe, at this stage, taking the

5    allegations as true, are sufficient to show that there was more

6    than a bystander liability and that there was participation to

7    the extent that the Court would not find with regard to this

8    officer that qualified immunity should be granted.

9          Let me say with regard to the right at issue, it's

10   clear to the Court that the two cases, Jones -v- Cannon and

11   Jordan -v- Mosley, are published Eleventh Circuit opinions, and

12   both cases are very clear that a participant in an arrest, even

13   if not the arresting officer, may be liable if the officer knew

14   that the arrest lacked any constitutional basis and

15   participated in some way.

16         And it is clear to the Court that with regard to

17   Officer Luffi is active, periodically raising his shirt to show

18   his handcuffs, being directly in front of where the officers

19   were sitting on each side of Ms. Gallego, is sufficient to show

20   -- at least at this point -- that there is some participation.

21         As well, Officer Perez, certainly, with regard to the

22   actions of the statement, "I'm going to put you in a chair;"

23   then the direct placement by the other two officers in the

24   chair; and then Officer Perez's statements throughout the

25   four-and-a-half hours, that "I can't wait to" -- let me see,

```
 1    what was the -- "I can't wait to put you in a chair and ask you
 2    questions" -- paragraph 79; and then continuing through the
 3    time that Ms. Gallego was in the chair; and the fact that the
 4    placement of Ms. Gallego after the statement was made by
 5    Officer Perez is sufficient to show that this officer had some
 6    participation.
 7              Let me say that I do believe that there is a question
 8    as to the extent of Officer Perez's involvement, but at this
 9    stage the Court certainly has to take the allegations as true.
10              And the question of whether there's a violation of a
11    constitutional right, as alleged, it does appear that there is;
12    and whether the right at issue is clearly established at the
13    time of the defendants' alleged misconduct, certainly the Court
14    finds that it, at this point, based on the Eleventh Circuit
15    case law, that it does appear that the right is clearly
16    established.
17              And I believe that with regard to Officer Luffi
18    flashing his handcuffs, for a prolonged detention, the signals
19    to keep the plaintiff detained by Officers Garcia and Escobar,
20    as well as Officer Perez's statement and her continued
21    involvement during that four-and-a-half hour period, I do
22    believe at this point on a motion to dismiss, taking the
23    allegations as true, that I believe that it would be improper
24    for the Court to grant the motion based on qualified immunity.
25              I do believe that this is a case where the officers'
```

1    level of participation will most likely be reviewed and

2    determined on a motion for summary judgment.  But as alleged

3    and taken as true, the involvement is sufficient to withstand

4    the motion based on qualified immunity.

5          And I think, ultimately, whether it's sufficient for

6    the jury to consider will be determined by the Court on a

7    motion for summary judgment.

8          But I do believe, at this point, based on the binding

9    case law and the allegations with regard to each of the

10   officers' individual participation, that the Court finds that

11   there's a sufficient causal connection to deny the motion.

12         And as such, the motion to dismiss would be denied.

13         And, Mr. Greenberg, how much time do you need to file

14   answers on behalf of Officers Perez and Sergeant Luffi?

15         MR. GREENBERG:  Probably not that long, Your Honor.

16   But we are going to have to have internal conversations to

17   determine whether an answer or an appeal is appropriate based

18   on Your Honor's ruling.

19         So, if Your Honor wouldn't mind giving us the full

20   30-day appeal period, this way we would have that entire period

21   to decide which one to do.

22         THE COURT:  Is there any objection?

23         MR. NAPOLEON:  No, Your Honor, I think that's fair.

24         Mr. Greenberg has been more than accommodating, and we

25   have been towards each other.

1      THE COURT:  All right, then let's set September 23rd as

2  the date for the answer, or we'll take it to the next step

3  determining -- depending upon whether an appeal is -- an

4  interlocutory appeal is filed.

5      Is there anything further on behalf of the parties?

6      MR. NAPOLEON:  No, Your Honor.

7      MR. GREENBERG:  No.  Thank you, Your Honor.

8      THE COURT:  Everyone take good care.

9  Thank you for your time.

10      MR. NAPOLEON:  Thank you.  Take care.

11      (Proceedings concluded at 2:59 p.m.)

12

13          C E R T I F I C A T E

14

15    I hereby certify that the foregoing is an

16  accurate transcription of the

17  proceedings in the above-entitled matter via

18  "Zoom" during Covid-19.

19

20  November 6th, 2021   Glenda M. Powers

21                  GLENDA M. POWERS, RPR, CRR, FPR
                    United States District Court
22                  400 North Miami Avenue
                    Miami, Florida  33128
23

24

25

## 1

**1** [1] - 1:9
**10** [2] - 16:16, 16:24
**101** [1] - 35:22
**104** [1] - 35:25
**105** [1] - 35:25
**106** [1] - 35:25
**107** [1] - 35:25
**111** [1] - 1:20
**11th** [1] - 2:23
**1304** [1] - 15:5
**1313** [1] - 15:10
**15-minute** [2] - 16:16, 16:24
**183** [1] - 21:18
**198** [1] - 21:18
**1981** [1] - 21:13
**1983** [5] - 21:19, 25:20, 30:10, 30:16
**1:20-CV-24374-BB** [1] - 1:2
**1st** [1] - 1:20

## 2

**20-24374** [1] - 2:7
**200** [1] - 32:12
**2009** [1] - 8:23
**2020** [1] - 31:22
**2021** [2] - 1:6, 39:19
**214** [1] - 32:12
**23** [1] - 1:6
**23rd** [1] - 39:1
**2555** [1] - 1:17
**2810** [1] - 1:20
**2:00** [2] - 1:7, 1:8
**2:59** [2] - 1:8, 39:11

## 3

**30-day** [1] - 38:20
**33128** [3] - 1:21, 1:25, 39:22
**33134** [1] - 1:18

## 4

**40** [1] - 30:15
**40-year** [1] - 30:1
**400** [2] - 1:24, 39:22
**438** [1] - 21:18
**442** [1] - 32:12
**47** [1] - 1:9
**49** [1] - 35:5

## 5

**53** [1] - 3:1
**584** [1] - 23:25

## 6

**600** [1] - 1:17
**6:40** [1] - 16:13
**6th** [2] - 22:24, 39:19

## 7

**79** [2] - 11:19, 37:2

## 8

**800** [1] - 31:21
**860** [1] - 31:22
**864** [1] - 31:25

## 9

**913** [1] - 15:10
**927** [1] - 23:25
**928** [1] - 24:1
**929** [1] - 15:5

## A

**ability** [2] - 20:18, 24:8
**able** [1] - 35:9
**above-entitled** [1] - 39:16
**abrogate** [1] - 30:13
**accept** [1] - 27:16
**accommodating** [1] - 38:24
**accurate** [1] - 39:15
**act** [4] - 21:24, 22:1, 35:22, 36:2
**acting** [1] - 20:3
**action** [1] - 21:22
**actions** [10] - 4:7, 12:16, 12:22, 13:2, 15:7, 16:5, 21:16, 34:20, 36:3, 36:22
**active** [1] - 36:17
**actively** [1] - 21:24
**acts** [2] - 18:25, 22:21
**actual** [2] - 12:10, 28:20
**additional** [2] - 18:21, 18:24
**additionally** [1] - 17:22
**address** [2] - 9:6, 28:7
**addresses** [1] - 15:6
**adds** [2] - 7:20, 31:3
**admittance** [1] - 35:8
**admitted** [2] - 16:25, 17:18
**adopt** [1] - 22:1
**advised** [2] - 35:3, 35:16

**Affairs** [3] - 23:10, 23:18, 23:22
**affirmed** [3] - 23:24, 24:2, 24:8
**affirming** [1] - 32:2
**afternoon** [6] - 2:2, 2:3, 2:11, 2:14, 2:15, 2:17
**aggressive** [1] - 16:23
**agree** [2] - 34:22
**agreed** [1] - 8:3
**ahead** [1] - 2:6
**aid** [1] - 21:25
**akin** [1] - 16:6
**al** [1] - 2:8
**Alcocer** [4] - 31:21, 31:23, 32:2, 32:3
**allegation** [4] - 14:20, 28:8, 28:15, 28:20
**allegations** [13] - 13:17, 14:1, 18:20, 18:21, 19:7, 23:13, 33:19, 34:2, 34:25, 36:5, 37:9, 37:23, 38:9
**allege** [2] - 5:6, 14:19
**alleged** [32] - 3:24, 4:5, 4:6, 4:16, 4:21, 4:24, 5:25, 6:18, 7:17, 11:23, 11:25, 12:11, 12:18, 13:1, 13:2, 15:15, 18:19, 18:25, 22:21, 23:11, 28:19, 30:4, 31:15, 31:16, 34:3, 34:12, 34:18, 34:21, 35:22, 37:11, 37:13, 38:2
**allegedly** [2] - 12:15, 28:6
**alleges** [2] - 4:25, 32:4
**alleging** [2] - 6:20, 6:21
**almost** [1] - 24:17
**amalgamus** [1] - 14:13
**ambiguity** [2] - 7:20, 31:3
**ambiguous** [3] - 13:2, 14:8, 14:22
**amended** [7] - 2:25, 3:3, 11:16, 13:18, 19:4, 34:3, 34:8
**Amendment** [13] - 6:15, 7:24, 9:22, 10:1, 19:16, 19:18, 25:23, 32:4, 32:6, 32:9, 32:14, 32:18, 32:22
**amply** [1] - 5:22
**analogies** [1] - 15:19

**analysis** [4] - 7:19, 8:22, 9:4, 27:21
**analyzed** [1] - 6:9
**Anderson** [1] - 21:14
**animals** [2] - 6:9, 30:25
**animus** [2] - 16:1, 22:21
**answer** [7] - 4:23, 8:2, 20:25, 21:1, 25:16, 38:17, 39:2
**answered** [3] - 4:9, 25:7, 27:16
**answers** [2] - 14:15, 38:14
**apologize** [2] - 5:17, 5:18
**appeal** [7] - 29:8, 29:12, 29:22, 38:17, 38:20, 39:3, 39:4
**appealed** [1] - 29:6
**Appeals** [1] - 23:24
**appear** [4] - 4:3, 9:8, 37:11, 37:15
**appearance** [1] - 30:6
**APPEARANCES** [1] - 1:15
**appearances** [2] - 2:9, 2:18
**Appendix** [2] - 23:25, 31:22
**applied** [1] - 14:14
**apply** [5] - 10:22, 15:3, 30:10, 31:4, 32:22
**applying** [1] - 10:18
**appreciate** [1] - 19:21
**appropriate** [1] - 38:17
**appropriately** [1] - 7:17
**area** [3] - 14:25, 35:10
**arguing** [4] - 5:8, 5:12, 5:21, 15:23
**argument** [5] - 4:3, 22:6, 22:12, 24:22, 34:6
**arguments** [2] - 10:23, 11:1
**arises** [1] - 9:8
**arrest** [36] - 6:8, 6:21, 7:9, 7:12, 7:15, 9:25, 11:8, 11:13, 11:14, 13:9, 14:4, 17:1, 17:17, 18:18, 19:17, 20:7, 22:14, 23:20, 24:15, 25:9, 25:11, 25:18, 28:11, 28:24, 30:25, 31:7, 32:21, 33:5, 33:7, 33:18, 35:5, 35:16, 35:24,

36:4, 36:12, 36:14
**Arrest** [2] - 12:25, 14:3
**arrested** [6] - 17:20, 20:21, 25:2, 28:22, 28:23, 30:6
**arresting** [8] - 6:24, 9:23, 10:9, 10:13, 11:8, 16:7, 18:2, 36:13
**arrests** [1] - 32:16
**art** [1] - 25:20
**arts** [1] - 33:13
**assist** [1] - 29:1
**Assistant** [1] - 2:15
**association** [1] - 24:15
**assumed** [2] - 10:14, 13:8
**assumes** [1] - 12:10
**attach** [1] - 32:9
**attention** [1] - 15:2
**Attorney** [2] - 2:16, 10:13
**attorney** [1] - 22:18
**Attorney's** [5] - 1:19, 11:11, 22:6, 25:5, 33:1
**August** [1] - 1:6
**authority** [2] - 3:15, 17:9
**automatically** [1] - 33:9
**Avenue** [1] - 1:24, 39:22
**aware** [1] - 14:7

## B

**B's** [1] - 27:23
**background** [1] - 21:20
**badge** [1] - 19:13
**badly** [1] - 15:11
**balancing** [1] - 14:10
**ballot** [4] - 22:16, 35:8, 35:10, 35:11
**based** [13] - 4:5, 11:6, 14:2, 14:8, 15:18, 18:12, 24:3, 34:2, 37:14, 37:24, 38:4, 38:8, 38:17
**basis** [2] - 5:4, 36:14
**battle** [1] - 8:21
**bear** [1] - 23:2
**becomes** [1] - 34:17
**BEFORE** [1] - 1:13
**begin** [3] - 14:11, 14:13, 21:19
**beginning** [1] - 16:11
**BEHALF** [2] - 1:16,

1:19
**behalf** [9] - 2:12, 3:13, 4:10, 4:11, 4:14, 27:1, 29:17, 38:14, 39:5
**behaves** [1] - 15:11
**benefit** [2] - 3:4, 22:1
**best** [1] - 31:9
**BETH** [1] - 1:13
**better** [1] - 16:11
**between** [14] - 6:5, 6:23, 7:1, 12:5, 14:3, 16:16, 22:21, 23:15, 23:17, 24:7, 25:18, 26:3, 28:13, 28:18
**beyond** [1] - 9:15
**biggest** [1] - 16:10
**binding** [3] - 10:21, 21:13, 38:8
**bit** [1] - 29:6
**bizarre** [1] - 9:18
**BLOOM** [1] - 1:13
**blown** [4] - 13:9, 26:1, 31:7, 32:20
**booking** [2] - 7:16, 13:9
**box** [5] - 17:24, 22:16, 35:8, 35:10, 35:11
**breathing** [1] - 15:12
**Brief** [2] - 21:9, 23:4
**brief** [1] - 31:18
**briefing** [2] - 8:8, 25:9
**bring** [1] - 30:5
**bubble** [1] - 24:10
**building** [1] - 17:11
**burden** [5] - 3:20, 8:10, 9:5, 31:14, 34:11
**burdensome** [1] - 8:25
**butcher** [1] - 31:20
**BY** [1] - 1:23
**bystander** [3] - 12:12, 34:24, 36:6
**bystanders** [1] - 16:5

**C**

**Callahan** [2] - 4:1, 8:24
**Cannon** [5] - 9:20, 11:3, 13:7, 16:6, 36:10
**cannot** [1] - 27:3
**capacity** [1] - 17:10
**car** [1] - 12:25
**care** [2] - 39:8, 39:10
**Carlos** [2] - 3:2, 17:7
**CARLOS** [1] - 1:7
**case** [54] - 2:6, 3:8,

3:14, 4:1, 6:3, 6:5, 6:18, 7:6, 7:9, 7:12, 7:13, 8:7, 8:9, 8:23, 9:1, 9:8, 9:15, 9:19, 9:20, 9:23, 10:22, 12:11, 14:7, 15:4, 15:9, 16:6, 16:19, 21:3, 21:6, 21:10, 21:14, 21:17, 23:2, 23:5, 23:18, 26:17, 27:17, 29:3, 29:7, 29:21, 30:1, 30:14, 30:23, 31:4, 31:5, 31:9, 31:22, 32:23, 33:2, 33:16, 37:15, 37:25, 38:9
**CASE** [1] - 1:2
**Case** [1] - 2:7
**cases** [14] - 6:23, 7:1, 7:5, 9:21, 10:2, 10:19, 14:24, 15:2, 15:18, 27:9, 29:24, 36:10, 36:12
**causal** [3] - 34:25, 35:13, 38:11
**causation** [1] - 30:10
**caused** [4] - 14:1, 16:23, 22:11, 33:15
**certain** [1] - 12:22, 15:23
**certainly** [18] - 4:11, 5:5, 5:9, 6:7, 7:3, 8:2, 9:17, 10:16, 10:24, 11:7, 13:5, 34:19, 34:22, 35:7, 36:1, 36:21, 37:9, 37:13
**certify** [1] - 39:14
**chair** [13] - 5:25, 11:19, 11:21, 12:3, 12:8, 12:17, 13:20, 14:5, 19:12, 36:22, 36:24, 37:1, 37:3
**changed** [4] - 13:19, 13:21, 13:24, 13:25
**Circuit** [25] - 6:7, 7:4, 9:19, 9:21, 10:17, 15:19, 21:10, 21:11, 21:12, 23:24, 24:2, 24:11, 29:8, 29:15, 29:25, 30:24, 31:22, 31:25, 32:11, 32:23, 33:11, 33:22, 36:11, 37:14
**circuit** [1] - 13:6
**Circuit's** [3] - 8:7, 15:18, 31:1
**circumstances** [2] - 7:7, 31:12
**cite** [2] - 21:18, 23:25

**cited** [4] - 8:9, 15:2, 21:11, 27:9
**cites** [1] - 32:11
**citing** [1] - 30:21
**citizenry** [1] - 32:16
**civil** [2] - 2:7, 23:7
**claim** [1] - 24:17
**clear** [16] - 8:13, 9:15, 10:3, 14:14, 14:24, 15:18, 26:3, 27:5, 27:13, 32:14, 33:3, 33:11, 34:2, 36:10, 36:12, 36:16
**clearly** [39] - 3:23, 4:4, 4:5, 4:22, 5:12, 5:20, 6:12, 6:13, 7:11, 8:10, 8:12, 9:7, 13:5, 13:13, 15:6, 15:16, 19:19, 24:25, 25:14, 25:16, 26:5, 26:6, 26:7, 26:8, 26:13, 26:14, 26:16, 26:17, 27:2, 27:3, 28:7, 28:25, 29:16, 29:24, 31:11, 31:16, 34:18, 37:12, 37:15
**client** [1] - 3:13
**close** [1] - 31:10
**closed** [1] - 17:3
**clubhouse** [1] - 16:14
**coming** [2] - 17:5, 22:7
**comment** [1] - 11:18
**commit** [2] - 21:23, 28:15
**committed** [2] - 4:25, 27:14
**common** [2] - 21:23, 22:5
**complaint** [24] - 2:25, 3:3, 4:9, 4:17, 4:25, 5:6, 5:7, 5:22, 6:20, 11:16, 12:18, 13:18, 13:22, 13:24, 14:20, 16:15, 18:19, 19:4, 23:7, 23:10, 23:21, 27:15, 34:3, 34:8
**complaints** [1] - 23:12
**complete** [1] - 28:13
**complicated** [1] - 26:22
**concede** [4] - 4:20, 5:5, 19:23, 26:12
**conceded** [6] - 3:13, 3:17, 12:12, 26:9, 26:25, 27:14
**conceding** [3] - 4:6, 4:16, 5:3
**concerned** [1] - 18:20
**concession** [1] - 3:18

**concluded** [1] - 39:11
**conclusion** [1] - 19:3
**conclusory** [1] - 13:25
**conditional** [1] - 14:8
**conduct** [22] - 5:13, 5:19, 5:20, 6:17, 7:24, 8:16, 10:3, 10:19, 14:2, 14:8, 14:9, 14:22, 15:15, 19:5, 19:13, 21:5, 25:13, 27:21, 27:24, 28:2, 31:15
**confirmed** [1] - 35:23
**confiscate** [1] - 17:24, 22:16
**confiscation** [1] - 35:11
**conflating** [1] - 26:21
**connection** [3] - 35:1, 35:13, 38:11
**consequences** [2] - 21:16, 21:21
**consider** [3] - 11:17, 29:23, 38:6
**considerably** [1] - 29:20
**consideration** [3] - 24:6, 24:13, 24:14
**considered** [1] - 26:1
**constitute** [2] - 12:20, 19:5
**constituted** [1] - 15:7
**constituting** [1] - 25:13
**constitution** [1] - 19:23
**constitutional** [29] - 3:22, 4:7, 4:18, 5:4, 6:19, 7:2, 8:16, 9:6, 14:24, 25:21, 25:22, 26:5, 26:8, 26:10, 26:11, 26:14, 26:19, 26:24, 26:25, 27:2, 27:6, 27:14, 27:18, 30:4, 30:17, 34:12, 34:15, 36:14, 37:11
**context** [4] - 9:22, 15:20, 25:9, 25:12
**continued** [1] - 37:20
**continues** [1] - 33:1
**continuing** [1] - 37:2
**contrary** [1] - 24:11
**conversation** [6] - 16:16, 16:24, 28:5, 28:8, 28:13, 28:18
**conversations** [1] - 38:16
**convinced** [1] - 24:20
**cooperation** [1] - 21:25

**cop** [2] - 33:7
**Coral** [1] - 1:18
**Corbitt** [1] - 15:4
**correct** [3] - 3:15, 3:18, 19:2
**counsel** [2] - 2:9, 2:10
**County** [9] - 1:19, 2:16, 20:5, 20:15, 22:6, 23:1, 23:6, 25:5, 32:25
**couple** [2] - 21:1, 31:24
**course** [4] - 4:15, 31:19, 33:5
**COURT** [30] - 1:1, 2:2, 2:4, 2:14, 2:17, 2:20, 3:19, 4:12, 4:15, 5:2, 5:15, 5:17, 5:24, 6:11, 6:22, 9:17, 11:5, 15:21, 18:23, 19:3, 20:24, 21:3, 22:19, 25:7, 27:10, 31:19, 34:4, 38:22, 39:1, 39:8
**Court** [52] - 1:23, 1:24, 2:1, 2:25, 3:1, 7:8, 7:20, 7:21, 8:20, 9:2, 9:5, 9:11, 9:12, 10:9, 10:20, 10:25, 11:2, 11:4, 11:7, 11:17, 13:4, 15:10, 15:24, 16:3, 19:7, 21:15, 21:17, 22:24, 23:16, 23:23, 23:24, 25:19, 28:1, 29:23, 30:8, 30:12, 30:16, 32:3, 32:10, 32:12, 32:13, 34:10, 34:19, 36:7, 36:10, 36:16, 37:9, 37:13, 37:24, 38:6, 38:10, 39:21
**Court's** [4] - 4:1, 9:4, 15:1, 24:2
**courthouse** [1] - 18:14
**COURTROOM** [1] - 2:7
**courtroom** [3] - 18:10, 18:14, 18:15
**courts** [2] - 8:20, 9:1
**Covid-19** [1] - 39:17
**created** [1] - 25:19
**creative** [1] - 10:18
**CRR** [2] - 1:23, 39:21
**crystal** [1] - 34:2
**Cuff** [1] - 14:3
**custodial** [2] - 13:9, 31:7
**custody** [4] - 10:14, 12:10, 13:8, 31:5

## D

**Dade** [3] - 1:19, 17:8, 23:6
**Daniel** [1] - 29:10
**date** [2] - 24:11, 39:2
**De** [1] - 1:17
**debatable** [3] - 8:14, 8:15, 10:24
**debate** [1] - 35:11
**decide** [4] - 9:13, 20:16, 30:20, 38:21
**decided** [2] - 8:25, 10:5
**decision** [2] - 4:23, 29:20
**defendants** [2] - 2:16, 5:3
**DEFENDANTS** [2] - 1:8, 1:19
**Defendants** [1] - 3:2
**defendants'** [4] - 3:24, 4:5, 34:18, 37:13
**degrees** [1] - 11:6
**demonstrated** [2] - 3:21, 34:11
**demonstrates** [1] - 5:22
**denied** [1] - 38:12
**deny** [1] - 38:11
**Department** [1] - 17:8
**depositions** [1] - 20:14
**deputies** [2] - 18:10, 18:15
**DEPUTY** [1] - 2:7
**design** [1] - 21:23
**despite** [1] - 29:18
**detain** [4] - 5:4, 22:5, 27:3, 35:17
**detained** [2] - 35:21, 37:19
**detention** [8] - 11:16, 11:23, 14:1, 17:13, 18:22, 19:17, 34:16, 37:18
**detentions** [1] - 32:17
**determination** [1] - 34:10
**determine** [1] - 38:17
**determined** [5] - 4:10, 11:9, 32:19, 38:2, 38:6
**determining** [1] - 39:3
**dictum** [1] - 10:8
**difference** [2] - 14:3, 25:18
**different** [3] - 6:8, 7:2, 30:25
**differently** [1] - 6:9

**difficult** [1] - 9:3
**direct** [4] - 11:14, 12:13, 31:5, 36:23
**directed** [1] - 18:17
**direction** [3] - 12:7, 35:20, 35:21
**directive** [1] - 33:24
**directives** [1] - 18:12
**directly** [3] - 16:7, 16:14, 36:18
**disconnect** [2] - 28:13, 28:18
**discovery** [1] - 20:18
**discretionary** [1] - 3:15
**disingenuous** [3] - 24:17, 24:22, 25:5
**DISMISS** [1] - 1:11
**dismiss** [12] - 2:24, 3:2, 4:3, 4:11, 5:11, 6:23, 20:1, 20:12, 29:9, 29:12, 37:22, 38:12
**distant** [1] - 28:7
**distinction** [10] - 6:4, 6:11, 6:23, 7:1, 7:4, 10:16, 12:5, 25:8, 26:3, 34:14
**distinctions** [1] - 13:7
**distinguished** [1] - 30:24
**distinguishing** [1] - 10:16
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [6] - 1:24, 23:16, 24:2, 29:23, 32:2, 39:21
**DIVISION** [1] - 1:2
**Docket** [1] - 3:1
**doctrine** [1] - 30:2
**doer** [1] - 22:1
**done** [2] - 13:19, 22:1
**double** [2] - 20:4, 20:19
**double-edged** [2] - 20:4, 20:19
**down** [2] - 31:24, 32:10
**draw** [4] - 7:4, 10:16, 12:5, 15:19
**drawn** [1] - 6:12
**Dunnaway** [1] - 32:11
**during** [9] - 11:11, 11:13, 11:22, 11:25, 28:8, 35:18, 37:21, 39:17
**duty** [1] - 17:10

## E

**easier** [1] - 9:5
**easily** [1] - 28:25
**easy** [4] - 9:3, 14:18, 33:3, 33:5
**Echols** [1] - 15:9
**edged** [2] - 20:4, 20:19
**either** [2] - 7:11, 27:4
**election** [2] - 17:24, 17:25
**Eleventh** [25] - 6:7, 7:4, 8:7, 9:19, 9:21, 10:17, 15:18, 15:19, 21:12, 23:24, 24:11, 29:8, 29:15, 29:25, 30:24, 31:1, 31:22, 31:25, 32:11, 32:23, 33:11, 33:22, 36:11, 37:14
**emphasizing** [1] - 21:19
**employer** [3] - 16:21, 20:21, 20:22
**encounter** [3] - 16:12, 22:24, 26:2
**encouragement** [1] - 21:25
**end** [2] - 25:20, 29:5
**ended** [1] - 30:7
**engage** [2] - 3:10, 20:18
**engaged** [2] - 4:20, 34:21
**ensuing** [1] - 23:18
**entered** [1] - 17:11
**entire** [4] - 11:25, 24:15, 35:18, 38:20
**entitled** [3] - 27:20, 27:22, 39:16
**Entry** [1] - 3:1
**entry** [1] - 7:6
**equally** [2] - 22:2, 22:3
**erred** [1] - 29:20
**ESCOBAR** [1] - 1:7
**Escobar** [19] - 4:8, 4:10, 4:17, 5:1, 11:21, 14:19, 17:6, 17:9, 17:17, 19:24, 20:1, 20:6, 20:20, 22:14, 26:11, 27:2, 28:9, 35:17, 37:19
**especially** [2] - 30:20, 33:8
**ESQ** [2] - 1:16, 1:19
**essence** [1] - 11:13
**essentially** [1] - 13:17
**establish** [2] - 8:10, 31:11

**established** [32] - 3:23, 4:4, 4:5, 4:22, 5:12, 5:20, 6:12, 6:13, 7:12, 8:12, 9:7, 13:6, 13:13, 15:6, 15:16, 19:19, 25:14, 25:16, 26:5, 26:6, 26:7, 26:8, 26:13, 26:14, 26:16, 27:2, 29:16, 29:24, 31:17, 34:18, 37:12, 37:16
**establishes** [1] - 26:18
**et** [1] - 2:8
**evaluating** [1] - 29:24
**evidence** [2] - 23:18, 24:24
**exactly** [1] - 22:4
**example** [3] - 7:5, 11:17, 18:7
**exigent** [1] - 7:7
**exist** [1] - 6:13
**exists** [2] - 15:1, 31:1
**explained** [1] - 27:9
**extent** [4] - 4:21, 9:2, 36:7, 37:8
**extremely** [1] - 21:6
**EZRA** [1] - 1:19
**Ezra** [1] - 2:16

## F

**F.2d** [1] - 21:18
**F.3d** [2] - 15:5, 15:10
**fact** [18] - 6:1, 8:8, 12:14, 12:16, 13:8, 13:12, 16:11, 17:11, 19:12, 19:13, 20:11, 22:19, 27:19, 27:23, 28:22, 29:18, 32:25, 37:3
**facts** [15] - 9:8, 9:17, 10:19, 11:7, 11:9, 15:24, 15:25, 16:3, 18:24, 19:3, 27:16, 31:4, 32:3, 34:8, 34:9
**factual** [1] - 13:17
**failed** [1] - 31:14
**fair** [4] - 21:5, 25:10, 25:12, 38:23
**false** [5] - 7:12, 25:9, 25:11, 25:18, 30:25
**falsified** [1] - 23:20
**far** [1] - 18:20
**fault** [3] - 24:21, 31:1, 34:13
**favor** [1] - 8:10
**Fed** [1] - 31:21
**few** [2] - 10:23, 28:16

**Fifth** [3] - 21:10, 21:11, 21:12
**file** [1] - 27:1, 29:21, 38:13
**filed** [5] - 2:24, 2:25, 23:6, 23:9, 39:4
**filing** [1] - 23:21
**finally** [2] - 24:24, 30:23
**first** [11] - 7:23, 10:5, 13:18, 17:14, 20:17, 25:22, 27:13, 35:2, 35:3, 35:14
**First** [1] - 7:23
**flashed** [2] - 22:15, 35:20
**flashing** [6] - 13:23, 18:2, 19:9, 35:22, 36:2, 37:18
**FLAVIO** [1] - 1:7
**FLORIDA** [1] - 1:1
**Florida** [5] - 1:4, 1:18, 1:21, 1:25, 39:22
**focuses** [1] - 4:4
**follow** [1] - 10:21
**following** [1] - 16:2
**follows** [1] - 3:7
**font** [1] - 30:17
**forced** [1] - 17:23
**forcing** [1] - 22:7
**foregoing** [1] - 39:14
**forget** [1] - 17:17
**forgetting** [1] - 35:3
**former** [2] - 20:21, 20:22
**forth** [3] - 11:16, 18:24, 22:20
**four** [9] - 6:1, 11:15, 11:23, 11:25, 12:6, 34:16, 35:19, 36:25, 37:21
**four-and-a-half** [9] - 6:1, 11:15, 11:23, 11:25, 12:6, 34:16, 35:19, 36:25, 37:21
**Fourth** [12] - 6:15, 9:22, 10:1, 19:16, 19:17, 25:23, 32:4, 32:6, 32:9, 32:14, 32:18, 32:22
**FPR** [1] - 1:23, 39:21
**frame** [1] - 25:25
**framed** [6] - 3:6, 3:7, 6:2, 6:10, 6:20, 19:4
**free** [1] - 32:4
**friendly** [1] - 16:22
**front** [3] - 16:14, 35:19, 36:18
**full** [5] - 13:9, 26:1, 31:7, 32:20, 38:19

**full-blown** [4] - 13:9, 26:1, 31:7, 32:20
**fully** [1] - 27:17

## G

**Gables** [1] - 1:18
**GALLEGO** [1] - 1:4
**Gallego** [25] - 2:7, 2:13, 5:25, 12:2, 17:1, 17:13, 17:19, 18:3, 18:6, 22:5, 22:14, 22:22, 22:23, 24:16, 25:1, 28:23, 35:5, 35:16, 35:18, 35:21, 35:24, 36:4, 36:19, 37:3, 37:4
**Gallego's** [2] - 4:18, 24:9
**GARCIA** [1] - 1:7
**Garcia** [21] - 4:8, 4:10, 4:17, 5:1, 11:20, 17:6, 17:9, 17:18, 19:24, 20:1, 20:5, 20:20, 22:13, 26:10, 27:1, 28:10, 35:4, 35:8, 35:17, 37:19
**general** [4] - 10:7, 21:22, 30:9, 30:11
**given** [2] - 9:12, 30:15
**Glenda** [1] - 39:19
**GLENDA** [2] - 1:23, 39:21
**Government** [1] - 15:12
**grant** [3] - 20:11, 20:13, 37:24
**granted** [1] - 36:8
**grants** [1] - 19:25
**gray** [2] - 14:25
**Greenberg** [13] - 2:16, 3:6, 4:2, 6:3, 12:5, 15:22, 19:21, 25:8, 26:9, 27:11, 34:13, 38:13, 38:24
**GREENBERG** [17] - 1:19, 2:3, 2:15, 4:9, 4:13, 4:19, 5:5, 5:16, 5:18, 6:7, 6:16, 7:3, 10:4, 12:10, 27:12, 38:15, 39:7
**Greenberg's** [1] - 16:3
**guarantee** [1] - 20:20
**guess** [1] - 5:2
**guns** [1] - 19:13
**guys** [1] - 24:21

## H

**half** [9] - 6:1, 11:15,

11:23, 11:25, 12:6, 34:16, 35:19, 36:25, 37:21
**hallmarks** [1] - 7:15
**Hammocks** [5] - 16:18, 16:20, 16:21, 17:3, 22:8
**handcuff** [1] - 12:24
**handcuffed** [1] - 13:9
**handcuffing** [1] - 7:15
**handcuffs** [10] - 11:24, 12:7, 13:23, 19:10, 22:15, 35:20, 35:23, 36:2, 36:18, 37:18
**happenstance** [1] - 25:4
**hard** [1] - 18:13
**HEARING** [1] - 1:10
**hearing** [3] - 2:24, 3:6, 30:22
**held** [4] - 7:8, 10:8, 11:1, 29:19
**hereby** [1] - 39:14
**herself** [1] - 28:25
**HILTON** [1] - 1:16
**Hilton** [1] - 2:12
**historically** [1] - 8:20
**history** [7] - 15:25, 18:25, 22:20, 23:15, 24:7, 29:11, 29:13
**hit** [1] - 8:21
**hold** [2] - 7:11, 29:18
**holding** [3] - 14:21, 29:25, 30:7
**home** [2] - 7:6, 32:25
**honest** [1] - 26:1
**Honor** [34] - 2:3, 2:11, 2:15, 3:16, 5:7, 5:18, 8:2, 10:4, 12:18, 12:19, 16:9, 17:22, 18:7, 19:9, 19:25, 20:5, 20:10, 21:1, 21:7, 21:10, 22:25, 24:8, 24:18, 25:15, 27:12, 29:4, 31:20, 33:4, 38:15, 38:19, 38:23, 39:6, 39:7
**Honor's** [2] - 19:22, 38:18
**HONORABLE** [1] - 1:13
**hope** [1] - 2:21
**hour** [5] - 11:15, 11:23, 11:25, 35:19, 37:21
**hours** [4] - 6:1, 12:6, 34:16, 36:25
**hovered** [1] - 17:25

## I

**ID** [1] - 14:11
**II** [2] - 1:16, 31:23
**illegal** [5] - 19:18, 19:19, 25:24, 32:21
**imaginative** [1] - 10:18
**immediately** [3] - 10:21, 11:20, 12:17
**immunity** [18] - 8:5, 8:18, 8:22, 14:15, 14:23, 15:1, 15:3, 15:11, 20:9, 20:16, 20:17, 27:22, 29:22, 30:2, 30:13, 36:8, 37:24, 38:4
**implicated** [1] - 32:3
**important** [6] - 7:19, 8:12, 8:19, 15:5, 16:18, 17:2
**improper** [1] - 37:23
**incident** [9] - 17:2, 22:12, 23:9, 23:11, 23:17, 24:11, 28:4, 31:17, 32:19
**incidents** [2] - 24:7, 24:13
**including** [2] - 12:16, 22:16
**indicate** [2] - 7:25, 27:25
**indicates** [1] - 28:2
**individual** [3] - 12:8, 38:10
**individualized** [1] - 27:20
**individually** [2] - 34:20, 36:2
**individuals** [4] - 2:20, 16:1, 17:5, 25:21
**indulge** [1] - 25:17
**inefficient** [1] - 8:25
**infer** [1] - 23:19
**inferential** [1] - 10:23
**information** [2] - 23:20, 35:5
**initial** [2] - 29:8, 30:6
**inside** [1] - 17:24
**instead** [1] - 21:19
**instigate** [1] - 9:24
**instigated** [1] - 22:10
**instigates** [2] - 26:18, 27:7
**instigation** [3] - 17:15, 19:6, 33:12
**instruct** [1] - 33:15
**instructed** [3] - 29:1, 33:2, 33:21
**instruction** [3] - 28:9,

28:12, 33:12
**instructions** [1] - 33:3
**insufficient** [1] - 30:12
**insure** [3] - 3:11, 4:15, 23:20
**intend** [1] - 27:17
**intent** [4] - 8:1, 13:4, 27:25, 28:2
**intentionally** [1] - 35:19
**interactions** [1] - 23:12
**interesting** [1] - 16:22
**interlocutory** [1] - 39:4
**Internal** [2] - 23:10, 23:22
**internal** [1] - 38:16
**interpret** [2] - 11:3, 12:23
**interrogating** [1] - 13:10
**interview** [1] - 11:13
**interviewed** [1] - 10:11
**interviewing** [1] - 13:10
**intrusions** [2] - 32:15, 32:16
**investigation** [1] - 23:18
**investigatory** [1] - 32:17
**involved** [1] - 16:7
**involvement** [3] - 37:8, 37:21, 38:3
**involving** [1] - 6:24
**irrespective** [1] - 15:7
**issue** [18] - 3:6, 3:23, 4:5, 10:6, 10:19, 15:8, 20:9, 20:16, 20:17, 29:13, 31:3, 33:10, 34:17, 34:23, 35:7, 35:10, 36:9, 37:12
**issues** [1] - 26:21
**iterations** [2] - 13:21, 13:24
**Ivette** [1] - 3:2
**IVETTE** [1] - 1:7

## J

**jail** [1] - 11:12
**Jones** [20] - 9:20, 10:9, 10:14, 10:16, 10:22, 11:3, 11:7, 13:7, 16:6, 21:6, 26:17, 27:9, 30:23, 31:4, 31:9, 33:16,

33:17, 33:20, 33:21, 36:10
**Jordan** [4] - 9:20, 10:5, 10:8, 36:11
**Judge** [2] - 16:19, 29:20
**JUDGE** [1] - 1:13
**judge** [3] - 24:4, 24:6, 30:6
**judgment** [4] - 5:10, 29:17, 38:2, 38:7
**judgments** [1] - 15:13
**juncture** [1] - 5:9
**jurisprudence** [2] - 30:16, 31:2
**jury** [2] - 23:19, 38:6
**justices** [1] - 8:24

## K

**keep** [2] - 12:7, 37:19
**kind** [1] - 18:10
**Klock** [1] - 1:16
**knowing** [1] - 17:12
**knows** [1] - 28:24

## L

**lack** [1] - 16:11
**lacked** [2] - 5:4, 36:14
**lacking** [2] - 11:10, 12:19
**lacks** [1] - 7:14
**last** [3] - 3:6, 3:12, 32:24
**latching** [1] - 30:10
**law** [31] - 5:21, 6:4, 6:5, 6:13, 7:6, 7:12, 7:13, 8:7, 8:10, 8:13, 9:15, 9:20, 10:7, 10:20, 13:6, 13:13, 25:9, 25:11, 25:14, 25:15, 29:16, 29:24, 30:9, 30:15, 30:17, 31:11, 33:2, 37:15, 38:9
**Lawton** [1] - 15:9
**leaning** [1] - 20:11
**leap** [1] - 14:16
**leaps** [2] - 10:23, 11:1
**least** [2] - 5:23, 36:20
**leave** [5] - 12:2, 13:13, 14:4, 17:23, 18:6
**left** [3] - 12:1, 13:15, 18:5
**legal** [5] - 3:18, 15:13, 15:14, 27:8, 30:25
**length** [1] - 18:21
**lent** [1] - 21:25
**Leon** [1] - 1:17

**letting** [1] - 17:7
**level** [14] - 3:8, 5:19, 6:18, 7:25, 8:16, 9:4, 9:13, 12:20, 13:3, 17:22, 27:24, 33:13, 38:1
**liability** [6] - 12:13, 21:20, 21:22, 26:19, 34:24, 36:6
**liable** [17] - 3:10, 9:14, 10:1, 10:8, 10:10, 11:9, 13:14, 14:17, 14:22, 22:2, 22:3, 27:8, 29:19, 30:20, 33:6, 33:9, 36:13
**light** [1] - 23:16
**likely** [1] - 38:1
**line** [2] - 31:1, 34:14
**listens** [1] - 33:8
**literally** [3] - 24:14, 32:23, 33:25
**litigated** [1] - 6:10
**look** [10] - 6:12, 6:17, 7:14, 19:7, 22:24, 23:14, 24:8, 24:10, 34:19
**looking** [4] - 6:4, 34:24, 35:2, 36:2
**losing** [1] - 29:5
**lost** [1] - 29:17
**lower** [2] - 8:20, 9:1
**Luffi** [40] - 3:14, 4:14, 5:14, 7:24, 8:15, 9:24, 10:2, 11:23, 12:1, 13:18, 13:23, 15:16, 16:4, 16:13, 16:17, 16:25, 17:7, 18:5, 18:25, 20:6, 21:4, 22:4, 22:7, 22:22, 24:14, 25:13, 28:9, 30:20, 31:16, 34:20, 35:2, 35:4, 35:9, 35:15, 35:18, 36:1, 36:17, 37:17, 38:14
**LUFFI** [1] - 1:7
**Luffi's** [4] - 3:2, 19:5, 20:12, 25:6

## M

**magistrate** [2] - 24:4, 24:6
**malicious** [2] - 18:25, 22:21
**man** [1] - 21:21
**mangled** [1] - 29:4
**manner** [1] - 11:4
**March** [3] - 2:23, 8:3, 22:24

**MARGLLI** [1] - 1:4
**Marglli** [1] - 2:12
**Martinez** [4] - 23:17, 23:19, 29:18, 29:19
**matter** [3] - 9:15, 23:15, 39:16
**mean** [1] - 12:23
**means** [2] - 8:13
**meant** [1] - 18:8
**meeting** [1] - 17:3
**mere** [1] - 16:5
**merely** [2] - 31:6, 34:23
**merit** [1] - 28:5
**MIAMI** [1] - 1:2
**miami** [1] - 1:19
**Miami** [8] - 1:4, 1:21, 1:24, 1:25, 17:8, 23:6, 39:22, 39:22
**miami-Dade** [1] - 1:19
**Miami-Dade** [2] - 17:8, 23:6
**might** [1] - 12:8
**Mills** [1] - 31:21
**mind** [1] - 38:19
**minute** [1] - 29:4
**minutes** [1] - 28:16
**misconduct** [4] - 3:24, 4:6, 34:19, 37:13
**missing** [1] - 28:19
**mistake** [1] - 24:25
**mistaken** [1] - 15:13
**modern** [1] - 30:2
**Monday** [1] - 1:6
**Moreno** [1] - 29:20
**Mosley** [3] - 9:21, 10:5, 36:11
**most** [1] - 38:1
**MOTION** [1] - 1:11
**motion** [21] - 2:24, 3:2, 4:3, 4:12, 4:13, 4:16, 5:11, 6:23, 20:1, 20:12, 29:9, 29:12, 29:17, 30:7, 37:22, 37:24, 38:2, 38:4, 38:7, 38:11, 38:12
**motions** [1] - 29:5
**move** [1] - 20:15
**moving** [1] - 4:11
**MR** [32] - 2:3, 2:11, 2:15, 3:16, 4:9, 4:13, 4:19, 5:5, 5:16, 5:18, 6:7, 6:16, 7:3, 10:4, 12:10, 16:9, 19:2, 19:9, 20:25, 21:6, 21:10, 22:25, 23:5, 25:15, 27:12, 31:18, 31:20, 38:15, 38:23, 39:6, 39:7, 39:10

**multi** [1] - 14:10
**multi-prong** [1] - 14:10
**must** [1] - 27:25

## N

**N.W** [1] - 1:20
**nail** [1] - 32:25
**name** [1] - 31:21
**Napoleon** [10] - 2:12, 3:13, 7:17, 12:12, 15:23, 16:2, 20:24, 27:10, 30:9, 30:21
**NAPOLEON** [17] - 1:16, 2:11, 3:16, 16:9, 19:2, 19:9, 20:25, 21:6, 21:10, 22:25, 23:5, 25:15, 31:18, 31:20, 38:23, 39:6, 39:10
**natural** [2] - 21:16, 21:21
**necessarily** [1] - 14:16
**necessary** [2] - 9:14, 31:11
**need** [6] - 8:4, 9:13, 10:23, 12:13, 28:7, 38:13
**needs** [2] - 27:24, 28:25
**never** [4] - 17:14, 18:3, 29:25, 33:2
**New** [1] - 32:11
**new** [1] - 18:20
**newest** [1] - 16:10
**next** [1] - 39:2
**Nieto** [1] - 1:16
**night** [1] - 31:17
**NO** [1] - 1:2
**non** [6] - 6:24, 9:23, 10:9, 10:13, 11:8, 16:7
**non-arresting** [6] - 6:24, 9:23, 10:9, 10:13, 11:8, 16:7
**none** [1] - 13:11
**North** [2] - 1:24, 39:22
**Nosser** [3] - 21:14, 30:1, 30:19
**notes** [2] - 10:11, 11:13
**nothing** [5] - 13:16, 19:16, 29:12, 29:15, 32:14
**notice** [2] - 25:10, 25:12
**novel** [1] - 9:17
**november** [1] - 39:19
**Number** [1] - 2:7

**number** [1] - 3:20
**numerous** [1] - 35:20

## O

**objection** [1] - 38:22
**objective** [9] - 7:22, 7:23, 12:21, 13:4, 14:2, 24:9, 27:25, 28:2
**objectively** [2] - 7:25, 8:6
**obtain** [1] - 23:21
**obviously** [5] - 7:12, 9:23, 19:9, 21:12, 25:19
**occasions** [1] - 23:8
**occur** [1] - 10:15
**occurred** [5] - 13:11, 23:8, 27:18, 27:19, 28:6
**occurs** [1] - 14:10
**OF** [3] - 1:1, 1:16, 1:19
**off-duty** [1] - 17:10
**offense** [1] - 18:8
**offensive** [1] - 18:8
**Office** [4] - 1:19, 11:11, 22:6, 33:1
**Officer** [54] - 4:14, 5:13, 5:14, 7:24, 8:15, 11:18, 11:23, 12:1, 12:17, 14:19, 15:15, 16:4, 16:13, 16:17, 17:6, 17:9, 19:4, 19:11, 19:24, 20:1, 25:6, 25:12, 25:13, 27:23, 28:23, 28:24, 29:10, 29:18, 29:19, 30:20, 31:13, 31:15, 31:16, 34:20, 35:3, 35:4, 35:8, 35:9, 36:17, 36:21, 36:24, 37:5, 37:8, 37:17, 37:20
**officer** [45] - 3:9, 8:6, 9:23, 10:8, 10:9, 10:10, 10:13, 10:15, 11:3, 11:8, 12:15, 13:8, 15:11, 16:4, 16:7, 16:14, 16:23, 18:12, 26:15, 26:18, 26:20, 27:7, 27:8, 27:20, 28:20, 28:21, 29:1, 29:9, 29:10, 30:19, 31:4, 33:4, 33:8, 33:17, 33:18, 33:19, 33:20, 33:24, 35:4, 36:8, 36:13, 37:5
**officer's** [2] - 33:12

**officers** [47] - 3:14, 4:20, 5:3, 5:6, 6:24, 6:25, 10:17, 11:1, 11:20, 12:2, 12:7, 12:11, 12:14, 13:13, 14:16, 14:22, 16:17, 16:23, 16:25, 17:4, 18:1, 18:2, 18:4, 18:13, 20:3, 20:14, 21:15, 22:3, 22:13, 23:7, 23:10, 23:12, 24:20, 25:10, 26:10, 27:16, 30:5, 31:6, 33:1, 33:20, 33:25, 34:23, 35:16, 35:21, 36:18, 36:23
**Officers** [14] - 3:14, 4:8, 4:17, 5:1, 9:24, 10:2, 11:20, 17:9, 18:25, 21:4, 22:22, 35:17, 37:19, 38:14
**officers'** [3] - 35:21, 37:25, 38:10
**Official** [1] - 1:23
**officials** [1] - 15:12
**Ohio** [1] - 25:19
**old** [1] - 30:1
**ON** [3] - 1:11, 1:16, 1:19
**once** [2] - 34:4, 34:5
**one** [24] - 3:5, 3:9, 3:20, 4:21, 8:21, 9:3, 9:11, 12:19, 15:4, 15:5, 15:9, 16:10, 16:24, 19:20, 21:8, 23:3, 27:1, 28:3, 28:20, 29:9, 33:17, 33:20, 33:24, 38:21
**open** [2] - 15:13, 15:14
**operative** [1] - 4:17
**opinion** [3] - 23:25, 29:15, 30:21
**opinions** [1] - 36:11
**opportunity** [2] - 16:10, 18:6
**opposed** [1] - 6:14
**option** [1] - 9:11
**order** [5] - 2:1, 3:10, 8:21, 10:22, 10:24
**ordered** [1] - 3:5
**original** [1] - 12:18
**outside** [3] - 16:24, 17:7, 19:10
**overlay** [2] - 7:21, 8:4
**overly** [1] - 8:25
**own** [4] - 7:5, 18:15, 20:22, 27:21

**P**

**P.L** [1] - 1:16
**p.m** [4] - 1:7, 1:8, 39:11
**Pages** [1] - 1:9
**paid** [1] - 24:21
**paragraph** [4] - 11:19, 35:5, 35:22, 37:2
**paragraphs** [1] - 35:24
**parameters** [2] - 3:25, 4:2
**parked** [1] - 16:14
**part** [7] - 17:2, 19:14, 21:24, 25:5, 25:6, 32:7, 33:23
**participant** [1] - 36:12
**participate** [2] - 6:25, 9:25
**participated** [6] - 11:8, 17:13, 22:9, 22:10, 33:22, 36:15
**participates** [2] - 26:18, 31:5
**participating** [4] - 10:7, 18:14, 25:1, 25:4
**participation** [19] - 3:8, 9:14, 11:14, 11:17, 12:13, 12:20, 14:7, 17:15, 17:22, 19:5, 19:7, 26:15, 33:13, 35:14, 36:6, 36:20, 37:6, 38:1, 38:10
**particular** [9] - 6:17, 16:19, 17:2, 20:8, 20:12, 21:17, 23:2, 33:17, 33:23
**parties** [6] - 3:5, 6:2, 23:15, 24:7, 34:22, 39:5
**past** [1] - 29:13
**pause** [2] - 21:9, 23:4
**paying** [1] - 16:21
**Pearson** [2] - 4:1, 8:24
**people** [3] - 2:5, 17:7, 32:7
**PEREZ** [1] - 1:7
**Perez** [43] - 1:16, 2:8, 3:2, 3:14, 4:14, 5:13, 7:25, 9:24, 10:2, 11:18, 12:1, 13:18, 13:19, 14:9, 14:19, 15:15, 16:4, 16:13, 16:17, 16:25, 18:5, 19:1, 19:11, 20:6, 20:11, 21:4, 22:4, 22:7, 22:22, 24:14, 25:6, 25:13, 28:9,

28:22, 28:23, 28:24, 30:20, 31:15, 34:20, 35:9, 36:21, 37:5, 38:14
**Perez's** [6] - 8:16, 12:17, 19:5, 36:24, 37:8, 37:20
**perhaps** [2] - 12:4, 16:2
**period** [9] - 6:1, 11:15, 11:22, 12:1, 31:2, 35:19, 37:21, 38:20
**periodically** [1] - 11:24, 12:6, 36:17
**permitted** [1] - 12:2
**person** [4] - 12:24, 24:9, 27:3, 33:5
**personal** [3] - 5:20, 13:8, 32:15
**persons** [1] - 32:8
**persuade** [1] - 16:3
**physical** [1] - 10:14
**physically** [1] - 14:12
**place** [3] - 11:21, 17:14, 35:11
**placement** [2] - 36:23, 37:4
**placing** [1] - 7:16
**Plaintiff** [1] - 2:12
**PLAINTIFF** [2] - 1:5, 1:16
**plaintiff** [29] - 3:9, 3:20, 5:4, 7:16, 8:1, 8:9, 10:10, 10:11, 10:12, 10:14, 11:11, 11:12, 14:20, 15:24, 16:8, 23:6, 23:9, 23:11, 23:17, 23:21, 28:10, 29:11, 30:5, 31:5, 31:8, 31:10, 31:14, 34:10, 37:19
**plaintiff's** [5] - 2:10, 15:16, 21:4, 23:20, 31:16
**plan** [2] - 21:23, 22:5
**point** [13] - 3:12, 3:17, 8:19, 19:20, 20:8, 20:12, 23:23, 33:17, 33:24, 36:20, 37:14, 37:22, 38:8
**pointless** [1] - 9:7
**points** [1] - 21:1
**police** [6] - 12:9, 13:10, 14:21, 21:15, 33:4, 33:19
**Police** [1] - 17:8
**Ponce** [1] - 1:17
**position** [1] - 21:4
**post** [1] - 11:13
**post-arrest** [1] - 11:13

**posture** [1] - 29:7
**POWERS** [2] - 1:23, 39:21
**Powers** [1] - 39:19
**precedence** [1] - 21:12
**precedent** [1] - 10:21
**precise** [1] - 32:3
**predates** [1] - 30:1
**prejudice** [1] - 20:13
**presence** [1] - 22:11
**present** [6] - 2:13, 12:11, 12:14, 13:14, 31:7, 34:23
**prevent** [2] - 17:5, 32:15
**previous** [1] - 16:15
**previously** [1] - 35:23
**principle** [4] - 21:15, 30:9, 30:11, 30:15
**principles** [1] - 30:10
**probable** [11] - 5:8, 5:22, 7:7, 10:6, 11:10, 15:8, 20:8, 27:4, 27:5, 29:19
**procedural** [1] - 29:6
**proceedings** [4] - 21:9, 23:4, 39:11, 39:16
**prolonged** [2] - 32:21, 37:18
**prong** [13] - 6:4, 8:17, 8:21, 8:22, 9:3, 9:6, 9:11, 9:12, 12:19, 14:10, 28:3
**proposition** [1] - 10:20
**protect** [1] - 18:11
**protected** [1] - 25:23
**protections** [2] - 32:9, 32:22
**protects** [1] - 25:21, 32:18
**prove** [1] - 27:17
**proved** [1] - 25:1
**provide** [4] - 9:22, 10:2, 14:14, 25:12
**provides** [1] - 21:22, 25:10
**proximity** [1] - 26:2
**public** [1] - 17:4
**published** [3] - 9:21, 23:25, 36:11
**Publix** [1] - 17:19
**pulls** [1] - 11:24
**purposes** [5] - 4:16, 5:11, 6:3, 6:22, 27:15
**pursuant** [2] - 20:3, 21:23

**pursuit** [1] - 22:4
**Put** [1] - 12:24
**put** [10] - 11:18, 12:16, 13:20, 14:5, 18:21, 19:11, 36:22, 37:1

**Q**

**qualified** [15] - 8:5, 8:17, 8:22, 14:15, 14:23, 15:1, 15:11, 20:17, 27:22, 29:22, 30:2, 30:13, 36:8, 37:24, 38:4
**quantified** [1] - 15:3
**quasi** [1] - 20:22
**quasi-former** [1] - 20:22
**Querto** [1] - 29:10
**questions** [7] - 11:19, 13:21, 14:6, 15:13, 21:2, 26:23, 37:2
**quick** [1] - 19:15
**quite** [3] - 9:8, 24:23, 26:1
**quote** [2] - 13:3, 16:10
**quote/unquote** [1] - 32:20
**quotes** [1] - 32:6
**quoting** [4] - 21:17, 21:18, 24:1, 32:12

**R**

**raise** [1] - 20:9
**raising** [1] - 36:17
**ran** [1] - 17:19
**Rasco** [1] - 1:16
**ratify** [1] - 22:1
**re** [1] - 30:22
**re-hearing** [1] - 30:22
**read** [3] - 21:20, 30:19, 31:24
**reading** [3] - 3:4, 24:5, 31:25
**really** [5] - 16:18, 19:15, 26:22, 28:5, 28:7
**reason** [1] - 9:10
**reasonable** [9] - 5:9, 5:21, 8:6, 10:15, 11:3, 15:12, 24:9, 27:3, 27:5
**reasonably** [1] - 23:19
**reasoning** [1] - 24:3
**recommendation** [1] - 24:4
**reconsideration** [1] - 30:8
**record** [1] - 2:9

**recur** [1] - 9:9
**reference** [2] - 19:23, 35:15
**referenced** [1] - 34:13
**refusal** [1] - 17:23
**regard** [4] - 4:12, 6:14, 9:19, 11:15, 25:9, 35:2, 35:8, 35:9, 35:10, 35:14, 36:1, 36:7, 36:9, 36:16, 36:21, 37:17, 38:9
**regarding** [1] - 13:18
**regards** [1] - 9:24
**relation** [2] - 27:21, 36:3
**relayed** [1] - 35:6
**release** [1] - 13:15
**released** [1] - 13:12
**relevant** [5] - 22:20, 22:23, 32:7, 33:16, 34:9
**reluctantly** [1] - 3:17
**remains** [2] - 8:8, 12:6
**remember** [3] - 8:12, 12:21, 14:9
**render** [1] - 9:15
**reply** [1] - 15:2
**report** [1] - 24:3
**reported** [1] - 17:21
**REPORTED** [1] - 1:23
**Reporter** [1] - 1:23
**represented** [1] - 29:3
**request** [1] - 21:25
**require** [2] - 29:4, 34:9
**requires** [3] - 8:20, 14:15, 34:19
**reserve** [1] - 5:9
**respect** [2] - 5:13, 27:21
**responding** [1] - 27:15
**response** [2] - 28:5, 31:18
**responses** [1] - 2:19
**responsible** [2] - 21:16, 21:21
**restrain** [6] - 8:1, 12:23, 13:4, 14:19, 27:25, 28:2
**restrained** [1] - 14:12
**restraining** [1] - 3:9
**result** [2] - 35:7, 35:12
**retained** [1] - 14:12
**revenge** [1] - 23:21
**reversed** [2] - 30:7, 30:22
**reviewed** [2] - 29:25, 38:1
**RICKY** [1] - 1:7

**rights** [2] - 23:7, 31:17
**rise** [4] - 5:19, 7:25, 13:3, 27:24
**rises** [1] - 6:18
**robust** [1] - 34:8
**room** [1] - 15:12
**rose** [2] - 8:16, 9:13
**rounds** [1] - 8:8
**RPR** [2] - 1:23, 39:21
**rule** [2] - 20:5, 21:22
**ruling** [2] - 24:3, 38:18
**running** [1] - 24:19

**S**

**safe** [1] - 2:21
**sandwich** [1] - 18:12
**scene** [1] - 31:6
**Scheduled** [1] - 1:7
**scratch** [1] - 5:7
**searches** [1] - 25:24
**second** [15] - 3:3, 8:4, 8:17, 11:16, 16:20, 19:4, 21:8, 23:3, 23:9, 23:11, 25:17, 27:19, 34:3, 34:5, 34:7
**secondly** [1] - 3:22
**Section** [2] - 21:19, 25:20
**secure** [1] - 32:7
**security** [1] - 32:15
**see** [7] - 2:4, 2:20, 2:22, 14:15, 30:19, 34:14, 36:25
**seem** [1] - 26:12
**seized** [1] - 22:23
**seizure** [15] - 4:17, 4:24, 4:25, 5:2, 5:20, 6:6, 15:7, 19:14, 19:18, 19:19, 26:2, 26:7, 27:8, 27:19, 32:21
**seizures** [4] - 25:24, 32:5, 32:8, 32:19
**sense** [1] - 33:6
**separate** [1] - 23:8
**September** [1] - 39:1
**Sergeant** [15] - 16:4, 16:13, 16:17, 23:17, 23:19, 25:6, 25:12, 34:20, 35:2, 35:4, 35:15, 35:18, 36:1, 38:14
**sergeant** [1] - 17:8
**set** [7] - 3:25, 4:2, 11:16, 18:24, 22:20, 28:17, 39:1
**settled** [1] - 29:21
**several** [2] - 13:7, 23:7

**shifted** [1] - 34:11
**shifts** [1] - 3:20
**shirt** [2] - 11:24, 36:17
**shoes** [1] - 24:9
**show** [10] - 3:20, 3:22, 11:24, 15:24, 28:24, 31:14, 36:5, 36:17, 36:19, 37:5
**showing** [1] - 12:6
**shows** [1] - 17:12
**side** [1] - 36:19
**signal** [1] - 28:17
**signals** [1] - 37:18
**simple** [1] - 26:23
**simply** [5] - 5:12, 8:25, 9:5, 9:6, 9:15
**sit** [1] - 18:11
**sitting** [1] - 36:19
**situation** [8] - 7:6, 7:10, 7:14, 7:21, 8:7, 8:11, 14:23, 29:14
**skip** [1] - 32:10
**smart** [1] - 20:15
**someone** [4] - 12:5, 12:9, 12:23, 27:19
**somewhat** [1] - 11:6
**somewhere** [1] - 26:9
**sorry** [4] - 5:17, 20:17, 21:8, 28:22
**sort** [4] - 9:7, 14:8, 14:13, 18:10
**SOUTHERN** [1] - 1:1
**sovereign** [2] - 20:9, 20:16
**speaking** [1] - 19:21
**specific** [7] - 10:20, 11:9, 18:4, 18:23, 30:17, 31:14, 31:15
**specifically** [2] - 15:6, 35:3
**spent** [1] - 5:25
**stage** [3] - 5:23, 36:4, 37:9
**standard** [6] - 7:23, 8:5, 11:2, 12:21, 14:2
**standards** [1] - 7:22
**started** [1] - 2:6
**starting** [2] - 2:10, 31:25
**State** [2] - 10:12, 11:11
**state** [1] - 2:9
**statement** [11] - 3:11, 10:7, 12:17, 13:19, 16:3, 19:11, 28:11, 36:3, 36:22, 37:4, 37:20
**statements** [4] - 13:3, 19:10, 22:10, 36:24

**states** [1] - 15:10
**States** [4] - 1:24, 4:1, 32:12, 39:21
**STATES** [2] - 1:1, 1:13
**station** [3] - 10:11, 12:9, 13:10
**stayed** [2] - 10:12, 11:10
**STENOGRAPHICAL LY** [1] - 1:22
**step** [1] - 39:2
**still** [3] - 27:24, 29:19, 30:14
**stood** [1] - 35:19
**stop** [18] - 6:2, 6:5, 6:8, 6:10, 6:20, 7:10, 7:13, 12:15, 14:10, 19:6, 25:14, 25:18, 25:25, 26:6, 28:16, 28:17, 30:25, 32:20
**stops** [2] - 6:14, 6:24
**straight** [1] - 9:12
**strategic** [1] - 4:23
**Street** [1] - 1:20
**strong** [1] - 21:7
**strongest** [1] - 21:3
**subordinate** [1] - 33:9
**subsequent** [1] - 30:15
**subsequently** [1] - 7:9
**substance** [1] - 34:7
**sudden** [1] - 24:20
**sufficient** [8] - 12:20, 18:2, 36:5, 36:19, 37:5, 38:3, 38:5, 38:11
**sufficiently** [1] - 9:25
**Suite** [2] - 1:17, 1:20
**sum** [1] - 34:7
**summary** [5] - 5:10, 29:14, 29:17, 38:2, 38:7
**support** [2] - 19:3, 19:8
**supported** [1] - 19:10
**supports** [3] - 19:12, 19:13, 21:4
**Supreme** [10] - 4:1, 8:20, 9:2, 9:11, 10:20, 25:19, 30:11, 30:15, 32:12, 32:13
**suspect** [1] - 14:12
**suspect's** [1] - 14:11
**suspicion** [4] - 5:9, 5:21, 27:4, 27:5
**sword** [2] - 20:4, 20:19

**T**

**tape** [1] - 17:21
**term** [3] - 16:11, 25:20, 33:13
**termed** [2] - 9:18, 32:16
**terms** [2] - 19:6, 34:8
**Terry** [21] - 6:2, 6:5, 6:8, 6:10, 6:14, 6:20, 6:24, 7:10, 7:13, 12:15, 14:10, 19:6, 25:14, 25:18, 25:19, 25:25, 26:6, 28:16, 28:17, 30:25, 32:20
**test** [3] - 14:9, 14:11, 14:13
**testify** [1] - 20:2
**THE** [30] - 1:13, 2:2, 2:4, 2:14, 2:17, 2:20, 3:19, 4:12, 4:15, 5:2, 5:15, 5:17, 5:24, 6:11, 6:22, 9:17, 11:5, 15:21, 18:23, 19:3, 20:24, 21:3, 22:19, 25:7, 27:10, 31:19, 34:4, 38:22, 39:1, 39:8
**themselves** [1] - 17:24
**therefore** [1] - 31:3
**they've** [1] - 13:19
**thinking** [1] - 19:20
**thinks** [1] - 10:25
**third** [1] - 6:4
**thorough** [1] - 24:3
**thoughtful** [1] - 34:6
**three** [2] - 13:21, 13:24
**throughout** [1] - 36:24
**tie** [1] - 28:20
**tie-in** [1] - 28:20
**TO** [1] - 1:11
**today** [3] - 3:1, 9:16, 14:21
**together** [2] - 2:23, 34:5
**took** [4] - 10:11, 11:12, 30:5, 35:11
**tort** [2] - 21:20, 30:17
**tortious** [1] - 21:24
**total** [1] - 28:18
**towards** [2] - 20:11, 38:25
**traditional** [1] - 7:15
**transcript** [1] - 3:5
**transcription** [1] - 39:15
**translate** [1] - 7:13
**transport** [2] - 12:9, 16:7

**transported** [3] - 10:10, 11:12, 31:8
**transporting** [1] - 12:10
**traveling** [1] - 6:21
**trial** [2] - 5:10, 27:17
**tried** [1] - 17:24
**true** [6] - 27:16, 34:25, 36:5, 37:9, 37:23, 38:3
**try** [1] - 33:1
**trying** [2] - 22:16, 26:21
**Turn** [1] - 12:24
**turn** [1] - 15:22
**turned** [2] - 16:22, 18:1
**two** [23] - 6:8, 7:21, 8:8, 8:22, 9:3, 9:6, 9:13, 11:20, 12:2, 12:7, 12:16, 13:12, 15:2, 23:8, 23:10, 26:3, 26:10, 26:23, 27:16, 28:4, 28:23, 36:10, 36:23
**tying** [1] - 13:16
**type** [11] - 6:5, 6:14, 7:2, 14:8, 14:9, 14:14, 14:22, 14:23, 15:19, 24:25, 30:11
**typifies** [1] - 9:1

**U**

**U.S** [1] - 32:12
**ultimately** [6] - 7:21, 9:13, 10:5, 10:25, 29:21, 38:5
**unconstitutional** [3] - 9:25, 10:3, 21:5
**under** [6] - 5:20, 10:1, 13:5, 14:4, 14:9, 31:11
**unique** [1] - 9:9
**UNITED** [2] - 1:1, 1:13
**United** [3] - 4:1, 32:12, 39:21
**united** [1] - 1:24
**unknown** [1] - 16:14
**unlawful** [2] - 25:13, 34:15
**unlikely** [1] - 9:9
**unpack** [1] - 29:5
**unpublished** [1] - 29:15
**unreasonable** [2] - 32:5, 32:8
**up** [7] - 7:5, 11:24, 16:2, 18:3, 29:8, 30:7, 31:24

**upheld** [1] - 21:15

## V

**vacated** [1] - 30:21
**vacuum** [1] - 23:15
**Valdes** [3] - 23:5,
   23:6, 29:3
**valid** [1] - 30:15
**vehicle** [1] - 7:17
**verbal** [1] - 2:19
**versus** [11] - 2:8, 4:1,
   6:5, 7:1, 8:24, 11:3,
   15:4, 21:14, 23:6,
   31:21, 32:11
**via** [1] - 39:16
**VIA** [1] - 1:15
**Vickers** [1] - 15:4
**view** [1] - 8:6
**violated** [4] - 4:18,
   5:13, 15:16, 31:16
**violation** [21] - 3:21,
   4:7, 6:15, 6:19, 7:2,
   8:17, 19:23, 25:14,
   25:23, 26:10, 26:11,
   26:14, 26:19, 26:25,
   27:6, 27:14, 27:18,
   30:4, 34:12, 34:15,
   37:10
**violations** [4] - 14:24,
   23:7, 25:21, 30:18
**volition** [1] - 20:22
**vs** [1] - 1:6

## W

**wait** [5] - 11:18, 13:20,
   14:5, 36:25, 37:1
**waiting** [1] - 2:5
**walked** [1] - 18:13
**wants** [1] - 21:1
**warning** [2] - 10:3,
   21:5
**warrant** [2] - 7:7,
   22:17
**watching** [1] - 2:21
**weapons** [1] - 14:11
**welcome** [1] - 2:21
**whatsoever** [1] - 22:6
**wholesale** [1] - 32:15
**willing** [3] - 4:19,
   19:22, 20:10
**win** [1] - 8:17
**withstand** [1] - 38:3
**woman** [2] - 17:17,
   18:18
**won** [1] - 21:12
**words** [2] - 12:22,
   19:17
**worth** [2] - 4:11, 28:5

**wrong-doer** [1] - 22:1
**wrote** [1] - 32:24

## Y

**year** [2] - 2:23, 32:24
**years** [3] - 8:24, 28:23,
   30:15
**York** [1] - 32:11

## Z

**ZOOM** [1] - 1:15
**Zoom** [2] - 2:13, 39:17